## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| STONE & WEBSTER, INCORPORATED | ) | |
| *et al.*, | ) | Case No. 00-02142 (PJW) |
| | ) | Jointly Administered |
| Debtors, | ) | Adv. Pro. No. 02-3963 (PJW) |
| —————————————————————— | ) | |
| | ) | |
| THE SHAW GROUP INC. | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No.  07-00616 (SLR) |
| | ) | |
| SWE&C LIQUIDATING TRUST, | ) | |
| | ) | |
| Appellee. | ) | |
| —————————————————————— | ) | |

## <u>OPENING BRIEF OF APPELLANT THE SHAW GROUP INC.</u>

**ASHBY & GEDDES**
Stephen E. Jenkins (I.D. No. 2152)
Gregory A. Taylor (I.D. No. 4008)
Catherine A. Strickler (I.D. No. 4310)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888

Dated:  February 29, 2008          *Attorneys for The Shaw Group Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF CITATIONS ........................................................................................ iii

NATURE AND STAGE OF THE PROCEEDING.............................................................1

    I.     Nature Of The Case ............................................................................1

    II.    Stage Of The Proceedings ..................................................................1

          A.    The SAMBA Proceeding ......................................................2

          B.    The Saudi Aramco Proceeding .................................................3

SUMMARY OF THE ARGUMENT ........................................................................5

STATEMENT OF FACTS ...................................................................................6

    I.     The Ras Tanura Project .......................................................................6

    II.    The Debtors File For Bankruptcy And Shaw Enters The APA ...........................8

          A.    SAMBA Brings a Proceeding Against Shaw to Recover for SWEC's Default Under the Guaranty and Payment Letter ........................................8

          B.    SWEC Brings the Saudi Aramco Proceeding to Recover Proceedings Owed Under the In-Kingdom Contract ...................................9

ARGUMENT ...............................................................................................10

    I.     Standard Of Review...........................................................................10

    II.    The Bankruptcy Court Committed An Error Of Law By Applying The Rule 24(a)(2) Standard To Shaw's Request To Intervene Permissively Under Rule 24(b)................................................................11

    III.   The Bankruptcy Court Incorrectly Found That Shaw Does Not Have a Sufficient Interest In The Underlying Litigation To Be Allowed To Intervene As Of Right ......................................................13

          A.    The Bankruptcy Court Erroneously Subjected Shaw's Motion To A Higher Standard Than What Rule 24 Requires By Claiming Shaw Should Prove Its Underlying Claim In Order To Have A Sufficient Interest To Intervene....................................13

          B.    The APA Entitles Shaw to Certain In-Kingdom Proceeds, Which Constitutes a Sufficient Interest to Intervene as of Right........................................................................16

C.    The Bankruptcy Court Mistakenly Found that the Trust Will
Not Be Unjustly Enriched Unless Shaw Intervenes ..................................18

IV.    The Bankruptcy Court Erred By Basing Its Decision Upon An
Incorrect Characterization Of Shaw's Claim. ........................................................19

V.    The Bankruptcy Court Erred In Holding That The November 30,
2004 Settlement Stipulation Prevents Shaw From Intervening
In This Action Or Bringing An Action Against The Trust That
Is Related To SAMBA's Claim. ...........................................................................21

A.    The Motion to Intervene Does Not Relate to a Filed Claim ....................21

B.    The Parties Never Intended the Settlement Stipulation to
Effect a Release of Any Claim by Shaw to the In-
Kingdom Contract Proceeds ...................................................................22


CONCLUSION ...................................................................................................................23

# TABLE OF CITATIONS

**Cases**                                                                                            **Page**

*American Flint Glass Workers Union v. Anchor Resolution Corp.*,
    197 F.3d 76 (3d Cir. 1999).......................................................................................10

*American Surety Co. of New York v. Bethlehem Nat'l Bank of Bethlehem*,
    314 U.S. 314 (1941) .........................................................................................13

*American White Cross, Inc. v. Orentzel*,
    269 B.R. 555 (D. Del. 2001)...............................................................................11

*Automatic Sprinkler Corp. of America v. Fidelity & Deposit Co. of Maryland*,
    22 F.R.D. 248, 250 (M.D. Pa. 1958)..............................................................12, 19

*Comrie v. Enterasys Networks, Inc.*,
    837 A.2d 1 (Del. Ch. 2003).................................................................................22

*First Indem. Of America Ins. Co. v. Modular Structures, Inc.*
    27 F.3d (3d Cir. 1994).......................................................................................20

*Harris v. Pernsley*,
    820 F.2d 592 (3d Cir 1987)................................................................................15

*In re Marcus Hook Dev. Park, Inc.*,
    943 F.2d 261 (3d Cir. 1991)...............................................................................20

*Mellon Bank, N.A. v. Metro Comm., Inc.*,
    945 F.2d 635 (3d Cir. 1991)...............................................................................11

*Midway Airlines, Inc. v. Northwest Airlines, Inc.*
    154 B.R. 248 (N.D. Ill. 1993) .............................................................................15

*Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.*
    72 F.3d 361 (3d Cir. 1995).................................................................................15

*Natwest USA Credit Corp. v. Alco Standard Corp.*,
    858 F. Supp. 401 (S.D.N.Y. 1994)..................................................................14, 20

*Pennamco, Inc. v. Nardo Management Co.*,
    435 A.2d 726 (Del. Super. Ct. 1981) ...............................................................15, 16

*Putnam v. Commissioner of Internal Revenue*,
    352 U.S. 82 (1956)............................................................................................14

**<u>Rules and Statutes</u>**

28 U.S.C. §158(a)(1) ...................................................................................................1

Fed. R. Civ. P 24.................................................................................................*passim*

Fed. R. Bankr. P. 8001.................................................................................................1

## NATURE AND STAGE OF THE PROCEEDINGS

### I.    Nature Of The Case

Appellant, The Shaw Group Inc. ("Shaw"), moved to intervene in Adversary Proceeding No. 02-3963 between the SWE&C Liquidating Trust (the "Trust") and Saudi Arabian Oil Company ("Saudi Aramco") in the United States Bankruptcy Court for the District of Delaware pursuant to Rule 24 of the Federal Rules of Civil Procedure.  The United States Bankruptcy Court for the District of Delaware subsequently denied Shaw's motion on August 31, 2007. Shaw timely filed its Notice of Appeal on September 7, 2007 pursuant to Rule 8001 of the Federal Rules of Bankruptcy Procedure.  (A575 (D.I. 81)).[1]  The Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. §158(a)(1).

### II.    Stage Of The Proceedings

Shaw's intervention in the Saudi Aramco Proceeding became appropriate and necessary as a result of this Court's prior grant of summary judgment in favor of the Saudi American Bank ("SAMBA") in adversary proceeding No. 01-7766 between Shaw and SAMBA (the "SAMBA Proceeding").  Both adversary proceedings relate to a bankruptcy case filed on June 2, 2000 by Stone & Webster, Inc. ("S&W") and its subsidiaries (collectively, "Debtors"), including Stone & Webster Engineering Corporation ("SWEC").  On July 14, 2000, Shaw and the Debtors entered into an asset purchase agreement (the "APA") through which Shaw purchased a substantial portion, but not all, of the Debtors' assets and assumed certain of their liabilities.  (*See* A353 (D.I. 61 at Ex. D)).

---

[1]  "A" followed by a number refers to a specific page of the Appendix, which is filed herewith. "D.I." refers to docket items in this case from the United States Bankruptcy Court for the District of Delaware.  Docket items from other related cases are listed by case number followed by specific docket entry (*e.g.*, Adv. Pro. 01-7766 D.I. 1).

A.     The SAMBA Proceeding

On October 18, 2001, SAMBA brought the SAMBA Proceeding against Shaw and the Debtors alleging that Shaw had assumed a debt owed by SWEC to SAMBA. (*See* A1 (Adv. Pro. 01-7766 D.I. 1)). The complaint relates to a line of credit from SAMBA for $35,000,000 to finance the Ras Tanura oil refinery upgrade by a joint venture of SWEC, called Bugshan Stone & Webster ("BS&W"). In order to help secure the financing from SAMBA, SWEC guaranteed to repay 50% of BS&W's obligations to SAMBA, up to $35,000,000 (the "Guaranty"). (*See* A342 (D.I. 61 at Ex. A)). When Ras Tanura's owner, Saudi Aramco, failed to pay BS&W for its work, SWEC agreed to repay half of the outstanding loan balance of approximately $31,800,000, at the rate of $650,000 per month (the "Payment Letter"). (*See* A351 (D.I. 61 at Ex. C)). In the SAMBA Proceeding, SAMBA alleged that in entering the APA Shaw had assumed the liabilities under both the Guaranty and Payment Letter and thus owed SAMBA the outstanding balance of $6,728,529 in principal plus interest. (A7, A12 (Adv. Pro. 01-7766 D.I. 1 at ¶¶27, 58)).

On August 13, 2002, Shaw moved for summary judgment in the SAMBA Proceeding, and SAMBA subsequently cross-moved for summary judgment. After briefing, the case was removed to the District Court for the District of Delaware. On May 3, 2005, this Court entered an Order and Memorandum Opinion in the SAMBA Proceeding denying Shaw's motion for summary judgment and granting summary judgment in favor of SAMBA. (*See* A470 (D.I. 61 at Ex. F)). This Court held that, under the APA, Shaw had assumed the Guaranty and Payment Letter and is liable for SWEC's (and hence BS&W's) outstanding obligation to SAMBA. (A487 (D.I. 61, Ex. F at 17). On May 4, 2005, the District Court entered judgment for SAMBA against Shaw in the amount of $6,728,549. (*See* A490 (D.I. 61 at Ex. G)).

On May 26, 2005, Shaw appealed this Court's decision to the United States Court of Appeals for the Third Circuit.  On February 7, 2006, the Third Circuit remanded the case to this Court for clarification regarding damages.  On November 8, 2006, this Court issued an Amended Memorandum Opinion holding that SAMBA was entitled to prejudgment simple interest at 9%, post-judgment compound interest at 3.33% and attorneys' fees and costs in an amount to be determined.  (*See* A492 (D.I. 61 at Ex. H)).  On February 13, 2007, this Court issued a Memorandum Opinion and Order awarding SAMBA $345,714.50 in attorneys' fees.  (*See* A511 (D.I. 61 at Ex. I)).  Adding everything together, the current judgment against Shaw totals more than $10 million.  Since this Court clarified its ruling on damages and attorneys' fees, Shaw has continued to prosecute its appeal to the Third Circuit with oral argument currently scheduled for April 18, 2008.

### B.    The Saudi Aramco Proceeding

On May 31, 2002, S&W and SWEC brought the Saudi Aramco Proceeding against Saudi Aramco seeking, *inter alia*, an award of damages for Saudi Aramco's breach of contract and an order demanding that Saudi Aramco account for and turnover certain withheld funds that are due and owing to BS&W.  (*See*, *e.g.*, A21-22, A24-25, A31-32 (D.I. 1 at ¶¶25-28, 37-38, 61-76)).  The basis for the Debtors' (now the Trust's) Complaint is BS&W's Contract No. 65004/00 (the "In-Kingdom Contract") with Saudi Aramco to upgrade the Ras Tanura oil refinery in Saudi Arabia (the "Ras Tanura Project").  (A18, A37 (D.I. 1 at ¶14 *and* Ex. A).  The action seeks, *inter alia*, damages caused by Saudi Aramco's breach of the In-Kingdom Contract, and the turnover to SWEC of $148 million owed to BS&W under the In-Kingdom Contract.  Saudi Aramco's breach of the In-Kingdom Contract is what caused BS&W to default under its credit facility to SAMBA and, ultimately, what caused SWEC to honor its obligation under the Guaranty.

On September 25, 2002, Saudi Aramco filed a motion to dismiss the Debtors' complaint. (D.I. 4). No further action has been taken on that motion.

On November 7, 2002, SAMBA moved to intervene in the Saudi Aramco Proceeding based on an assignment of proceeds from the In-Kingdom Contract and a specific payment instruction letter by BS&W to SAMBA. (A227, A241-52 (D.I. 19 at Ex. A, ¶¶5-6 & Exs. 1-5)). On May 1, 2006, the Bankruptcy Court denied SAMBA's motion to intervene (D.I. 50), and SAMBA appealed that decision to the United States District Court for the District of Delaware (D.I. 52). This Court affirmed the Bankruptcy Court's denial on August 29, 2007. SAMBA subsequently appealed this Court's affirmance to the United States Court of Appeals for the Third Circuit and that appeal remains pending.

On June 10, 2004, the Bankruptcy Court ordered the parties, including proposed intervenor SAMBA, to meet and confer with a Court-appointed mediator. (D.I. 28). According to a status report filed on April 15, 2005, the parties previously met for a mediation session and tentatively settled the matter, although the parties anticipated needing twelve to twenty-four months to fulfill all terms of the settlement before this proceeding could be dismissed. (D.I. 31). Two years later, on May 1, 2007, the Trust filed another status report stating that the parties had agreed to the terms of a settlement and needed only to complete documentation of the settlement. (D.I. 60). The report further stated that the Trust believed the settlement would be complete and the parties would seek dismissal of this action "within the next few weeks." (*Id.*).

On June 29, 2007, Shaw moved to bring a complaint in intervention in the Saudi Aramco Proceeding seeking declaratory and injunctive relief given the Court's determination that Shaw has assumed the Guaranty and Payment Letter under the APA. (*See* A309 (D.I. 61)). After briefing on the motion was complete, the Bankruptcy Court heard brief oral argument from the

parties on August 13, 2007. (D.I. 78). The Bankruptcy Court issued a memorandum opinion and order, dated August 31, 2007, denying Shaw's motion. (*See* A540, A574 (D.I. 79 & 80)). The Bankruptcy Court held that (i) Shaw does not have a sufficient interest in the Saudi Aramco Proceeding that will be impaired or affected by disposition of the Saudi Aramco Proceeding, and (ii) Shaw had waived its claim to the proceeds of the In-Kingdom Contract by operation of a settlement stipulation dated November 30, 2004. (*See* A540 (D.I. 79)). On September 7, 2007, Shaw filed a notice of appeal with respect to the Bankruptcy Court's denial. This is Shaw's Opening Brief on appeal.

## <u>SUMMARY OF THE ARGUMENT</u>

The resolution of this case centers on the APA, and the ultimate outcome of the SAMBA Proceeding. In the SAMBA Proceeding, this Court held that Shaw assumed the debt to SAMBA under the APA. If the decision is upheld on appeal, Shaw will have a claim to a portion of the proceeds of the In-Kingdom Contract under both the APA and equitable subrogation rights. Those proceeds are one of the things that the Trust seeks to recover in the Saudi Aramco Proceeding. In the event that Shaw is not permitted to intervene in the Saudi Aramco Proceeding, the Trust will be free to recover all available proceeds of the In-Kingdom Contract, including those proceeds that would rightfully belong to Shaw. In other words, the Trust stands to reap a windfall at Shaw's expense.

In denying Shaw's motion to intervene, Shaw respectfully submits that the Bankruptcy Court committed several incidences of reversible error. First, the Bankruptcy Court erred by mistakenly applying the standard for intervention as of right to Shaw's argument that it was also entitled to intervene permissively. Second, the Bankruptcy Court erred in finding that Shaw does not have a sufficient interest in the underlying litigation to be allowed to intervene as of right.

Third, the Bankruptcy Court committed reversible error by basing its denial of Shaw's Motion to Intervene upon an incorrect characterization of Shaw's claim. And finally, the Bankruptcy Court erred in holding that a November 30, 2004 settlement stipulation prevents Shaw from intervening in this action or bringing an action against the Trust that is related to SAMBA's claim.

**STATEMENT OF FACTS**

The factual background to this appeal is lengthy and complex. As previously noted, Shaw's intervention in the Saudi Aramco Proceeding became appropriate and necessary only as a result of the grant of summary judgment in favor of SAMBA in the separate, but factually related, SAMBA Proceeding. Both adversary proceedings relate to a secured financing arrangement entered into in the mid-1990's in the Kingdom of Saudi Arabia to finance the Ras Tanura Project.

**I.       The Ras Tanura Project**

SWEC and Abdullah Said Bugshan & Brothers ("Bugshan") formed the joint venture, BS&W, under the laws of the Kingdom of Saudi Arabia. (A18 (D.I. 1 at ¶15)). On or about June 28, 1994, BS&W entered into the In-Kingdom Contract with Saudi Aramco to upgrade Saudi Aramco's oil refinery in Ras Tanura, Saudi Arabia. (A18, A37 (D.I. 1 at ¶14 & Ex. A).

In order to help secure financing for BS&W from SAMBA, by letter dated October 11, 1994, SWEC executed the Guaranty and thereby agreed to repay 50% of BS&W's obligations to SAMBA, up to $35,000,000. (*See* A342 (D.I. 61 at Ex. A)). On January 22, 1995, BS&W received a line of credit from SAMBA for $35,000,000 to finance its work on the Ras Tanura Project. This loan was supported both by an assignment of BS&W's receivables from the Ras Tanura Project and the Guaranty from SWEC. On January 22, 1998, SAMBA required BS&W to sign an updated promissory note and credit agreement for the loan. (*See* A345 (D.I. 61 at Ex. B)).

According to SAMBA's proposed complaint in intervention in this action, on January 22, 1995, BS&W assigned the proceeds from the In-Kingdom Contract to SAMBA (the "Assignment of Proceeds"). (A227, A241 (D.I. 19 at Ex. A, ¶5 & Ex.1)). Previously, on September 21, 1994, BS&W issued a specific payment letter (the "Specific Payment Instruction Letter") to Saudi Aramco instructing that any and all compensation due from Saudi Aramco under the In-Kingdom Contract be paid to SAMBA. (A227, A245 (D.I. 19 at Ex. A, ¶6 *and* Ex. 2)). On November 13, 1994, Saudi Aramco acknowledged receipt of the Specific Payment Instruction Letter and its duties thereunder. (A227, A248 (D.I. 19 at Ex. A, ¶6 and Ex. 3)). Saudi Aramco again acknowledged the Assignment of Proceeds and Specific Payment Instruction Letter on June 2, 2002. (A227, A250-52 (D.I. 19 at Ex. A, ¶6 & Exs. 4-5)).

Disputes between BS&W and Saudi Aramco arose under the Ras Tanura Project. It appears that those disputes had little to do with the quality of BS&W's work and a lot to do with the then-current low price of oil, which was crippling Saudi Aramco. Among other things, Saudi Aramco refused to pay over $100 million that BS&W asserted was due it, thus causing BS&W to default under the credit facility provided by SAMBA. For example, the Complaint in this proceeding alleges, among other things, that:

> Saudi ARAMCO failed to perform its obligations under the In-Kingdom Contract in several regards, including but not limited to providing flawed conceptual designs for the Project; failing to provide Deliverables…on schedule; failing to render decisions on change order requests in a timely fashion; refusing to process or negotiate BS&W's claims in good faith; and failing to consider any scheduling impacts on the Project, despite its frequent and often unnecessary change order requests.

(A31 (D.I. 1 at ¶63)). The Complaint further alleges that such conduct constituted a breach of the In-Kingdom Contract, and that "BS&W suffered damages as a result of" such breach. (A32 (D.I. 1 at ¶¶66-67)).

Because of Saudi Aramco's breach of the In-Kingdom Contract, SWEC was forced to honor

its obligations under the Guaranty, and on December 22, 1998, BS&W's two shareholders, SWEC

and Bugshan, each agreed to repay half of the outstanding loan balance of approximately

$31,800,000, at the rate of $650,000 per month.  (*See* A351 (D.I. 61, Ex. C)).  SWEC paid most, but

not all, of its share of the loan back to SAMBA.

## II.    **The Debtors File For Bankruptcy And Shaw Enters The APA.**

The Debtors, which included SWEC, filed for bankruptcy, and Shaw and the Debtors

entered into the APA through which Shaw purchased a substantial portion, but not all, of the

Debtors' assets and assumed certain of their liabilities.  (*See* A353 (D.I. 61, Ex. D)).  The Debtors

and Shaw structured the APA such that the liabilities assumed by Shaw were tied to the

corresponding assets purchased by Shaw and, by and large, the assumed liabilities were determined

on a project-by-project basis.  For example, if – as this Court subsequently held – Shaw had

purchased the Debtors' rights with respect to the Ras Tanura Project, Shaw also would have

assumed the Debtors' liabilities associated with that project.  (*See* A376-77 (D.I. 61, Ex. D at 15-16)

(Section 2.01 of the APA entitles Shaw to "any and all claims and causes of action, including

privileges related thereto, of any Seller against any third parties relating to…the Assumed

Liabilities or the Assumed Contracts")).  However, both the Debtors and Shaw agree that Shaw

did not assume the Ras Tanura Project or any of its related liabilities.  (*See* A463 (D.I. 61, Ex. E)).

### A.    **SAMBA Brings a Proceeding Against Shaw to Recover for SWEC's Default Under the Guaranty and Payment Letter.**

As set forth above, SAMBA brought an adversary proceeding against Shaw and the Debtors

alleging that Shaw had assumed the debt owed by SWEC to SAMBA under the Guaranty, and thus

owed SAMBA the outstanding balance of $6,728,529 in principal plus interest (the "SAMBA

Claim").  (*See* A1 (Adv. Pro. No. 01-7766, D.I. 1)).  That matter is now on appeal in the Third

Circuit.

While the SAMBA proceeding was ongoing, there were several disputes that arose

between the Debtors (and subsequently the Trust) and Shaw regarding liabilities purportedly

assumed by Shaw under the APA.  Notably, those disputes did not include whether Shaw

assumed the Guaranty and Payment Letter as both parties agreed that Shaw had not assumed

those liabilities.  (*See* A465-66 (D.I. 61, Ex. E at ¶¶7-9)).  In order to resolve the other disputes,

the Trust and Shaw entered into a settlement stipulation dated November 30, 2004 (the

"Settlement Stipulation"). (A568 (D.I. 79 at 29)).  Under the Settlement Stipulation, Shaw

released the Trust from all causes of action "with respect to the Filed Claims".  (A568-69 (D.I.

79 at 29-30)).  The defined term "Filed Claims," refers to the "approximately 5,700 claims" filed

against the Debtors as of November 30, 2004.  (A569 (D.I. 79 at 30)).

**B.    SWEC Brings the Saudi Aramco Proceeding to Recover Proceeds Owed Under the In-Kingdom Contract.**

At the same time the SAMBA Proceeding was taking place, the Debtors filed the Saudi

Aramco Proceeding seeking, *inter alia*, an award of damages for Saudi Aramco's breach of the In-

Kingdom Contract, which underlies the Ras Tanura Project.  Specifically, Debtors (and now the

Trust) seek, among other things: (1) damages caused by Saudi Aramco's breach of the In-Kingdom

Contract; and (2) the turnover to SWEC (now the Trust) of $148 million owed to BS&W under the

In-Kingdom Contract.  (*See* A14 (D.I. 1)).  The Trust has assumed control of this proceeding as

successor to the SWEC-affiliated Debtors.  If the Trust prevails on its claims, the damages awarded

to it could exceed $100,000,000.

SAMBA moved to intervene in the Saudi Aramco Proceeding asserting that it was assigned

all of the proceeds from the In-Kingdom Contract.  Specifically, SAMBA's Complaint in

Intervention sought declaratory and injunctive relief that: (i) BS&W's Assignment of Proceeds for

the In-Kingdom Contract is valid and enforceable; (ii) BS&W's Specific Payment Instruction Letter

to Saudi Aramco that all compensation due under the In-Kingdom Contract is to be paid to SAMBA

is valid, enforceable and irrevocable; (iii) all monetary proceeds arising from judgments or

settlements of claims arising under the In-Kingdom Contract are assigned to and must be paid

directly to SAMBA and "shall be security for obligations of BS&W to SAMBA and may be applied

by SAMBA in satisfaction of all such obligations whether incurred in connection with the In-

Kingdom Contract or otherwise"; and (iv) prohibits Saudi Aramco from making payments related to

the In-Kingdom Contract to any party other than SAMBA, and prohibits the Trust or BS&W from

receiving payments related to the In-Kingdom Contract.  (A227-28 (D.I. 19 at Ex. A, ¶¶5-9)). The

Bankruptcy Court denied SAMBA's motion to intervene and SAMBA is still in the process of

appealing that decision.

      Also seeing its rights threatened, Shaw moved to bring a complaint in intervention in the

Saudi Aramco Proceeding seeking: (i) a declaration that Shaw is entitled to recover certain

proceeds derived under the In-Kingdom Contract; (ii) to enjoin the other parties to this proceeding

from receiving certain proceeds under the In-Kingdom Contract; (iii) a determination that the

Debtors would be unjustly enriched if Shaw is required to repay SAMBA; and (iv) indemnification

under Section 9.01 of the APA for losses incurred as a result of the Guaranty and Payment letter.

(A334-38 (D.I. 61, Ex. 1 at ¶¶28-44)).  The Bankruptcy Court denied Shaw's motion.

## ARGUMENT

### I.  Standard Of Review

      This Court will overturn the Bankruptcy Court's findings of fact only if they were clearly

erroneous, but will apply a plenary standard to its conclusions of law.  *American Flint Glass*

*Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999).  With respect to a

mixed question of law and fact, the Court should apply a mixed standard of review.  *Mellon Bank, N.A. v. Metro Comm., Inc.*, 945 F.2d 635, 641-42 (3d Cir. 1991).  The denial of a motion to intervene as of right pursuant to Rule 24(a) is subject to *de novo* review except for the requirement of "timeliness," which is subject to review for abuse of discretion.  *American White Cross, Inc. v. Orentzel*, 269 B.R. 555, 558 (D. Del. 2001).  The denial of a motion for permissive intervention pursuant to Rule 24(b) is reviewed for an abuse of discretion.  *Id.*

## II.     The Bankruptcy Court Committed An Error Of Law By Applying The Rule 24(a)(2) Standard To Shaw's Request To Intervene Permissively Under Rule 24(b).

The Bankruptcy Court mistakenly maintains that Shaw argued it was entitled to intervene under "Rule 24(a)(2), which provides for permissive intervention."  (A551 (D.I. 79 at 12)).  Permissive intervention, however, is allowed under Rule 24(b), as Shaw correctly argued in its Motion to Intervene.[2]  (*See* A323 (D.I. 61 at 15)).  Nonetheless, the Bankruptcy Court incorrectly stated that Shaw "argues it is entitled to intervene under Rule 24(a)(2), which provides: 'Upon timely application anyone may be permitted to intervene in an action…when an applicant's claim or defense and the main action have a question of law or fact in common.'" (A555 (D.I. 79 at 16)).  In so stating, the Court actually quotes the Rule 24(b) standard despite the reference to Rule 24(a)(2), and thus one might assume the Bankruptcy Court merely made a small typographical error.  The Bankruptcy Court, however, then proceeded to articulate the standard under Rule 24(*a*)(2), which it ultimately – and incorrectly – applied to Shaw's Rule 24(b) argument.  (*See id.*).

_____

[2] As of December 1, 2007, Rule 24 has been amended so that Rule 24(b)(2), which Shaw relied upon below, has been renumbered as Rule 24(b)(1)(B).

Rule 24(b) permits intervention at the discretion of the court. In making that determination, the court <u>must</u> evaluate whether the applicant's claim or defense and the main action have a question of law or fact in common. Fed. R. Civ. P. 24(b)(1)(B). The court also must consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(3). Here, the Bankruptcy Court failed to address whether Shaw's proposed complaint in intervention had questions of law or fact in common with the Saudi Aramco Proceeding even though the "most obvious case" for permissive intervention is when, as here, the intervenor has a claim against a party similar to or identical with that asserted by another party. *Automatic Sprinkler Corp. of America v. Fidelity & Deposit Co. of Maryland*, 22 F.R.D. 248, 250 (M.D. Pa. 1958). Shaw has an overriding economic interest in the outcome of the litigation and seeks to litigate the same breach of contract by Saudi Aramco as alleged by the Trust and to enforce its subrogation rights under the APA, Assignment of Proceeds and Specific Payment Instruction Letter. Similarly, the Bankruptcy Court failed to determine whether Shaw's intervention would unduly delay or prejudice the rights of the original parties to the Saudi Aramco Proceeding. Shaw's intervention could not unduly delay that proceeding because little progress has been made in it. If the Bankruptcy Court had engaged in the correct analysis of permissive intervention under Rule 24(b), it would have determined that Shaw should have been permitted to intervene in the Saudi Aramco Proceeding.

While a court may exercise broad discretion in reaching a determination as to whether an applicant should be granted permissive intervention, the court still is obligated to apply the correct legal standards in doing so. In this case, the Bankruptcy Court mistakenly applied the Rule 24(a)(2) standard to Shaw's argument that it should be allowed to intervene permissively and therefore did not address whether Shaw met the appropriate permissive intervention

standard.  Indeed, given the case law on that standard, a refusal to grant permissive intervention here would have been an abuse of discretion.  Therefore, the Bankruptcy Court's ruling was incorrect as a matter of law and should be reversed.

### III.    The Bankruptcy Court Incorrectly Found That Shaw Does Not Have A Sufficient Interest In The Underlying Litigation To Be Allowed To Intervene As Of Right.

The Bankruptcy Court denied Shaw's Motion to Intervene by finding that Shaw does not have a sufficient interest in the Saudi Aramco Proceeding that will be impaired or affected by disposition of that proceeding.  (A555 (D.I. 79 at 16)).  With respect, there can be no question that Shaw has a sufficient, if necessarily still contingent, stake in the subject matter of the Saudi Aramco Proceeding to justify its intervention.  This Court has held that Shaw assumed the liability on account of the SAMBA Claim by operation of the APA, and thus is liable to SAMBA for in excess of $10,000,000.  Shaw respectfully has appealed that holding, but if it is upheld and Shaw pays the SAMBA Claim, Shaw will become the entity with a right to recover certain proceeds under the In-Kingdom Contract.  The Bankruptcy Court determined, however, that Shaw does not hold a sufficient stake in the Saudi Aramco Proceeding to be entitled to intervene as of right.

### A.    The Bankruptcy Court Erroneously Subjected Shaw's Motion to a Higher Standard Than What Rule 24 Requires by Claiming Shaw Should Prove Its Underlying Claim in Order to Have a Sufficient Interest to Intervene.

Shaw argued below that if its assumption of the Guaranty is upheld on appeal, then Shaw will have satisfied BS&W's outstanding debt to SAMBA, and under the principle of equitable subrogation, Shaw will then become subrogated to SAMBA's rights to collect from BS&W, including the right to enforce the Assignment of Proceeds and Specific Payment Instruction Letter.  That conclusion is not subject to real dispute.  *See*, *e.g.*, *American Surety Co. of New York v. Bethlehem Nat'l Bank of Bethlehem*, 314 U.S. 314, 317 (1941) ("one who has been compelled to

pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other") (citations omitted); *Putnam v. Commissioner of Internal Revenue*, 352 U.S. 82, 85 (1956) ("upon the payment by the guarantor of the debt, the debtor's obligation to the creditor becomes an obligation to the guarantor…who steps into the creditor's shoes"); *Natwest USA Credit Corp. v. Alco Standard Corp*., 858 F. Supp. 401, 414 (S.D.N.Y. 1994) ("Under the doctrine of equitable subrogation, a guarantor has the right to be subrogated to any and all rights that a creditor or subrogor has against a debtor.").  Given Shaw's subrogated right to receive certain proceeds from the In-Kingdom Contract if this Court's determination regarding Shaw's assumption of the Guaranty is upheld by the Third Circuit, Shaw will have an obvious and significant pecuniary interest in the Saudi Aramco Proceeding to ensure that the Trust does not recover assets that belong to Shaw.

The Bankruptcy Court, however, determined that Shaw does not have a sufficient interest in the Saudi Aramco Proceeding.  (*See* A555 (D.I. 79 at 16)).  In so holding, the Bankruptcy Court committed reversible error by subjecting Shaw's Motion to Intervene to a higher standard than what Rule 24 requires.  In its Opinion, the Bankruptcy Court held that Shaw failed to prove that the Assignment of Contract Proceeds and Specific Payment Instruction Letter created a perfected security interest in proceeds from the Ras Tanura Project.  (*See* A559, A561 (D.I. 79 at 20 ("I doubt that BS&W effected a valid assignment under Saudi banking law….") *and* 22 (Shaw, in relying on SAMBA, "has not proved that it has a perfected security interest in the contract proceeds.")).  Thus, because Shaw failed to prove – prove, not merely allege – the existence of one of the bases for its subrogation rights under foreign law, the Court denied Shaw's request to intervene.

14

Rule 24, however, does not require that a proposed intervenor conclusively prove its claim at the intervention stage any more than a plaintiff must prove its claim in a complaint. *See Pennamco, Inc. v. Nardo Management Co.*, 435 A.2d 726, 728 (Del. Super. Ct. 1981) ("In deciding whether to permit intervention, all nonconclusory allegations supporting a motion to intervene are taken as true, absent sham or frivolity."). All that a movant must show under Rule 24 is that "there is a tangible threat to a *legally cognizable* interest to have the right to intervene." *Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) (emphasis added) (quoting *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987). Similarly, a movant is entitled to intervene unless "it appears that the proposed intervenor would not be entitled to relief under any set of facts which *could be proved* from the motion." *Midway Airlines, Inc. v. Northwest Airlines, Inc.*, 154 B.R. 248, 252 (N.D. Ill. 1993) (emphasis added).

The Bankruptcy Court did not follow the case law. Rather, it specifically held that "[i]t is Shaw's *obligation to prove* under applicable law that the Assignment of Contract Proceeds and the Specific Payment Instruction Letter created a perfected security interest in the proceeds." (A560-61 (D.I. 79 at 21-22) (emphasis added)). This finding is in direct contravention to the correct Rule 24 standard that anticipates a proposed intervenor demonstrating at the time intervention is sought only what could be proved instead of actually proving its claim. In this Circuit, upon establishing a legally cognizable claim that could be proven at trial, a party is entitled to intervene as of right. *Mountain Top*, 72 F.3d at 366.

The Bankruptcy Court held that Shaw did not conclusively prove its underlying claim to the proceeds of the In-Kingdom Contract, and then used that finding as a basis for denying Shaw's Motion. Shaw does not dispute that Rule 24 required the Court to review Shaw's underlying claim. Rule 24 does not, however, authorize the Court to render a final decision

regarding a claim upon a motion to intervene.  *See Pennamco*, 435 A.2d at 728 (a court "does not undertake to decide the ultimate validity of petitioners' alleged rights" in determining whether to permit intervention).  Here, the Court's determination of Shaw's claim went too far and should have been limited to finding whether Shaw might be entitled to relief if it were able to prove its claims at trial.

> **B.**     **The APA Entitles Shaw to Certain In-Kingdom Proceeds, Which Constitutes a Sufficient Interest to Intervene as of Right.**

Shaw argued below that the APA gives Shaw rights to certain proceeds from the In-Kingdom Contract.  (A525-28 (D.I. 68, ¶¶6-12)).  This Court found the Guaranty and Payment Letter to be Assumed Contracts or Assumed Liabilities under the APA.  (A486-87 (D.I. 61, Ex. F at 16-17) (holding "the Guaranty and Payment Letter are contracts that were assumed by defendant Shaw by operation of the APA", and, alternatively, they are "Assumed Liabilities" under the APA)).   While Shaw contests this finding on appeal, if it is upheld, then under the APA Shaw will be entitled to recover for any third-party claims or interests relating to the Guaranty or Payment Letter as Assumed Contracts or Assumed Liabilities.  Specifically, Section 2.01 of the APA states: "Sellers shall sell, assign, convey, transfer and deliver to Buyer, and Buyer shall purchase from Sellers, the Assets…including the following: … (k) *any and all claims and causes of action*, including privileges related thereto, of any Seller against any third parties *relating to* … (ii) *the Assumed Liabilities or the Assumed Contracts*…."  (A376-77 (D.I. 61, Ex. D at 15-16) (emphasis added)).

Shaw also argued there can be no doubt that the Guaranty and Payment Letter are related to the Trust's action against Saudi Aramco to recover under the In-Kingdom Contract.  As (correctly) alleged in the Trust's complaint, BS&W defaulted on its loan to SAMBA primarily due to Saudi Aramco's failure to pay what it owed on the Ras Tanura Project.  (*See*, *e.g.*, A21-22

(D.I. 1 at ¶¶25-28)).  Had Saudi Aramco not breached the In-Kingdom Contract, BS&W would have been able to repay SAMBA for its loan, and SWEC would not have had to act on its obligations under the Guaranty and agree to the terms of the Payment Letter.  The Debtors have brought this proceeding, in part, to assert a breach of the In-Kingdom Contract against Saudi Aramco for which SWEC (now the Trust) would have the right to recover if it is held liable for BS&W's debts (*see*, *e.g.*, A31-32 (D.I. 1 at ¶¶61-68)), and to have certain funds owed to BS&W by Saudi Aramco under the In-Kingdom Contract turned over to SWEC (now the Trust).  (*See*, *e.g.*, A32-33 (D.I. 1 at ¶¶69-76)).  Because the Guaranty and Payment Letter are related to this dispute under the In-Kingdom Contract, Shaw has a sufficient (if not substantial) interest in intervening in the Saudi Aramco Proceeding.

The Bankruptcy Court rejected Shaw's argument under Section 2.01 and held instead that this Court found that the In-Kingdom Contract is an "Excluded Asset" under the APA and thus Shaw has no right to intervene and enforce rights under the In-Kingdom Contract.  (A564 (D.I. 79 at 25)).  The Bankruptcy Court made this finding even though this Court specifically held that the In-Kingdom Contract was <u>not</u> "the contract at issue" in the dispute over whether Shaw assumed the Guaranty and Payment Letter under the APA.  (*See* A485 (D.I. 61, Ex. F at n. 12)).  The Bankruptcy Court also determined that the In-Kingdom Contract is an Excluded Asset because Schedule 2.02(e), which is a list of Excluded Assets under the APA, includes a reference to that contract.  (A564-65 (D.I. 79 at 25-26)).  Shaw agrees with this argument and is pursuing it on appeal, but, with respect, unless Shaw wins that appeal (in which case this litigation goes away) the Bankruptcy Court's argument is necessarily foreclosed here by this Court's opinion in the SAMBA Proceeding.  Indeed the Bankruptcy Court acknowledged that "at one time the In-Kingdom Contract and the Guaranty and Payment Letter may have been tangentially related,"

17

although it ultimately held that "as of the effective date of the APA they became completely independent of each other." (A566 (D.I. 79 at 27)). This latter conclusion does not necessarily follow. Why is it the agreements might have been at one point related, but the APA forever changed that reality? Shaw submits that it was clearly erroneous for the Bankruptcy Court to reject, at this stage, Shaw's legally cognizable argument that the APA (as interpreted by this Court – an interpretation that the Bankruptcy Court was required to treat as binding) gives Shaw rights under the APA to certain proceeds of the In-Kingdom Contract that are the subject of the Saudi Aramco Proceeding.

     **C.**     **The Bankruptcy Court Mistakenly Found that the Trust Will Not Be Unjustly Enriched Unless Shaw Intervenes.**

Shaw also argued that it is entitled to intervene as of right because the Trust would be unjustly enriched if Shaw is forced to pay for a debt that the Debtors (as predecessors to the Trust) agreed Shaw never assumed. (*See* A318 (D.I. 61 at 10)). As noted by the former President and Chief Restructuring Officer of S&W, James P. Carroll, it was "the Debtors' and Shaw's intention that Shaw assumed neither the benefits of the Ras Tanura Project, including any receivables, nor its burdens, including any obligation to repay the Ras Tanura Loan." (A466 (D.I. 61, Ex. E at ¶9)). However, if the Third Circuit upholds this Court's decision that Shaw assumed the Guaranty and Payment Letter under the APA, then Debtors will be unjustly enriched if they are allowed to obtain the benefits of the Ras Tanura Project without the concomitant burden of repaying BS&W's loan under that project.

The Bankruptcy Court found instead that the Trust will not be unjustly enriched if Shaw repays SAMBA because that outcome is explicitly called for by the terms of the APA. (*See* A568 (D.I. 79 at 29)). With respect, that conclusion does not follow. Rather the APA and the undisputed parol evidence both show that any party assuming the burden of a contract also

retained the benefits "associated" with it.  (*See* A463 (D.I. 61 at Ex. E)).  Here the burden was

the debt and the benefit was the possibility that Saudi Aramco would pay the amount it owed.

Neither party thought that Shaw was assuming the loan, but this Court held otherwise and thus

under the APA Shaw gets the corresponding benefit (at least to the extent it pays off the amount

due SAMBA).  Given that the Trust unexpectedly did not have to pay SAMBA, there can be no

question the Trust is being unjustly enriched to the detriment of Shaw if the Trust is allowed to

keep the benefits of the Saudi Aramco payments as well.  The Bankruptcy Court's determination

otherwise constitutes reversible error.

## IV.    The Bankruptcy Court Erred By Basing Its Decision Upon An Incorrect Characterization Of Shaw's Claim.

The Bankruptcy Court's analysis suffers another significant and fundamental flaw.  The

Court's denial of Shaw's Motion to Intervene is premised upon its characterization of Shaw's

claim to a portion of the proceeds of the In-Kingdom Contract as "a claim *against SWEC*."

(A551 (D.I. 79 at 12) (emphasis added)).  On the contrary, Shaw's claim to the proceeds of the

In-Kingdom Contract is not a claim against SWEC.  Rather, Shaw has been *subrogated* to

BS&W's claims against Saudi Aramco and now seeks to intervene in the Saudi Aramco

Proceeding to assert those claims against Saudi Aramco, which arise from the same operative

facts upon which the Trust's claims are based.  *Automatic Sprinkler*, 22 F.R.D. at 250 (the "most

obvious case" for permissive intervention is when the intervenor has a claim against a party

similar to or identical with that asserted by another party).

The Bankruptcy Court's characterization of Shaw's claim is perplexing in light of the

Court's statement of its understanding of Shaw's position:  "Shaw seeks intervention in order to

*obtain from Saudi Aramco* that which otherwise would go to the Trust if the Trust is successful

in its breach of contract cause of action."  (A551 (D.I. 79 at 12) (emphasis added)).  It appears

the Court understood that any recovery by Shaw would come from Saudi Aramco (indeed it could only come from Saudi Aramco), yet it characterized Shaw's claim as one against the Trust, which it is not. If Shaw were permitted to intervene, and were successful on its claims against Saudi Aramco, the practical effect might be that the Trust's recovery from Saudi Aramco is diminished. And, even if the Trust's recovery is diminished as a result of Shaw's recovery from Saudi Aramco, it does not follow that Shaw thereby has asserted a claim against the Trust (or that the Trust may obtain a double recovery). In fact, as the Bankruptcy Court seemingly acknowledged and then ignored, Shaw's recovery, if any, ultimately will come from Saudi Aramco. The Bankruptcy Court erred by failing to apply the theory of subrogation correctly. *See*, *e.g.*, *Natwest*, 858 F. Supp. at 414 ("Under the doctrine of equitable subrogation, a guarantor has the right to be subrogated to any and all rights that a creditor or subrogor has against a debtor.").

The Bankruptcy Court's finding that Shaw does not have a claim against the Trust that would entitle Shaw to intervene in the Saudi Aramco Proceeding thus misses the mark. That Shaw has no claim *against the Trust* does not mean that it is not entitled to intervene in the Saudi Aramco Proceeding to assert independent claims *against Saudi Aramco*. The Bankruptcy Court did not rule, or even consider, whether Shaw's claims against Saudi Aramco would entitle Shaw to intervene in the Saudi Aramco Proceeding. *First Indem. of America Ins. Co. v. Modular Structures, Inc.*, 27 F.3d 72 (3d Cir. 1994) (bankruptcy court's failure to consider alternative theory of recovery was reversible error); *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 268 & n.9 (3d Cir. 1991) (failure to make findings is reversible error). The Bankruptcy Court's incorrect characterization of Shaw's claims, and its failure to consider whether Shaw's independent claims against Saudi Aramco establish a basis for Shaw's intervention in the Saudi Aramco Proceeding, constitute reversible error.

**V.    The Bankruptcy Court Erred In Holding That The November 30, 2004 Settlement Stipulation Prevents Shaw From Intervening In This Action Or Bringing An Action Against The Trust That Is Related To SAMBA's Claim.**

      **A.    The Motion to Intervene Does Not Relate to a Filed Claim.**

Given the complexity of the transaction contemplated by the APA, the Trust and Shaw, among others, entered in the Settlement Stipulation in order to resolve several disputes regarding liabilities purportedly assumed by Shaw under the APA.  (A568 (D.I. 79 at 29)).  Under the Settlement Stipulation, Shaw released the Trust from all causes of action "with respect to the Filed Claims".  (A568-69 (D.I. 79 at 29-30)).  The defined term "Filed Claims," refers to the "approximately 5,700 claims" filed against the Debtors as of November 30, 2004.  (A569 (D.I. 79 at 30)).  In its Opinion, the Bankruptcy Court found that Shaw's claim to the proceeds of the In-Kingdom Contract was a claim with respect to a Filed Claim, and thus Shaw had waived its claim to a portion of the proceeds of the In-Kingdom Contract.  (A573 (D.I. 79 at 34)).  This finding constitutes reversible error.

The Court found that a cure claim filed by SAMBA relating to the Guaranty and Payment Letter existed as of November 30, 2004, and thus it is a "Filed Claim" under the Settlement Stipulation.  The Court further found that Shaw's claim to a portion of the proceeds from the In-Kingdom Contract is a claim "with respect to" that Filed Claim.  As discussed in Section III, *supra*, the claim Shaw seeks to assert in the Saudi Aramco Proceeding is not a claim against the Trust, but rather is a subrogation claim against Saudi Aramco.  Therefore, the release set forth in the Settlement Stipulation, which relates only to claims between Shaw and the Trust, is not even at issue.

**B.    The Parties Never Intended the Settlement Stipulation to Effect a Release of Any Claim by Shaw to the In-Kingdom Contract Proceeds.**

Even assuming, *arguendo*, that Shaw is seeking to assert claims against the Trust, the release is nonetheless inapplicable to this dispute.  At the time the parties executed the Settlement Stipulation, both Shaw and the Trust understood that Shaw had not assumed the liability on account of the SAMBA Claim, and that the Trust owned the claim to the In-Kingdom Contract proceeds.  (A466 (D.I. 61, Ex. E at ¶9)).  Thus, at the time of contracting, neither Shaw nor the Trust believed that Shaw had any rights with respect to the proceeds of the In-Kingdom Contract.  It was only after this Court held Shaw liable for the SAMBA Claim, which is in conflict with the parties' understanding of the APA, that Shaw's right to a portion of the In-Kingdom Contract proceeds first arose.  Under Delaware law it is the objective intention of the parties to a contract that governs its interpretation.  *See e.g., Comrie v. Enterasys Networks, Inc.*, 837 A.2d 1, 13 (Del. Ch. 2003) (The Court's function is to "attempt to fulfill, to the extent possible, the reasonable shared expectations of the parties at the time they contracted") (citations omitted).  In this case, at the time of their agreement, both Shaw and the Trust never intended the Settlement Stipulation to effect a release of any claim by Shaw to the In-Kingdom Contract proceeds.  Though the Trust contended otherwise below, that dispute is an evidentiary matter for trial – it is not something that would support dismissal of Shaw's Motion to Intervene at this early stage of the proceeding.

Given the circumstances of this case, the highly complex structure of the Settlement Stipulation and the change in the parties' understanding of the APA effected by the entry of summary judgment in favor of SAMBA, Shaw argued below that the Settlement Stipulation is not clear on its face and Shaw should be permitted to introduce parol evidence regarding the parties' original intentions.  The Bankruptcy Court never addressed whether the Settlement

Stipulation is clear on its face, but nonetheless found that Shaw has released its claim to the In-Kingdom Contract proceeds.    The Bankruptcy Court's failure to determine whether the Settlement Stipulation is clear on its face constitutes reversible error.

### CONCLUSION

For the foregoing reasons, Shaw respectfully requests that the Court enter an order holding that the Bankruptcy Court erred as a matter of law in denying Shaw's Motion to Intervene and finding that Shaw is allowed to intervene and bring its Complaint in Intervention in the Saudi Aramco Proceeding.

ASHBY & GEDDES

/s/ *Catherine A. Strickler*
Stephen E. Jenkins (I.D. No. 2152)
Gregory A. Taylor (I.D. No. 4008)
Catherine A. Strickler (I.D. No. 4310)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888

Dated: February 29, 2008          *Attorneys for The Shaw Group Inc.*
188339.1