# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| STONE & WEBSTER, INC., *et al.*,[1] | Case No. 00-2142 (PJW) |
| Debtors. | Jointly Administered |

| | |
|---|---|
| THE SHAW GROUP, INC., | |
| Appellant, | |
| - against – | C.A. No.:  07-00616 (SLR) |
| THE SWE&C LIQUIDATING TRUST, | |
| Respondent. | |

**RESPONDING BRIEF OF THE SWE&C LIQUIDATING TRUST TO THE APPEAL OF
THE SHAW GROUP, INC. FROM THE BANKRUPTCY COURT'S
<u>DENIAL OF SHAW'S MOTION TO INTERVENE</u>**

---

[1] The debtors are the Consolidated SWINC Estate and the Consolidated SWE&C Estate.  As more particularly set forth in Article VII(B) of the Third Amended Joint Plan of the Debtors in Possession, the Official Committee of Unsecured Creditors, Federal Insurance Company, Maine Yankee Atomic Power Company, and the Official Committee of Equity Security Holders with Respect to (I) Stone & Webster, Incorporated and Certain of its Subsidiaries and Affiliates and (II) Stone & Webster Engineers and Constructors, Inc. and Certain of Its Subsidiaries ("Third Joint Plan"), certain debtor subsidiaries of Stone & Webster, Incorporated are merged into Stone & Webster, Incorporated, and their estates have been substantively consolidated to become the Consolidated SWINC Estate; and certain debtor subsidiaries of Stone & Webster Engineers and Constructors, Inc. are merged into Stone & Webster Engineers and Constructors, Inc., and their estates have been substantively consolidated to become the Consolidated SWE&C Estate.  As of the Effective Date of the Joint Plan, all of the assets of the Consolidated SWE&C Estate were transferred to the SWE&C Liquidating Trust.

OHS West:260409776.2

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ........................................................................................ 1

II.     ISSUES PRESENTED AND STANDARD OF REVIEW............................... 2

        A.      Statement Of The Issues Presented For Review. .................................. 2

        B.      Standard Of Review. ........................................................................... 2

III.    STATEMENT OF THE CASE ..................................................................... 3

        A.      The Saudi Aramco Action. ................................................................... 3

        B.      The SAMBA And Shaw Actions. ......................................................... 4

IV.     STATEMENT OF FACTS............................................................................ 6

        A.      Shaw's Motion Is Merely An Attempt To Assert A Claim Against The Trust
                That Is Untimely Under Any Measure, And Would Prejudice The Trust's
                Creditors If Shaw Can Assert The Claim Now..................................... 6

        B.      This Court Has Determined Already That SAMBA Had No "Assignment
                Of Contract Proceeds" From BS&W, Much Less Any Assignment From SWEC,
                So SAMBA Had No Rights Against SWEC To Which Shaw Could Succeed. ..... 7

        C.      This Court's Findings And Conclusions Bar Shaw's Claim Because The
                Claim Neither Arises From An Assumed Contract, Nor Relates To An
                Assumed Liability. ........................................................................... 11

        D.      Multiple Agreements And Orders In The Bankruptcy Case Preclude Shaw
                From Asserting Any Claim To The Proposed Saudi Aramco Settlement............ 13

V.      SUMMARY OF ARGUMENT ................................................................... 16

VI.     ARGUMENT.............................................................................................. 18

        A.      Shaw's Interest Derives From A Facially Deficient "Assignment" From A
                Non-Party To A Non-Party, And Cannot Support Intervention-Of-Right. .......... 18

                1.      Like SAMBA, Shaw Lacks The Necessary Interest Or Article III
                        Standing To Assert A Statutory Right To Intervene................................. 18

                2.      Shaw Lacks A Sufficiently Protectable Interest To Support
                        Intervention As A Matter Of Right........................................................ 21

**TABLE OF CONTENTS**

**(Contd.)**

Page

B.    SAMBA's Claimed "Assignment" Does Not Involve Common Questions Of Law Or Fact With The Trust's Claims Against Saudi Aramco, Precluding Permissive Intervention. .................................................................................. 23

C.    Shaw Unambiguously Released Any Claim "Relating To" Its Liability On The Guaranty And Payment Letter. ............................................................... 25

D.    Shaw's Argument For Unjust Enrichment, And That The Bankruptcy Court Mischaracterized Its Claim, Are Not Only Incorrect But Contradictory. ............ 27

        1.    Shaw Fails To Make A Valid Claim For Unjust Enrichment. ................. 27

        2.    The Bankruptcy Court Did Not Incorrectly Characterize Shaw's Claim, As Shaw Demonstrates By Arguing That Its Claim Is Really A Claim For Unjust Enrichment Against The Trust. ............................................. 28

E.    In Any Event, Shaw's Motion Is Untimely And Cannot Support Intervention On Any Basis. .................................................................................................. 29

VII.    CONCLUSION. ........................................................................................................... 35

# TABLE OF AUTHORITIES

## CASES

Page

*Alexander v. Rendell,*
    246 F.R.D. 220 (W.D. Pa. 2007) ................................................................................. 32

*Allegheny Gen. Hosp. v. Philip Morris, Inc.,*
    228 F.3d 429 (3d Cir. 2000) ........................................................................................ 27

*Am. Mar. Transp., Inc. v. United States,*
    870 F.2d 1559 (Fed. Cir. 1989) ........................................................................ 22, 24-25

*Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.,*
    321 B.R. 147 (D.N.J. 2005).......................................................................................... 20

*Bramble Transp., Inc. v. Sam Senter Sales, Inc.,*
    294 A.2d 97 (Del. Super. Ct. 1971), *aff'd,* 294 A.2d 104 (Del. 1972) ........................... 20

*Brody v. Spang,*
    957 F.2d 1108 (3d Cir. 1992) ........................................................................................ 2

*City of Coatesville v. Del. Container Co.,* Civil Action No. 87-1475,
    1988 U.S. Dist. LEXIS 11152 (E.D. Pa. Sep. 28, 1988)................................................ 31

*Duttle v. Bandler & Kass,* 147 F.R.D. 69 (S.D.N.Y.),
    *aff'd mem.,* 999 F.2d 536 (2d Cir. 1993).................................................... 30, 31, 32, 33

*Financeameria Private Brands, Inc. v. Harvey E. Hall, Inc.,*
    380 A.2d 1377 (Del. Super. Ct. 1977) ......................................................................... 12

*Gen. Star Indem. Co. v. Virgin Island Port Auth.,*
    224 F.R.D. 372 (D.V.I. 2004)........................................................................... 22-23, 30

*Harris v. Pernsley,*
    820 F.2d 592 (3d Cir. 1987) ......................................................................................... 2

*Harris v. Reeves,*
    946 F.2d 214 (3d Cir. 1991) ......................................................................................... 21

*Heartwood, Inc. v. United States Forest Serv.,*
    316 F.3d 694 (7th Cir. 2003) ............................................................................. 30, 31, 32

*Hillside Enters., Inc. v. Carlisle Corp.,*
    944 F. Supp. 793 (E.D. Mo. 1996) .................................................................. 19, 20, 24

*Hobson v. Travelstead (In re Travelstead),*
    227 B.R. 638 (D. Md. 1998)......................................................................................... 19

## TABLE OF AUTHORITIES

### CASES
### (Contd.)

Page

*In re Edison Bros. Stores, Inc.*, No. 99-529 (JCA),
    2002 Bankr. LEXIS 1228 (Bankr. D. Del. May 15, 2002) ............................................. 33

*In re Torrez,*
    132 B.R. 924 (Bankr. E.D. Cal. 1991) ....................................................................... 20

*Lauren W. v. DeFlaminis,*
    480 F.3d 259 (3d Cir. 2007) ....................................................................................... 27

*Lucas v. McKeithen,*
    102 F.3d 171 (5th Cir. 1996) ...................................................................................... 30

*MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n,*
    471 F.3d 377 (2d Cir. 2006) .............................................................................24, 30, 32

*Mausolf v. Babbitt,*
    85 F.3d 1295 (8th Cir. 1996) ...................................................................................... 19

*McDaniel v. Am. Druggists' Ins. Co. (In re Nat'l Buy-Rite, Inc.),*
    11 B.R. 191 (Bankr. N.D. Ga. 1981) .........................................................21, 22, 23, 24

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.,*
    72 F.3d 361 (3d Cir. 1995) .....................................................................................22, 23

*Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n,*
    342 F.3d 242 (3d Cir. 2003) ....................................................................................... 19

*Nicini v. Morra,*
    212 F.3d 798 (3d Cir. 2000) .................................................................................... 2, 18

*Pansy v. Borough of Stroudsburg,*
    23 F.3d 772 (3d Cir. 1994) ......................................................................................... 19

*Pasha Auto Warehousing, Inc. v. Phila. Reg'l Port Auth.*, Civil Action No. 96-6779,
    1997 U.S. Dist. LEXIS 20511 (E.D. Pa. Dec. 23, 1997) ................................................ 22

*Rigco, Inc. v. Rauscher Pierce Refsnes, Inc.,*
    110 F.R.D. 180 (N.D. Tex. 1986) ............................................................................... 23

*Saudi American Bank v. Saudi Arabian Oil Co. (In re Stone & Webster Inc.),*
    Civ. No. 06-399-SLR, 2007 U.S. Dist. LEXIS 63941
    (D. Del. Aug. 29, 2007).............................................................................................. 10

# TABLE OF AUTHORITIES

## CASES
### (Contd.)

Page

*Saudi American Bank v. Shaw Group, Inc. (In re Stone & Webster, Inc.)*,
354 B.R. 686 (D. Del. 2006) .......................................................................................... 28

*Saudi American Bank v. Shaw Group, Inc. (In re Stone & Webster, Inc.)*,
Civ. No. 04-834-SLR, 2005 U.S. Dist. LEXIS 7912 (D. Del. May 3, 2005) .............26, 27

*SEC v. Tipco, Inc.*,
554 F.2d 710 (5th Cir. 1977) ........................................................................................ 34

*Stewart v. Rubin*,
948 F. Supp. 1077 (D.D.C. 1996) .................................................................. 19, 30, 31, 32

*Trump Taj Mahal Assocs. v. Alibraham (In re Trump Taj Mahal Assocs.)*,
156 B.R. 928 (Bankr. D.N.J. 1993) ............................................................................... 33

*Travelers Indem. Co. v. Dingwell*,
884 F.2d 629 (1st Cir. 1989) ......................................................................................... 32

*United States v. Puerto Rico*,
227 F.R.D. 28 (D.P.R. 2005) ......................................................................................30, 32

*Vazman, S.A. v. Fidelity Int'l Bank*,
418 F. Supp. 1084 (S.D.N.Y. 1976) ........................................................... 21, 22, 23, 24

*Vertientes, Ltd. v. Internor Trade, Inc. (In re Vertientes, Ltd.)*,
845 F.2d 57 (3d Cir. 1988) ............................................................................................ 34

*West Elecs., Inc. v. Nat'l Union Fire Ins. Co. (In re West Elecs., Inc.)*,
Civ. No. 91-3781 (GEB), 1992 U.S. Dist. LEXIS 14503 (D.N.J. Sep. 14, 1992) ........... 30

## STATUTES AND RULES

11 U.S.C. § 105 ............................................................................................................. 13

11 U.S.C. § 363 ............................................................................................................. 13

11 U.S.C. § 365 ............................................................................................................. 13

11 U.S.C. § 1109 ....................................................................................................18, 19, 20

11 U.S.C. § 1129 ......................................................................................................6, 14, 15

11 U.S.C. § 1145 ........................................................................................................... 13

11 U.S.C. § 1129 ............................................................................................................. 6

**TABLE OF AUTHORITIES**

**STATUTES AND RULES**
**(Contd.)**

Page

Bankr. D. Del. L.R. 9018-1...................................................................................... 16

Fed. R. Bankr. P. 2002............................................................................................. 13

Fed. R. Bankr. P. 6004............................................................................................. 13

Fed. R. Bankr. P. 6006............................................................................................. 13

Fed. R. Bankr. P. 9014............................................................................................. 13

Fed. R. Civ. P. 24 ..............................................................................................*passim*

**SECONDARY AUTHORITIES**

Alan N. Resnick, Henry J. Sommer, *Collier on Bankruptcy* (14th ed. 2006)............................. 19

The SWE&C Liquidating Trustee ("Trustee"), on behalf of the SWE&C Liquidating Trust ("Trust"), as successor-in-interest to plaintiff Stone & Webster Engineering Corporation ("SWEC"), hereby responds to the Opening Brief Of Appellant The Shaw Group, Inc. ("Opening Brief") on appeal from the bankruptcy court's denial of Shaw's Motion to intervene in the underlying adversary proceeding against Saudi Arabian Oil Company ("Saudi Aramco"). In opposition thereto, the SWE&C Liquidating Trustee states as follows:

## I. INTRODUCTION

The tortured history of this and related cases belies the simple facts: the Shaw Group, Inc. ("Shaw") is trying to commandeer a settlement between the Trust and Saudi Aramco for which Shaw did not assert a claim in the bankruptcy case (much less a timely claim), for which Shaw released any potential claim in a settlement with the Trust, for which Shaw has no privity to assert the claim, and for which Shaw delayed at least five years to assert, then tried to assert it though the back door of intervention rather than through the ordered process of a proof of claim. Even if it had a valid claim – contrary to all facts and law –  Shaw waited until the Trust engineered the settlement and now tries to deny the settlement to the creditors who funded the efforts.

Shaw attempts to piggyback on a theory espoused first by Saudi American Bank ("SAMBA") to intervene in this same case – a theory that this Court labeled as "dependent on a house of cards" when it denied SAMBA's appeal from the denial of intervention. Shaw is one step further removed from SAMBA's claim to a settlement between the Trust and Aramco – and, therefore, Shaw can fare no better. As it did with SAMBA's appeal, this Court should deny Shaw's attempts to intervene for Shaw's reliance on the same legal fictions that underlay SAMBA's appeal, and that require yet more legal fiction to concoct a Shaw claim.

## II.  ISSUES PRESENTED AND STANDARD OF REVIEW

**A.    Statement Of The Issues Presented For Review.**

1.    Whether the Bankruptcy Court's inadvertent failure to analyze Shaw's right to intervene-of-right under Rule 24(a)(2) is significant when the Bankruptcy Court found properly that Shaw had no standing or sufficient interest to intervene on any basis.

2.    Whether the Bankruptcy Court found correctly that Shaw could demonstrate no claim to the Trust's settlement with Saudi Aramco, a party to which Shaw can show no privity or right to subrogation.

3.    Whether the Bankruptcy Court found correctly that Shaw's claim was in reality a claim against the Trust, and not a claim against Saudi Aramco, a party to which Shaw had no privity or right to subrogation, and whether such a finding is even relevant.

4.    Whether the Bankruptcy Court found correctly that, in any event, Shaw released any claim to be subrogated to SAMBA's rights.

5.    Whether the Bankruptcy Court could have denied intervention based on Shaw's five-year delay, seeking intervention only when settlement seemed imminent.

**B.    Standard Of Review.**

The reviewing court reviews a denial of a motion to intervene for abuse of discretion. *See, e.g., Brody v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992).  Though review is "more stringent" for review of an order denying intervention of right, the reviewing court will affirm unless the lower court "reached a decision that we are confident is incorrect." *Id.* (quoting *Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir. 1987)).  The reviewing court is "more reluctant to intrude into the highly discretionary decision of whether to grant permissive intervention." *Id.* The reviewing court may affirm on any ground supported by the record.  *See, e.g., Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000).

## III. STATEMENT OF THE CASE

### A.    The Saudi Aramco Action.

Five years before Shaw sought to intervene, SAMBA moved to intervene in an adversary proceeding brought by Stone & Webster, Incorporated, and SWEC as debtors-in-possession against Saudi Aramco.[2]  As its basis for intervention, SAMBA claimed to have an "assignment of [Saudi Aramco] contract proceeds" from a limited liability, Bugshan S&W Limited ("BS&W"), to SAMBA.  SAMBA purported to bring its claims not against BS&W, but against BS&W's shareholders:  SWEC and Abdullah Said Bugsan & Brothers ("ASB&B"), and SAMBA moved to join ASB&B in the action.[3]

Following the effective date of a plan of liquidation in the underlying bankruptcy case, the Trust and the SWINC Plan Administrator substituted as successors-in-interest to the debtors.[4]  By stipulation of the parties, the SWINC Plan Administrator later withdrew.[5]

After the Trust's involvement in the adversary proceeding, the bankruptcy court ordered the parties – including "proposed Intervenor" SAMBA – to mediation.[6]  Though Shaw's counsel attended the same hearing in which the bankruptcy court ordered mediation,[7] Shaw did not ask

---

[2]  *See* Complaint, May 31, 2002 [D.I. #1] (A14).  The Trust is not submitting an appendix with this Responding Brief, but stands ready to provide an appendix if the Court desires. Nevertheless, for the Court's convenience, the Trust cites to pages in Shaw's Appendix when the cited document can be found therein.  The format of such cites is "A___" in parentheses following the citation.  In all other cases, the Trust cites to documents by title, date, docket number, and if not filed in the adversary proceeding being appealed from, by case or adversary proceeding number.

[3]  *See* Motion To Intervene And To Join Abdullah Said Bugshan & Brothers As A Defendant, November 7, 2002 [D.I. #19] (A220).

[4]  *See* Notice Of Substitution Of Parties And Of Counsel, March 10, 2004 [D.I. #26].

[5]  *See* Order Approving Stipulation Of Withdrawal, August 26, 2005 [D.I. #34].

[6]  Order Referring Adversary Proceeding To Mediation, June 10, 2004 [D.I. #28].

[7]  Hearing Held/Court Sign-In Sheet, May 18, 2004 [D.I. #5109, Bankruptcy Case No. 00-2142].

for the opportunity to participate in the mediation between the Trust and Saudi Aramco. Though the bankruptcy court's order referring the matter to mediation provided that "other interested parties may participate in the mediation upon their agreement to pay a pro rata share of the Mediator's fees and expenses,"[8] Shaw did not ask to participate.

At a hearing on April 25, 2006, the bankruptcy court denied SAMBA's motion to intervene.[9] Though moving initially to join ASB&B, SAMBA neither pursued joinder in its briefing[10] nor argued for joinder at the hearing.[11] Although SAMBA is appealing from the bankruptcy court's denial of SAMBA's Motion to intervene, and from this Court's affirmance of that order, SAMBA did not appeal from any inaction on its motion to join ASB&B.[12]

## B.    The SAMBA And Shaw Actions.

The debtors filed an adversary proceeding against SAMBA to recover preference payments from SWEC to SAMBA, and to reduce or disallow SAMBA's claims against SWEC.[13] Shortly thereafter, SAMBA filed an adversary proceeding against Shaw and SWEC, arguing that Shaw assumed the liability on a "Guaranty" and "Payment Letter" from SWEC to SAMBA; or, that if Shaw did not assume the liability, then SWEC retained the liability.[14] SAMBA's action arose from a cure claim and proof of claim alleging the same theory.[15]

---

[8]  Order Referring Adversary Proceeding To Mediation, June 7, 2004 [D.I. #28], ¶ 4.

[9]  Transcript Of Hearing, April 25, 2006 [D.I. #54].

[10]  Reply To The SWE&C Liquidating Trustee's Opposition To Saudi American Bank's Motion To Intervene And To Join Abdullah Said Bugshan & Brothers, April 24, 2006 [D.I. #46].

[11]  Transcript, [D.I. #54].

[12]  Notice Of Appeal, May 10, 2006 [D.I. #52].

[13]  *See* Complaint, August 1, 2001 [D.I. #1, Adversary Proceeding No. 01-1120] (A14-A35).

[14]  *See* Memo. Opinion, August 31, 2007, at 3 [D.I. #79] (A542); Complaint Of Saudi American Bank, October 16, 2001 [D.I. #1, Adversary Proceeding No. 01-7766 (PJW)] (A1).

[15]  Memo. Opinion, August 31, 2007, at 30-31 [D.I. #79] (A569-A570); Complaint Of Saudi American Bank, October 16, 2001 [D.I. #1, Adversary Proceeding No. 01-7766 (PJW)] (A11).

To settle the two prior-described adversary proceedings, the debtors agreed to pay SAMBA $1 million cash, and to permit SAMBA a $2.5 million allowed claim. However, if SAMBA prevailed against Shaw, SAMBA's claim would reduce dollar-for-dollar for every dollar that SAMBA recovered in excess of $3 million.[16] The settlement provided that it was not "intended to have . . . any effect" on SAMBA's action against Shaw or SAMBA's Motion to intervene in the debtors' case against Saudi Aramco, but the Trust's creditors had already suffered the detriment of the $1 million cash payment, and the settlement does not provide for its return no matter how much SAMBA collects from Shaw.[17]

Shaw and SAMBA agreed to withdraw the reference of their adversary proceeding.[18] After cross-motions for summary judgment, this Court concluded that Shaw assumed SWEC's liability to SAMBA, and entered judgment for SAMBA.[19] Though filing no prior claim against the debtors or the Trust, Shaw now claims that it must have succeeded to SAMBA's rights to the alleged "assignment of contract proceeds."

---

[16] *See* Order Approving Settlement With Saudi American Bank, June 23, 2003; Exhibit A (Settlement Agreement, ¶ 7) [D.I. #4289, Bankruptcy Case No. 00-2142].

[17] *Id.*, ¶ 6.

[18] *See, e.g.*, Plaintiff Saudi American Bank's Answering Brief To The Shaw Group, Inc.'s Motion For Withdrawal Of The Reference, June 30, 2004, at 1 [D.I. #81, Adversary Proceeding No. 01-7766 (PJW)] ("As a preliminary matter, SAMBA has no objection to the District Court's withdrawal of its reference of this Adversary Proceeding to the Bankruptcy Court.").

[19] *See* [Proposed] Complaint In Intervention By The Shaw Group, Inc., Exhibit F (Memo. Opinion, May 3, 2005, [D.I. #11, Civ. No. 04-834-SLR]) (A470); Exhibit G (Judgment In A Civil Case, May 4, 2005 [D.I. #12, Civ. No. 04-834-SLR]) (A490).

## IV.  FACTUAL DISCUSSION

**A.    Shaw's Motion Is Merely An Attempt To Assert A Claim Against The Trust That Is Untimely Under Any Measure, And Would Prejudice The Trust's Creditors If Shaw Can Assert The Claim Now.**

Even if it had a valid basis to assert a claim, Shaw's Motion is an attempted end-run around its failure to file any claim against the Trust for Shaw's liability to SAMBA.  All time limits to file a claim expired long ago.  Though Shaw was served with SAMBA's adversary complaint almost five years before seeking intervention,[20] Shaw filed no claim against SWEC or the Trust.  Every bar date for filing a proof of claim has long since expired, including the bar date of August 2000 for filing prepetition claims, the Confirmation Order's deadline in January 2004 for filing claims arising from the rejection of executory contracts,[21] and the Third Joint Plan's deadline of February 2004 to file administrative claims.[22]  This Court entered its decision and judgment against Shaw on the SAMBA liability more than two years before Shaw sought intervention.[23]  The bankruptcy court denied SAMBA's motion to intervene well over a year before Shaw moved to intervene.[24]  Yet Shaw waited until June 2007 to claim any interest at all in the Trust's action against Aramco.  Shaw's claim is untimely under any theory.

Shaw's intervention at this late date would severely prejudice the Trust's creditors. When the bankruptcy court sent the Trust to mediate with Aramco more than three years before

---

[20]  Complaint Of Saudi American Bank, October 18, 2001 [D.I. #1, Adv. No. 01-7766 (PJW)].

[21]  Findings Of Fact, Conclusions Of Law And Order Under 11 U.S.C. § 1129(a) And (b) Confirming Third Amended Joint Plan, January 26, 2004, ¶ 23 [D.I. #4879, Bankruptcy Case No. 00-2142] ("Confirmation Order").

[22]  *Id.*, Exhibit A (Third Amended Joint Plan), Art. XV, § A, ¶ 1, at 79-80.

[23]  *See* [Proposed] Complaint In Intervention By The Shaw Group, Inc., Exhibit F (Memo. Opinion, May 3, 2005 [D.I. #11, Civ. No. 04-834-SLR]) (A470).

[24]  Transcript Of Hearing, April 25, 2006 [D.I. #54]; Order Denying Motion To Intervene, May 1, 2006 [D.I. #50].

Shaw moved to intervene, Shaw claimed no financial interest in the Trust's action.[25] Shaw permitted the Trust to bear the cost of negotiations that have consumed years of efforts, including meetings in New York and London. Rather than seeking to intervene – or even to assert an interest in the mediation between the Trust and Aramco – Shaw admittedly waited until the Trust announced its belief that it could settle the Aramco action within weeks,[26] prejudicing the creditors who bore the cost of the settlement, and attempting to deny the benefit of those efforts to the creditors who funded them.

**B.      This Court Has Determined Already That SAMBA Had No "Assignment Of Contract Proceeds" From BS&W, Much Less Any Assignment From SWEC, So SAMBA Had No Rights Against SWEC To Which Shaw Could Succeed.**

Having been found liable for SWEC's agreement to repay SAMBA, Shaw claims to be subrogated to SAMBA's rights. But SAMBA, and now Shaw, rely on an alleged "assignment of contract proceeds" from BS&W to SAMBA for Shaw's claim. But Shaw has no more evidence of any such assignment than SAMBA had. Like SAMBA, Shaw does not and cannot provide any evidence of a perfected security interest in BS&W's "contract proceeds," much less to any proceeds owing to SWEC.

The bankruptcy court denied SAMBA's motion to intervene, finding that SAMBA had no evidence that BS&W – not even a party to this litigation – assigned proceeds of any contract:

> Looking first at Exhibit 1 to your motion, this is captioned Assignment of Contract Proceeds, I guess the first thing I would note is that it's dated the 22nd of January, 1995. You said the loan was in January of '98. But more importantly, that document, quote, "Assignment of Contract Proceeds" recites the assignor

---

[25]  *See supra* notes 7 & 8.

[26]  Motion To Intervene By The Shaw Group Inc., June 29, 2007, ¶ 12 [D.I. #61] ("On May 1, 2007, Debtors' successor in interest, the SWE&C Liquidating Trust, filed another status report stating that the parties have agreed to the terms of a settlement and need only to complete the documentation of the settlement. The report further states that the SWE&C Liquidating Trust believes the settlement will be complete and the parties will seek dismissal of this action 'within the next few weeks.'" (citations omitted) (A313).

hereby assigns to the bank all the proceeds of the contract. Further down on that column it says, The assignor shall immediately notify all payors under the contract of this assignment in such form as may be required by payor, or if no specific form is required, by letter in substantially the following form. And then there's a form letter that says, We hereby advise you that we have executed an assignment of proceeds in favor of Saudi Arabian, Saudi American Bank. But that's not the letter that was sent, and I'm now looking at Exhibit 2, which is a September 21, 1994, quote, "Specific Payment Instruction Letter", close quote. And it reads quote, "This letter" – and this is a letter from the borrower, to, to the Saudi Arabian Oil Company – quote, "This letter requests and authorizes you to pay Saudi American Bank, Floor (phonetic) branch, P.O. Box 842, Alchobar (phonetic) with a zip code, Saudi Arabia, for credit to our account any and all compensation due from you under contract number 65004." It then goes on to say, and I quote, "We shall mark all our invoices presented to you to pay to Saudi American Bank, Floor Branch, P.O. Box" etcetera "for account of Bugshan, S & W Company Limited." Close quote. That doesn't sound like an assignment to me. It sounds like a direction as to what account the proceeds should be paid, and it identifies account of the party that contracted with the Saudi Arabian Oil Company. Isn't that what it says? Let me go on. In Exhibit no. 4, which is a May 11, 2002 letter from the bank to the oil company, it references as assignment of all payments, and it says, We write to remind Saudi Aramco that BS&W by letter dated September 21, 1994, paren (the, quote, "Specific Payment Instruction Letter", close quote) a copy of which is attached, requested and authorized, etcetera. And in Exhibit 5, the response from the oil company to the bank is to confirm the assignment and authorization contained in the subject specific payment instruction letter which is not a letter suggesting an assignment. And your response is?[27]

The bankruptcy court concluded that if SAMBA believed it had a right to recovery under Saudi commercial law – an issue on which SAMBA provided no evidence either by motion or at the hearing – SAMBA should pursue that right in a Saudi forum.[28]

In response to Shaw's Motion to intervene, the bankruptcy court elaborated on its findings and conclusions:

As I stated in denying SAMBA's motion to intervene, I doubt that BS&W effected a valid assignment under Saudi banking law, which I assume applies, because BS&W never issued the kind of notice letter called for in the Assignment of Contract Proceeds.

---

[27] Transcript of Proceedings [D.I. #54], at 6-7.

[28] *Id.* at 24.

For a number of reasons, the Specific Payment Instruction Letter does not effect the result that SAMBA asserts.

(1) Contrary to BS&W's agreement in the Assignment of Contract Proceeds to advise payors of the assignment of the contract proceeds to SAMBA, the specific Payment Instruction Letter does not even mention an assignment.

(2) That letter only tells Saudi Aramco what BS&W bank account in SAMBA should receive the proceeds. The Specific Payment Instruction Letter states in relevant part: "This letter requests and authorizes you to pay Saudi American Bank, Fluor Branch, P.O. Box 842, Al Khobar 31952, Saudi Arabia for credit to *our* account any and all compensation due from you under contract number 65004, as it may be changed from time to time." BS&W directs payment to go into "our account" at SAMBA, and not to SAMBA itself. The Specific Payment Instruction Letter then goes on to state: "We shall mark all our invoices presented to you Pay to Saudi American Bank, Fluor Branch, P.O. Box 842, Al Khobar 31952, Saudi Arabia *for account of 'Bugshan S&W Company Limited.'*"

(3) As the Specific Payment Instruction Letter is dated September 21, 1994, four months before the Assignment of Contract Proceeds was signed, it seems highly unlikely that the Specific Payment Instruction Letter was sent pursuant to the instructions in the Assignment of Contract Proceeds.

(4) Finally, the Specific Payment Instruction Letter also states: "Payments hereunder shall only be made against invoices submitted by us and not otherwise." There is nothing in the record thus far that suggests that the money judgment being sought by the Trust against Saudi Aramco would be with respect to invoices submitted by BS&W. Indeed, two of the four counts of the Complaint (declaratory judgment and indemnification) would not likely be the product of invoices submitted by BS&W. Thus, a judgment in favor of the Trust could be otherwise then from "invoices submitted by" BS&W.

It is Shaw's obligation to prove under applicable law that the Assignment of Contract Proceeds and the Specific Payment Instruction Letter created a perfected security interest in the proceeds. On this issue, Shaw offers nothing in addition to the argument made by SAMBA in its intervention motion and SAMBA failed to meet its burden. At the hearing on SAMBA's intervention motion, SAMBA's counsel did not attempt to validate the assignment under Saudi law, or any other law. Thus, I conclude again that SAMBA has not proved that it has a perfected security interest in the contract proceeds. As SAMBA has no legal or equitable rights to the proceeds, there is no basis to apply the doctrine of subrogation in Shaw's favor.[29]

---

[29] Memo. Opinion, August 31, 2007, at 20-22 [D.I. #79] (emphases in original) (citations omitted) (footnote omitted) (A559-A561).

This Court reached the same conclusion when SAMBA appealed the denial of its intervention motion:

> Given my view of the underlying facts, I decline to embrace the legal fiction upon which SAMBA has to rely to justify intervention in the adversary, to wit, that SWEC's potential liability for the conduct of BSW under the Ras Tanura Contract extends to the Assignment, of which SWEC was not a signatory. I further conclude that, even if SWEC were deemed to be obligated under the Assignment, a reasonable interpretation of the Assignment limits SAMBA's rights thereunder to funds actually deposited in BSW's bank account (i.e., in SAMBA's possession at any given time), as would be the case under the common law of setoff. Therefore, if funds collected by SWEC were to pass through SAMBA, SAMBA may assert those rights in Saudi Arabia (assuming BSW still has an account). Absent actual possession of the funds, however, I decline to rule that SAMBA has the broad, virtually unlimited right to claim any monies related to the Ras Tanura Contract, especially in light of the added protection SAMBA acquired through the Guaranty.[30]

SAMBA, at least, had the privity with non-party BS&W for the "Specific Payment Instruction Letter." Shaw lacks even that privity, so its theory cannot fare any better than SAMBA's theory.

Shaw's theory suffers further from the fact that Shaw cannot intervene in a lawsuit involving a contract to which neither SAMBA nor Shaw can claim status as a third-party beneficiary. Shaw asserts its entitlement under the so-called "In-Kingdom Contract" between BS&W and Saudi Aramco.[31] But that contract precludes any claim by SAMBA or Shaw: "This

---

[30] *Saudi American Bank v. Saudi Arabian Oil Co. (In re Stone & Webster Inc.)*, Civ. No. 06-399-SLR, 2007 U.S. Dist. LEXIS 63941, at *7 (D. Del. Aug. 29, 2007) (footnote omitted).

[31] *See, e.g.*, Motion To Intervene By The Shaw Group Inc., June 29, 2007, ¶ 3 [D.I. #61] ("As alleged in SAMBA's Complaint in Intervention in this action, on January 22, 1995, BS&W assigned the proceeds from the In-Kingdom Contract to SAMBA (the 'Assignment of Proceeds').") (A310). The debtors' adversary complaint against Saudi Aramco actually relied on two contracts:

> [T]he In-Kingdom Contract was intertwined with a contract (the "Out-of-Kingdom Contract") between Aramco Services Corporation, a wholly-owned subsidiary of Saudi ARAMCO incorporated in Delaware and based [sic] Houston, Texas . . . . Despite the fact that the In-Kingdom Contract and Out-of-Kingdom Contract purport to be two separate contracts, the ARAMCO Entities did not always draw formal distinctions between the two contracts. For example, the ARAMCO Entities both responded to SWEC using the stationary [sic] of the other entity on matters concerning the two contracts.

Contract shall not be deemed for the benefit of any third party nor shall it give any person not a party to this Contract any right to enforce its provisions."[32]  As the bankruptcy court itself noted, that same theory would preclude any claim by SWEC or the Trust.[33]  However, the Trust already clarified that the Trust is prepared to file an amended complaint asserting claims unquestionably belonging only to SWEC and its successor, the Trust, if settlement efforts are unsuccessful.[34] Until then, the bankruptcy course stayed the case,[35] Shaw did not seek relief from the stay, and Shaw's Motion was both a breach of the stay and, at a minimum, premature before the filing of the Trust's amended complaint.

**C.    This Court's Findings And Conclusions Bar Shaw's Claim Because The Claim Neither Arises From An Assumed Contract, Nor Relates To An Assumed Liability.**

This Court's decision that Shaw assumed SWEC's *debt* to SAMBA precludes Shaw's theory of intervention.  First, the decision contradicts Shaw's claim that it is entitled to the Saudi Aramco settlement because it acquired "any and all claims and causes of action . . . of any Seller against any third parties relating to . . . Assumed Contracts."[36]  This Court did not find that Shaw assumed the Saudi Aramco contract.  To the contrary, the Court explicitly found that the Saudi

---

(Complaint, May 31, 2002 [D.I. #1], ¶ 19) (A19-A20).

[32]  *Id.*, Exhibit A, § 31.5 at A-38 (A78).

[33]  Transcript Of Hearing, May 11, 2006 [D.I. #54], at 18 ("And this Debtor was not a party to the contract with the oil company either.  I have a great deal of difficulty understanding how they are ever going to succeed on the merits of this case.").

[34]  *Id.*, at 26.

[35]  Order Referring Adversary Proceeding To Mediation, June 7, 2004 [D.I. #28], ¶ 5 ("Until the parties report to the court that mediation efforts have failed to result in a consensual resolution of the disputes at issue in or related to the Adversary Proceeding, the Adversary Proceeding is and shall remain stayed.").

[36]  Motion To Intervene By The Shaw Group Inc., June 29, 2007, ¶ 18 [D.I. #61] (quoting APA) (A316).

Aramco contract was not "at issue."[37]  The only issue was the assumed liability of SWEC's bank debt in which SWEC agreed to pay off BS&W's loan.

The Court's decision also precludes Shaw's claim that it is entitled to the Saudi Aramco settlement because it acquired "any and all claims and causes of action . . . of any Seller against any third parties relating to . . . Assumed Liabilities."[38]  In defense against SAMBA's claim, Shaw argued that it did not assume the Guaranty because Shaw assumed no liabilities "associated with" excluded assets or "arising under" rejected contracts.[39]  However, the Court concluded that a guaranty "is a separate contract involving duties and responsibilities which are different from the basic contract to which it is collateral."[40]  Moreover, while SAMBA claimed that the BS&W loan gave SAMBA a security interest in "contract proceeds," the "Payment Letter" from SWEC to SAMBA on which Shaw relies[41] provides no security interest of any kind.[42]  Any alleged, but unperfected security interest that SAMBA may have had with BS&W – a non-party to this action – is irrelevant to Shaw's claim to have a security interest "relating to" its adjudicated assumption of SWEC's duties under the Payment Letter.

---

[37] [Proposed] Complaint In Intervention By The Shaw Group, Inc., Exhibit F (Memo. Opinion, May 3, 2005, Civ. No. 04-834-SLR, at 15 n.12) (A485).

[38] Motion To Intervene By The Shaw Group Inc., June 29, 2007, ¶ 18 [D.I. #61] (quoting APA) (A316).

[39] [Proposed] Complaint In Intervention By The Shaw Group, Inc., Exhibit F (Memo. Opinion, May 3, 2005, Civ. No. 04-834-SLR, at 8 (A478)).

[40] *Id.* at 15 (quoting *Financeameria Private Brands, Inc. v. Harvey E. Hall, Inc.*, 380 A.2d 1377, 1379 (Del. Super. Ct. 1977)) (A485).

[41] Motion To Intervene By The Shaw Group Inc., June 29, 2007, ¶ 5 [D.I. #61] (A311).

[42] *See* [Proposed] Complaint In Intervention By The Shaw Group, Inc., Exhibit C (letter, Abdullah Said Bugshan & Bros. to Saudi American Bank, re "Re-scheduling of Bugshan Stone & Webster (BSW) loan facility," December 22, 1998) (A351).

D.    **Multiple Agreements And Orders In The Bankruptcy Case Preclude Shaw From Asserting Any Claim To The Proposed Saudi Aramco Settlement.**

Even if Shaw's assertion of a claim actually relied on a perfected security interest, were otherwise timely, and were consistent with this Court's findings and conclusions, Shaw still could not overcome multiple bars to its assertion of the claim arising from its agreements with the debtors or with the Trust, and the orders of the bankruptcy court.

The Sale Order approving the Shaw's Asset Purchase Agreement ("APA") with the debtors bars Shaw's intervention:

> Except as provided in the Shaw Agreement, this Sale Order, or other order of this Court, after the Closing the Debtors and their estates shall have no further liabilities or obligations with respect to the Assumed Liabilities and all holders of such claims are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property or the Assets.[43]

Neither the APA nor any other order of the bankruptcy court permits Shaw to demand a recovery from the Trust's hoped-for settlement with Saudi Aramco. Shaw sought no exception for any liability arising from SAMBA. The Trust, as the successor to SWEC, has "no further liabilities or obligations with respect" to Shaw's assumed liability to SAMBA.

The APA further undercuts Shaw's claim. Relying in part on the APA's provision that "Assumed Liabilities" included "outstanding bank indebtedness," this Court found SWEC's indebtedness to SAMBA to be an assumed liability.[44] The APA provides explicitly that Shaw must indemnify the Trust for "any Losses incurred or suffered by [the Trust], directly or

---

[43]  Revised Order Under 11 U.S.C. §§ 105(a), 363, 365 And 1145(c), And Fed. R. Bankr. P. 2002, 6004, 6006 And 9014, (A) Approving Asset Purchase Agreement, etc., July 13, 2000 [D.I. #340, Bankruptcy Case No. 00-2142], ¶ 41.

[44]  [Proposed] Complaint In Intervention By The Shaw Group, Inc., Exhibit F (Memo. Opinion, May 3, 2005, Civ. No. 04-834-SLR, at 16 ("Sections 1.01 and 2.03 and Schedule 2.03 of the APA define the scope of 'Assumed Liabilities' as including 'outstanding bank indebtedness'. The record indicates that Schedule 3.17, listing those contracts which relate to such outstanding bank indebtedness as guaranties, includes at least an indirect reference to the Guaranty and Payment Letter. Defendant failed to pay or contest plaintiff's cure claim.") (A486).

indirectly, as a result of or arising from: . . . (c) the Assumed Liabilities."[45]  Therefore, rather than having a right of action against the Trust, Shaw has a duty to indemnify the Trust for Shaw's own action.

In its Confirmation Order, the bankruptcy court released the debtors and their successors from all unasserted security interests:

> Except as otherwise provided in the Third Joint Plan or this Confirmation Order, or in any contract, instrument, release or other agreement or document created in connection with the Third Joint Plan, on the Effective Date, all mortgages, deeds of trust, liens, pledges or other security interests against property of the Debtors' Estates are fully released and discharged.[46]

Though well entrenched before confirmation in the prosecution and defense of SAMBA's claims, neither SAMBA nor Shaw sought any agreement or order to preserve an alleged security interest in a settlement with Saudi Aramco – even though the debtors had long-since announced such a settlement, but were unable to effectuate it.[47]  Having failed to seek preservation of any such claim, both SAMBA and Shaw have violated the Confirmation Order's injunction:

---

[45] Motion To Intervene By The Shaw Group Inc., June 29, 2007, Exhibit D [D.I. #61] (APA, § 9.03: "Subject to and to the extent provided in this Section 9, from and after the Closing Date, Buyer shall indemnify, defend and hold harmless Sellers' Indemnified Persons, and each of them, from and against any Losses incurred or suffered by Sellers' Indemnified Persons, directly or indirectly, as a result of or arising from: . . . (c) the Assumed Liabilities." (A419); APA at 13: "Sellers' Indemnified Persons:  Sellers and any of Sellers' . . . successors and assigns . . ." (A374)).

[46] Findings Of Fact, Conclusions Of Law And Order Under 11 U.S.C. § 1129(a) And (b) Confirming Third Amended Joint Plan, January 26, 2004, ¶ 12 [D.I. #4879, Bankruptcy Case No. 00-2142]. That SAMBA sought by its intervention to assert a "security interest" is beyond dispute.  In SAMBA's appeal to this Court from the bankruptcy court's denial of intervention, SAMBA unapologetically asserted a right to a "first security interest" and a "first priority right" to alleged contract proceeds (Saudi American Bank's Opening Brief In Support Of Its Motion For Stay Pending Appeal, January 16, 2007, at 2 [D.I. #8, Civil No. 06-399 (SLR), District of Delaware]).

[47] *See, e.g.*, Debtors' Answering Brief In Opposition To Saudi American Bank's Motion To Intervene And To Join Abdullah Said Bugshan & Brothers As A Defendant, December 9, 2002 [D.I. #23], at 2 ("As represented to the Court by the Debtors, Saudi Aramco, and ASB&B at the

> Except as otherwise specifically provided in the Third Joint Plan and except as
> may be necessary to enforce a remedy or breach of the Third Joint Plan, from and
> after the Confirmation Date, all entities that have held, hold or may hold a Claim
> or other debt or liability against or an interest in any of the Debtors shall be
> precluded from: . . . (iii) creating, perfecting or enforcing any lien or
> encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any
> kind against any debt, liability or obligation due to any Debtor; and
> (v) commencing or continuing, in any manner or in any place, any action that
> does not comply with or is inconsistent with the provisions of the Third Joint
> Plan; *provided, however,* that nothing contained in this Confirmation Order or the
> Third Joint Plan shall preclude such persons from exercising their rights pursuant
> to and consistent with the terms of the Third Joint Plan . . . .[48]

Neither SAMBA nor Shaw objected to confirmation of the Third Joint Plan, or insisted on a right

to seek a security interest in any settlement from Saudi Aramco, despite ample notice and

opportunity to assert those theories before the Confirmation Order quashed them.

Even if all of the foregoing were not dispositive of Shaw's claim to any proposed

settlement with Aramco, Shaw released all claims against the Trust with respect to any "Filed

Claims" – including SAMBA's claim:

> Except for the rights expressly arising out of, provided for, or reserved in this
> Stipulation, effective as of the execution of this Stipulation: . . . (b) Shaw hereby
> releases and forever discharges each of the Consolidated Estates and all of their
> current and former directors, officers, agents, affiliates, subsidiaries, employees,
> attorneys, permitted assigns, predecessors, and successors, including without
> limitation the SWINC Plan Administrator and the SWE&C Liquidating Trustee
> under the Third Amended Joint Plan (the "Estate Parties") of and from any and all
> manner of action or actions, cause or causes of action, in law or in equity, suits,
> debts, liens, contracts, agreements, promises, liabilities, claims (including, but not
> limited to claims for attorneys' fees, costs and sanctions) damages, demands,
> losses, costs, or expenses of any nature, *currently existing or arising in the*
> *future,* whether known or unknown, suspected or unsuspected, fixed or

---

October 3, 2002 omnibus hearing in these cases, the Aramco Proceeding is settled subject to
final documentation and Court approval . . . .").

[48] Findings Of Fact, Conclusions Of Law And Order Under 11 U.S.C. § 1129(a) And (b)
Confirming Third Amended Joint Plan, January 26, 2004, ¶ 16 [D.I. #4879, Bankruptcy Case
No. 00-2142].

*contingent*, concealed or hidden, latent or patent, which Shaw has or may have *with respect to* the Filed Claims.[49]

Thus, well after SAMBA asserted its claim against Shaw, Shaw settled all remaining issues with the Trust, including any right to make claims against any settlement with Aramco.

## V. <u>SUMMARY OF ARGUMENT</u>

Shaw posits that the SAMBA loan related to BS&W's contract with Saudi Aramco. So if the Trust, as successor to SWEC, is entitled to recover anything from Saudi Aramco, that recovery belongs to Shaw because the APA with the debtors conveys to Shaw "any and all claims and causes of action . . . of any Seller against any third parties relating to . . . the Assumed Liabilities or the Assumed Contracts . . . ."[50]  Shaw's theory that the bankruptcy court's order denying intervention is defective suffers multiple defects:

1.     Shaw's theory that the bankruptcy court committed a reversible error of law because of a typographical error about the section of Rule 24 relied upon is misplaced.  The bankruptcy court's finding that Shaw lacks standing or sufficient interest bars intervention on any basis.

2.     Shaw's theory of intervention suffers from the same defects that caused the bankruptcy court to deny SAMBA's motion to intervene previously, and caused this Court to affirm.  Like SAMBA's motion to intervene, Shaw relies on an alleged "assignment of contract proceeds" from BS&W to SAMBA. But, like SAMBA, Shaw's Motion lacks any evidence of an

---

[49] Settlement Stipulation [under seal], November 30, 2004, ¶ 9 [D.I. #69] (emphases added); *see also* Recitals, ¶ C ("approximately 5,700 claims (all of the claims filed as of the date of this Stipulation, the 'Filed Claims') were filed against Debtors in these cases").  The bankruptcy court ordered the Settlement Stipulation filed under seal pursuant to Bankruptcy Local Rule 9018-1(b).  However, the same information cited above is recited in the bankruptcy court's Opinion. (*See* Memo. Opinion, August 31, 2007, at 29-30 [D.I. #79] (A568-A569).

[50] Motion To Intervene By The Shaw Group Inc., June 29, 2007, ¶ 18 [D.I. #61] (quoting Asset Purchase Agreement By and Among Stone & Webster, Incorporated And The Shaw Group, Inc., Dated as of July 14, 2000).

OHS West:260409776.2                                    16

"assignment of contract proceeds" from non-party BS&W to SAMBA, much less for any alleged assignment from BS&W or SWEC to Shaw. Thus, Shaw lacks the constitutional standing or statutorily mandated interest necessary for intervention on any ground.

3.    Even if its Motion were timely, despite Shaw's knowledge of the alleged basis for intervention for at least five years, any theories that Shaw would use to transform BS&W's alleged assignment into a right for Shaw to claim "contract proceeds" owed from Saudi Aramco to non-party BS&W do not involve common questions or law or fact with the Trust's claims against Saudi Aramco. The lack of commonality bars permissive intervention.

3.    For other reasons, Shaw also lacks any claim against the Trust or any security interest in the Trust's proposed settlement with Saudi Aramco:

a    The Court's Memorandum Opinion finding that Shaw assumed SWEC's liability to SAMBA also bars Shaw's alleged claim "related to" an assumed contract or assumed liability. The Court concluded that Shaw did not assume the Saudi Aramco contract. The Court further rejected Shaw's claim that SWEC's liability to SAMBA was "associated with" the Saudi Aramco contract.

b    The APA, the bankruptcy court's Sale Order, and a Settlement Stipulation among the Consolidated SWINC Estate, the Trust, and Shaw – entered into well after Shaw knew of and began defending SAMBA's claim that Shaw assumed SWEC's liability – released any claims against the Trust arising from any "Filed Claims," including SAMBA's claims.

5.    Shaw's claim that the bankruptcy court "incorrectly characterized" its claim as one against the Trust rather than a claim against Saudi Aramco is neither relevant to the bankruptcy court's denial of intervention, nor correct. Shaw's claim for unjust enrichment is asserted against the Trust, not against Saudi Aramco, and Shaw's Complaint In Intervention asserts claims for equitable and affirmative relief against the Trust.

6.      Though not ruled upon by the bankruptcy court, Shaw's Motion was untimely, coming five years after SAMBA filed its adversary complaint against Shaw, more than three years after the last of the claims bar dates, more than two years after this Court found Shaw liable on SWEC's agreement to pay SAMBA, and well over a year since the bankruptcy court denied SAMBA's motion to intervene for the same alleged "assignment." Shaw cannot wait until after the Trust announced that settlement was imminent to seek intervention. Shaw cannot use intervention to substitute for the failure to file a timely claim against SWEC or the Trust. The lack of timeliness bars intervention under any theory.

Under the well-recognized rule that a reviewing court affirms a lower court on any basis found in the record, ample reasons exist to affirm the bankruptcy court's conclusion that Shaw lacks standing or sufficient interest to intervene.

## VI. ARGUMENT

### A.    Shaw's Interest Derives From A Facially Deficient "Assignment" From A Non-Party To A Non-Party, And Cannot Support Intervention-Of-Right.

#### 1.      Like SAMBA, Shaw Lacks The Necessary Interest Or Article III Standing To Assert A Statutory Right To Intervene.

Shaw's opening salvo is its claim that "[t]he Bankruptcy Court mistakenly maintains that Shaw argued it was entitled to intervene under 'Rule 24(a)(2), which provides for permissive intervention.' Permissive intervention, however, is allowed under Rule 24(b), as Shaw correctly argued in its Motion to Intervene." (Opening Brief at 11 (citation omitted).) Seizing on an inconsequential typographical error is not enough to divert attention from the many reasons why Shaw lacks any right to intervene. This Court need not belabor the argument. *See, e.g., Nicini,* 212 F.3d at 805 ("We may affirm the District Court on any grounds supported by the record.").

First, Shaw claims to have an unconditional statutory right to intervene under Federal Rule of Civil Procedure 24(a)(1) and pursuant to Bankruptcy Code section 1109(b), giving "[a]

party in interest, including the debtor, the trustee, a creditors' committee, an equity security

holders' committee, a creditor, an equity security holder, or any indenture trustee" a right to

"raise, appear, and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b).

However, even the seemingly broad statutory dictate cannot overcome the need for timeliness, or

the constitutional requirement of "standing":

> Like all statutes, section 1109(b) is subject to this relevant constitutional
> restriction. Accordingly, even though section 1109(b) might appear to confer
> standing on any party in interest in any proceeding in a case, the section cannot be
> construed in a manner that would violate Article III's case or controversy
> requirement.

7 Alan N. Resnick, Henry J. Sommer, *Collier on Bankruptcy* ¶ 1104.04[4][a] (14th ed. 2006);

*Hobson v. Travelstead (In re Travelstead)*, 227 B.R. 638, 649 (D. Md. 1998) ("Although

§ 1109(b) does allow a party in interest to 'be heard on any issue in a case under [Chapter 11],' it

does not obviate generally applicable rules of standing.").

The constitutional requirement of "standing" requires 1) injury-in-fact; 2) a causal

connection between the alleged injury and the conduct being challenged; and 3) a likelihood that

the injury will be redressed by a favorable decision. *Nat'l R.R. Passenger Corp. v. Pa. Pub. Util.

Comm'n*, 342 F.3d 242, 254 (3d Cir. 2003); *see also Pansy v. Borough of Stroudsburg*, 23 F.3d

772, 777 (3d Cir. 1994) ("The appellees have not challenged the Newspapers' standing in this

appeal. Nevertheless, we are obliged to consider whether the Newspapers have standing to

intervene in this action . . . ."); *Hillside Enters., Inc. v. Carlisle Corp.*, 944 F. Supp. 793, 797

(E.D. Mo. 1996) (noting that, "inherent in Rule 24(a) is a requirement that would-be intervenors

have Article III standing to litigate their claims in federal court" (citing *Mausolf v. Babbitt*, 85

F.3d 1295, 1299-1301 (8th Cir. 1996)); *Stewart v. Rubin*, 948 F. Supp. 1077, 1103 (D.D.C. 1996)

("The Putative Intervenors, as putative party plaintiffs, have the burden of alleging facts which

establish their standing.").

The bankruptcy court did not stop with this analysis, noting that Bankruptcy Code § 1109(b) further imposes "a 'party in interest' requirement that is akin to standing." (Memo. Opinion, August 31, 2007, at 14 [D.I. #79] (A553).) "The test to determine whether an entity is a party in interest is 'whether the prospective party in interest has a sufficient stake in the outcome of the proceeding so as to require representation.'" *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 158 (D.N.J. 2005) (quoting *In re Torrez*, 132 B.R. 924, 934 (Bankr. E.D. Cal. 1991)). Shaw qualifies for intervention under neither standard.

Even a "judgment creditor" who might benefit from a recovery by its debtor lacks standing where it has no privity to the contractual relationship at issue in the case. *Hillside Enters., Inc.*, 944 F. Supp. at 797 ("Houston has failed to provide any caselaw which supports its argument that as a judgment creditor, by virtue of a consent judgment entered in another lawsuit, it has a legally cognizable right or protectable interest in dictating the manner of distribution of a judgment rendered in another lawsuit."). Shaw is not even a judgment creditor and, unlike SAMBA, does not have even an allowed claim in the bankruptcy case – or an asserted but not yet adjudicated claim. Like SAMBA, Shaw claims only an "assignment" from a third-party, BS&W. BS&W is neither present in this litigation nor subject to jurisdiction in the United States. Unlike SAMBA, Shaw has no privity even with BS&W.

Neither SAMBA nor Shaw has ever claimed – nor could they claim – that they have evidence of any perfected security interest in proceeds of any type owing to SWEC or its successor, the Trust. *Cf., e.g., Bramble Transp., Inc. v. Sam Senter Sales, Inc.*, 294 A.2d 97, 102 (Del. Super. Ct. 1971) (explaining that, under Uniform Commercial Code, a properly filed "financing statement" (Form UCC-1) is necessary to perfect a security interest "in the subject property against the debtor's creditors"), *aff'd*, 294 A.2d 104 (Del. 1972). Rather than evidence of a security interest, Shaw asserts a subrogation right that is inconsistent with this Court's

findings and conclusions that Shaw's assumption of the SWEC Guaranty is not connected with BS&W's agreements with SAMBA or Saudi Aramco.

Shaw's lack of privity to the contract arguably at issue in this adversary proceeding – the BS&W agreement with Aramco – is fatal for any claim to intervention-of-right. *See, e.g., Vazman, S.A. v. Fidelity Int'l Bank*, 418 F. Supp. 1084, 1086 (S.D.N.Y. 1976) ("[U]nder both New York law and general contract principles, a third party may sue on a contract only if the parties to that contract intended to confer a benefit on him when contracting; it is not enough that some benefit incidental to the performance of that contract may accrue to him."); *McDaniel v. Am. Druggists' Ins. Co. (In re Nat'l Buy-Rite, Inc.)*, 11 B.R. 191, 194 (Bankr. N.D. Ga. 1981) ("It must clearly appear from the contract that it was intended for the benefit of a third party.").

The BS&W-Saudi Aramco agreement explicitly precluded claims by third parties, and neither SAMBA nor Shaw can claim third-party status to intervene in the Saudi Aramco Action. Lacking the necessary privity, Shaw has no constitutional standing to intervene in this action, notwithstanding its claims of an absolute right to intervene under the Bankruptcy Code.

### 2. Shaw Lacks A Sufficiently Protectable Interest To Support Intervention As A Matter Of Right.

As conditions to intervention-of-right, Rule 24(a)(2) requires that:

> (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in litigation. Although these requirements are intertwined, each must be met to support intervention as of right.

*Harris v. Reeves*, 946 F.2d 214, 219 (3d Cir. 1991) (citation omitted). Intervention also requires a direct, legally protectable interest, as opposed to a contingent or remote interest. *Id.*

No less than it was under Rule 24(a)(1), Shaw's lack of privity to the contract arguably at issue in this action is fatal to any claim to intervention-of-right under Rule 24(a)(2). *See, e.g., Vazman, S.A.*, 418 F. Supp. at 1086-87; *McDaniel*, 11 B.R. at 194. But in addition, for purposes

21

of Rule 24(a)(2), the proposed intervenor's interest "must be significant, must be direct rather than contingent, and must be based on a right which belongs to the proposed intervenor rather to an existing party to the suit." *Vazman, S.A.*, 418 F. Supp. at 1085-86; *see also McDaniel*, 11 B.R. at 194 ("The mere fact that a person would benefit from the performance of the agreement is not sufficient to make that person a third party beneficiary.").

A direct interest does not exist if the intervenor lays claim only to a ***possible*** recovery. *See, e.g., Am. Mar. Transp., Inc. v. United States*, 870 F.2d 1559, 1562 (Fed. Cir. 1989) ("The interest of an applicant non-party having no privity claim in a contract, the terms of which are disputed by the parties to it, also has not been recognized as legally protectable, even when the outcome of a contract action is almost certain to have a significant and immediate economic impact on the applicant."); *McDaniel*, 11 B.R. at 194 ("[I]ntervention as of right cannot be allowed on the ground that the outcome of a suit may increase or decrease the collectability of a claim. Other courts have also held that a third person's contingent interest in the outcome of pending litigation is not sufficient to justify intervention."); *Pasha Auto Warehousing, Inc. v. Phila. Reg'l Port Auth.*, Civil Action No. 96-6779, 1997 U.S. Dist. LEXIS 20511, at *13 (E.D. Pa. Dec. 23, 1997) ("Mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene."). The interest is not sufficient even if, as this Court found in SAMBA's case, the proposed intervenor must pursue remedies in another lawsuit or another court. *See, e.g., Pasha Auto Warehousing, Inc.*, 1997 U.S. Dist. LEXIS 20511, at *13 ("The mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party the right to intervene." (quoting *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995)).

A claim to proceeds that remain "purely contingent upon a favorable judgment" will not support intervention. *See Gen. Star Indem. Co. v. Virgin Island Port Auth.*, 224 F.R.D. 372, 376

(D.V.I. 2004) ("Although identification of an interest in a specific fund has been determined sufficient to allow intervention, an actual fund must exist." (explaining *Mountain Top Condo. Ass'n*, 72 F.3d at 366)); *see also Rigco, Inc. v. Rauscher Pierce Refsnes, Inc.*, 110 F.R.D. 180, 184 (N.D. Tex. 1986) ("The possibility of a benefit because a party may have more money available at the conclusion of a lawsuit does not constitute a direct, substantial, legally protectable interest under Rule 24(a)(2).").

Shaw's claim – that it needs to intervene to protect its interest in an alleged "assignment" from BS&W to SAMBA – is not sufficient to intervene as a matter of right. Indeed, Shaw's involvement in proving an "assignment" that is otherwise not at issue in this action would "only cause inordinate delay and place a great burden on the Court and the existing parties." *Vazman, S.A.*, 418 F. Supp. at 1087 (denying permissive intervention). This Court was fully justified in so finding on SAMBA's motion to intervene, and would be all the more justified in finding the same on Shaw's Motion, where Shaw was not even a party to the unsupported, alleged "assignment," but claims only as an alleged subrogee that will then need to bring SAMBA into the litigation to prove Shaw's right to the alleged "assignment."

**B.    SAMBA's Claimed "Assignment" Does Not Involve Common Questions Of Law Or Fact With The Trust's Claims Against Saudi Aramco, Precluding Permissive Intervention.**

No less so in permissive intervention, an intervenor must have standing. *See McDaniel*, 11 B.R. at 195 (construing permissive intervention; "[A] party has standing to prosecute a suit in federal court only if he is the real party in interest. This rule applies to intervenors as well as to the original parties to the suit."). Therefore, Shaw's lack of standing precludes permissive intervention – regardless of how the bankruptcy court analyzed intervention. Additionally, permissive intervention is available only "when an applicant's claim or defense and the main action have a question of law or fact in common . . . ." Fed. R. Civ. P. 24(b).

At best, Shaw is merely a claimant under an alleged but far-from-proven subrogation to SAMBA's claim to an "assignment" – a matter that requires proof from SAMBA and BS&W separate and apart from any issue in the litigation between the Trust and Saudi Aramco. That factor frustrates even permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). *Hillside Enters.*, 944 F. Supp. at 798 (denying permissive intervention to "judgment creditor" where intervenor's "claims do not involve common questions of law or fact as the underlying lawsuit"); *see also MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 390 (2d Cir. 2006) (affirming denial of intervention where proposed intervenor claims contractual relationship to one of the existing parties, but "is a stranger to the contractual dispute" between the existing parties).

Whether intervention-of-right or permissive intervention, Shaw's rights under SAMBA's alleged "assignment" from BS&W "arise out of [SAMBA's] agreement[] with a party not subject to the jurisdiction of this Court" – BS&W. *Vazman, S.A.*, 418 F. Supp. at 1087. As such, permissive intervention is not appropriate. *Id.* But even if an assignment with a third-party were sufficient to confer standing in the litigation between the Trust and Saudi Aramco, this Court is not bound to accept SAMBA's (or Shaw's) conclusory claims of a valid assignment.

Contrary to SAMBA's earlier claim that the bankruptcy court and this Court had to accept its conclusory allegations without question (and without examining the documents that SAMBA attached to its proposed complaint-in-intervention), "substantive law" must support the proposed intervenor's alleged interest in the matter. *See, e.g., Am. Mar. Trasp., Inc.*, 870 F.2d at 1562. That requirement would be meaningless if this Court had no right to test SAMBA's or Shaw's claim. This Court has every right to review and judge the evidence, and to place the burden on Shaw to prove its right to intervene. *Cf. McDaniel*, 11 B.R. at 195 (finding against permissive intervention where party failed to submit security agreement under which it claimed

standing; "Therefore the Court cannot make a determination as to [the intervenor's] standing to enforce this contract.    Under these circumstances, the Court concludes that permissive intervention should not be allowed."). Like SAMBA previously, Shaw has failed to carry its burden and this Court is justified in affirming the bankruptcy court order denying intervention.

**C.    Shaw Unambiguously Released Any Claim "Relating To" Its Liability On The Guaranty And Payment Letter.**

As discussed in section IV.D above several agreements and bankruptcy court orders prevent Shaw from pursuing its claims for the Trust's settlement with Saudi Aramco.    In addition, Shaw unambiguously released any such claim in a Settlement Stipulation with the Trust.    Shaw's response to its unambiguous release of claims in the Settlement Stipulation with the Trust is a curious and perplexing argument:

1.    "The defined term 'Filed Claims,' refers to the 'approximately 5,700 claims' filed against the Debtors as of November 30, 2004."

2.    "[T]he Bankruptcy Court found that Shaw's claim to the proceeds of the In-Kingdom Contract was a claim with respect to a Filed Claim, and thus Shaw had waived its claim to a portion of the proceeds of the In-Kingdom Contract."

3.    "The Court found that a cure claim filed by SAMBA relating to the Guaranty and Payment Letter existed as of November 30, 2004, and thus it is a 'Filed Claim' under the Settlement Stipulation."

4.    "[T]he Court further found that Shaw's claim to a portion of the proceeds from the In-Kingdom Contract is a claim 'with respect to' that Filed Claim."

5.    "[T]he claim that Shaw seeks to assert in the Saudi Aramco Proceeding is not a claim against the Trust, but rather is a subrogation claim against Saudi Aramco."

(Opening Brief at 21.)    The factual dissertation suffers from the defects that the "subrogation" allegedly arises from a contract that precludes any recovery by alleged third-party beneficiaries (*see supra* note 32), that it arises from a claim filed against both Shaw and the debtors (and not a cure claim filed solely against Shaw as Shaw implies) (*see, e.g.*, Memo. Opinion, August 31, 2007, at 30 [D.I. #79] (A569)), and that it unquestionably "relates to" SAMBA's claim that

either SWEC remained liable on the Guaranty and Payment Letter, or Shaw assumed the Guaranty and Payment Letter (*id.* at 31 (A570). Indeed, if Shaw were not found liable on the Guaranty and Payment Letter, Shaw concededly would not be asserting its right to intervene. (*See, e.g.,* Opening Brief at 1 ("Shaw's intervention in the Saudi Aramco Proceeding became appropriate and necessary as a result of this Court's prior grant of summary judgment in favor of the Saudi American Bank . . . .").)

While implying – without offering any proof – that the SAMBA claim was not a "Filed Claim," Shaw insinuates that the release must be ambiguous because, "[a]the time the parties executed the Settlement Stipulation, both Shaw and the Trust understood that Shaw had not assumed liability on account of the SAMBA Claim . . . ." (Opening Brief at 22; *see also id.* ("The Bankruptcy Court never addressed whether the Settlement Stipulation is clear on its face.").) Shaw's allegations about the Trust's belief lack any evidentiary support. Shaw relies on a declaration from the debtors' former chief restructuring officer, not on any admission by the Trust. (*See id.* (citing to Declaration of James P. Carroll, undated (A466)).)

As noted above, this Court has ruled already that "[c]onstruction of contract language is a question of law"; "Ambiguity exists only when a contractual provision is reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Saudi American Bank v. Shaw Group, Inc. (In re Stone & Webster, Inc.),* Civ. No. 04-834-SLR, 2005 U.S. Dist. LEXIS 7912, at *18 (D. Del. May 3, 2005). Nothing in the Settlement Stipulation is ambiguous. The Trust did not sandbag Shaw about a claim for which Shaw was unaware. Shaw had already been litigating with SAMBA for more than two years:

> [P]rior to [the] November 30, 2004 Settlement Stipulation Shaw was well aware that there was a serious risk that it could have liability in favor of SAMBA arising out of the Guaranty and Payment Letter. The circumstances underlying the parties' entry into the Settlement Stipulation clearly support the conclusion that the Settlement Stipulation release provision precludes any right to future revenues from the In-Kingdom contract at the expense of SWEC, now the Trust. As Shaw has waived the right to pursue any claim it had as a result of the SAMBA obligation, allowing Shaw to intervene in the Saudi Aramco Proceeding serves no purpose.

(Memo. Opinion, August 31, 2007, at 34 [D.I. #79] (A573).)

**D.    Shaw's Argument For Unjust Enrichment, And That The Bankruptcy Court Mischaracterized Its Claim, Are Not Only Incorrect But Contradictory.**

    **1.    Shaw Fails To Make A Valid Claim For Unjust Enrichment.**

With the citation of no law whatsoever, Shaw argues that "the Trust would be unjustly enriched if Shaw is forced to pay a debt that the Debtors (as predecessors to the Trust) agreed Shaw never assumed." (Opening Brief at 18.) This Court has already rejected Shaw's theory that Shaw can submit an undated declaration from a non-lawyer who purports to interpret the APA. *See Saudi American Bank*, 2005 U.S. Dist. LEXIS 7912, at *18. Shaw does not even address the bankruptcy court's reasoning with respect to unjust enrichment:

> In order to show unjust enrichment, a party must prove the following elements: (1) benefits conferred on one party by another; (2) appreciation of such benefits by the recipient; and (3) acceptance and retention of these benefits in such circumstances that it would be inequitable for the recipient to retain the benefits without payment of value. *Lauren W. v. DeFlaminis*, 480 F.3d 259, 277 (3d Cir. 2007); *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000).

> Shaw's unjust enrichment argument provides no traction for the Motion because Shaw can in no way show that it is inequitable for the Trust to retain any benefits that it may receive out of the Saudi Aramco Proceeding. There is no inequity because any "enrichment" that the Trust may receive out of its relationship with Shaw is explicitly called for in the APA, which Shaw willingly agreed to. . . . Shaw signed on to the APA, which provides for a result that now appears to be unfavorable to Shaw. The Court cannot rewrite that contract under the guise of unjust enrichment.

(Memo. Opinion, August 31, 2007, at 28-29 [D.I. #79] (A567-A568).)

Even more to the point, giving Shaw the benefit of a settlement with Saudi Aramco will unjustly enrich Shaw. The Trust's creditors have already borne the loss of $1 million to settle SAMBA's claims against the debtors under the Guaranty and Payment Letter. (*See supra* note 16.) Shaw benefited from the $1 million payment. *See Saudi American Bank v. Shaw Group, Inc. (In re Stone & Webster, Inc.)*, 354 B.R. 686, 693 n.14 (D. Del. 2006) ("This amount represents . . . fees and expenses 'SAMBA incurred in obtaining or enforcing its right under the Credit Agreement,' . . . less $1,000,000 already recovered from SWEC in the Preference Action."). After the Trust's creditors have borne this loss – and Shaw benefited – Shaw believes the creditors should pay again by foregoing the settlement with Saudi Aramco. Shaw makes no offer to pay the costs borne by the creditors in crafting a settlement with Saudi Aramco, or even to return the $1 million benefit that Shaw obtained. The only unjust enrichment that would result is the unjust enrichment of Shaw if Shaw can claim the benefit of the Saudi Aramco settlement.

**2.    The Bankruptcy Court Did Not Incorrectly Characterize Shaw's Claim, As Shaw Demonstrates By Arguing That Its Claim Is Really A Claim For Unjust Enrichment Against The Trust.**

Obviously pleased with a clever argument that that its intervention is not really a claim "*against*" the Trust, but is really a claim against Saudi Aramco (Opening Brief at 19), Shaw fails to explain the significance of the distinction. If Shaw can demonstrate no claim to a settlement between the Trust and Saudi Aramco, does it make any difference whether its claim is asserted "against" the Trust or "against" Saudi Aramco?

Shaw's theory suffers only from the undisputed facts, the lack of supporting law, and the failure to raise the issue in the bankruptcy court. Assuming for the moment that Shaw raised this issue before the bankruptcy court, though it did not (*see* Motion To Intervene By The Shaw Group Inc., June 29, 2007 [D.I. #61] (A309); The Shaw Group Inc.'s Reply In Further Support Of Its Motion To Intervene, July 30, 2007 [D.I. #68] (A522)), the Complaint In Intervention By

The Shaw Group, Inc. convincingly refutes Shaw's theory. In Count II, Shaw seeks an injunction against "Debtors . . . from receiving, directly or indirectly, from Saudi Aramco any payments related to the In-Kingdom Contract." (*See* Complaint In Intervention By The Shaw Group Inc., ¶ 36 [D.I. #61] (A337).)

As demonstrated above in its claim for unjust enrichment, Shaw does not even purport to be asserting the claim against Saudi Aramco. (*See id.* ¶ 40 ("Shaw is entitled to a determination that Debtors will be unjustly enriched if Shaw is required to repay BS&W's loan while the Debtors recover the receivables from Saudi Aramco needed to repay the same loan.") (A338).) And Shaw seeks a claim for indemnification against the "Debtors." (*See id.*, ¶ 44 (A338).) Little of Shaw's Complaint In Intervention seeks any relief from Saudi Aramco; much seeks relief from "Debtors." Even if such a finding were significant, the bankruptcy court did not "incorrectly characterize" Shaw's claim.

**E.    In Any Event, Shaw's Motion Is Untimely And Cannot Support Intervention On Any Basis.**

Regardless of the basis on which it seeks to intervene, Shaw must make a timely motion to intervene:

> (a) Intervention of Right. ***Upon timely application*** anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

> (b) Permissive intervention. ***Upon timely application*** anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . .

Fed. R. Bankr. P. 24 (emphases added); *Stewart*, 948 F. Supp. at 1103 ("Whether intervention be claimed of right or as permissive, it is at once apparent from the initial words of both Rule 24(a) and Rule 24(b), that the application must be 'timely.'"); *West Elecs., Inc. v. Nat'l Union Fire Ins. Co. (In re West Elecs., Inc.)*, Civ. No. 91-3781 (GEB), 1992 U.S. Dist. LEXIS 14503, at *40 (D.N.J. Sep. 14, 1992) ("Both permissive intervention and intervention as a matter of right require 'timely application.'").

The determination of timeliness is "a threshold matter." *Stewart*, 948 F. Supp. at 1103. Many courts consider four factors:

a.    the length of time the intervenor knew or should have known of her interest in the case;

b.    the prejudice to the original parties resulting from the intervenor's delay;

c.    the prejudice, if any, to the intervenor if the motion is denied; and

d.    any unusual circumstances

*Id.*; *see also MasterCard Int'l, Inc.*, 471 F.3d at 390; *Heartwood, Inc. v. United States Forest Serv.*, 316 F.3d 694, 701 (7th Cir. 2003); *Lucas v. McKeithen*, 102 F.3d 171, 173 (5th Cir. 1996); *Duttle v. Bandler & Kass*, 147 F.R.D. 69, 72 (S.D.N.Y.), *aff'd mem.*, 999 F.2d 536 (2d Cir. 1993).

As to the first factor, case-upon-case holds that delays of far less than five years merit denial of intervention. *See, e.g., Lucas*, 102 F.3d at 173 (dismissing appeal from denial of intervention and finding prejudice to existing parties where "proposed intervenors knew or should have known about their interest in this suit for more than a year before seeking to intervene"); *United States v. Puerto Rico*, 227 F.R.D. 28, 31 (D.P.R. 2005) (finding intervention motion untimely where proposed intervenors "should have been aware of the fact that their interest might have been at stake . . . two years before they filed their motions for intervention"); *Gen. Star Indem. Co.*, 224 F.R.D. at 375 (finding intervention motion untimely where "Proposed Intervenors did not file their Motion to Intervene until . . . almost eighteen (18) months after they

knew or should have known that their rights may be at risk"); *Stewart* 948 F. Supp. at 1103 ("Several courts have denied intervention based upon a finding that the first element – the extent of the Intervenor's knowledge about the underlying lawsuit – was satisfied where the intervenor knew about the underlying lawsuit for less than a year." (citing cases)); *Duttle*, 147 F.R.D. at 75 ("I thus conclude that the government knew of its interest for fifteen months before moving to intervene and it has not offered any reasonable explanation for the fifteen month delay. This delay strongly militates in favor of denying its motion."); *City of Coatesville v. Del. Container Co.*, Civil Action No. 87-1475, 1988 U.S. Dist. LEXIS 11152, at *4 (E.D. Pa. Sep. 28, 1988) (finding that, where basis for intervention "was known to the movant for ***well over a year*** and in all that time movant chose not to intervene[,] . . . the instant motion cannot be regarded as a timely application" (emphasis in original)); *cf. Heartwood, Inc.*, 316 F.3d at 701 (vacating intervention and remanding where trial court failed to determine when potential intervenors knew "that the suit could impact their interests," even though filed within one year of lawsuit being filed; "A prospective intervenor must move promptly to intervene as soon as it knows or has reason to know that its interests might be adversely affected by the outcome of litigation.").

Shaw learned five years before moving to intervene, when SAMBA filed its adversary action against Shaw, that Shaw could be liable for SWEC's agreement to repay SAMBA. Shaw knew that it would not prevail in that action two years before moving to intervene when this Court granted summary judgment to SAMBA. Shaw knew that SAMBA lost its motion to intervene more than a year before Shaw moved to intervene. In fact, Shaw admits it would have waited even longer – until the conclusion of its appeal from this Court's judgment – but the Trust's announcement of a likely, imminent settlement convinced Shaw to act when it did. (Motion, ¶ 23 ("In this case, it was not until Shaw learned that the parties to the proceeding planned to settle their dispute that the possibility of inadequate representation in this proceeding

became apparent. Shaw had intended to await the outcome of its pending appeal . . . before pursuing its rights against debtors and Saudi Aramco.").) In truth, Shaw also admits it knew of the tentative settlement more than two years before moving to intervene, but did nothing then either. (*Id.*, ¶ 12.)

In any event, case-upon-case concludes that a motion to intervene asserted only on the eve of a settlement is untimely because of the prejudice to the potentially settling parties. *See, e.g.*, *MasterCard Int'l, Inc.*, 471 F.3d at 391 (affirming denial of intervention; finding prejudice to existing parties where intervention motion "postponed resolution" of the existing parties' dispute); *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 641 n.19 (1st Cir. 1989) (affirming denial of intervention where "the primary insurers waited until the terms of settlement were clear before filing their declaratory judgment action"); *Puerto Rico*, 227 F.R.D. at 31 (denying intervention where "Intervenors filed their request after almost five years of intense negotiation between the parties"); *Stewart*, 948 F. Supp. at 1104 (denying intervention where "parties were engaged in extensive and comprehensive settlement negotiations, "negotiations lasted several years," "mediation was time-consuming and involved high officials," and where "intervention would further delay" implementation of settlement); *Duttle*, 149 F.R.D. at 75 (finding that prejudice "from forcing parties to continue with ten-year-old litigation they currently want to settle seems obvious"); *cf. Heartwood, Inc.*, 316 F.3d at 701 ("The relevant inquiry in determining timeliness, however, is not on the time between the settlement and the motion to intervene, but instead is on the time between the [potential intervenors'] knowledge that the suit could impact their interests and the motion to intervene."); *Alexander v. Rendell*, 246 F.R.D. 220, 229 (W.D. Pa. 2007) ("The current parties recently completed a mediation session, but no resolution was reached. Intervention, if permitted at this stage, would delay proceedings further and otherwise prejudice the parties' possible future resolution of this matter . . . .").

Denial of intervention is the only equitable result where a party – the Trust – continued to invest in settlement efforts that Shaw now attempts to seize. *See Duttle*, 147 F.R.D. at 75 ("Had the IRS moved to intervene when it first became aware of the threat to its interests, plaintiffs could have potentially saved more than one and one-half years of effort and tens of thousands of dollars in legal fees they have accrued in trying to recover on assets the IRS now claims they have no right to possess."). By any stretch of reasoning, Shaw's Motion was untimely and unfair for attempting to usurp years of the Trust's efforts to reach a settlement with Saudi Aramco.

All the more so, Shaw's intervention is untimely where Shaw consciously allowed opportunities to pass to file proofs of claim. Three-and-a-half years before Shaw moved to intervene, the Confirmation Order gave purported creditors thirty days to file claims for the rejection of executory contracts. More than three years before Shaw's intervention Motion, the Third Joint Plan allowed purported creditors sixty days after confirmation to file administrative claims. Shaw tried to take advantage of neither, and its inaction is fatal to intervention. "The deadlines for filing proofs of claims are to be strictly construed to ensure the efficient administration of bankruptcy cases and to provide all parties with finality." *In re Edison Bros. Stores, Inc.*, No. 99-529 (JCA), 2002 Bankr. LEXIS 1228, at *11 (Bankr. D. Del. May 15, 2002); *see also Trump Taj Mahal Assocs. v. Alibraham (In re Trump Taj Mahal Assocs.)*, 156 B.R. 928, 936 (Bankr. D.N.J. 1993) ("The well-established law of this Circuit is also that bar dates for filing Proofs of Claim are strictly construed." (citing cases)). The Bankruptcy Code and Rules "allow the filing of an untimely Proof of Claim after the bar date only when the claimant's failure to timely file a Proof of Claim was due to excusable neglect." *In re Taj Mahal Assocs.*, 156 B.R. at 936. But Shaw consciously decided to wait to assert any claim to the Saudi Aramco settlement. (Motion To Intervene By The Shaw Group Inc., June 29, 2007, ¶ 23 [D.I. #61] ("Shaw had intended to await the outcome of its pending appeal . . . before pursuing its rights

against debtors and Saudi Aramco.") (A319).)    That admission contradicts any claim of excusable neglect. *See Vertientes, Ltd. v. Internor Trade, Inc. (In re Vertientes, Ltd.)*, 845 F.2d 57, 60 (3d Cir. 1988) ("[G]iven the deliberate decision not to file, the creditors had not shown excusable neglect, and thus could not file a late proof of claim.").

Shaw cannot accomplish by intervention what it failed to try by filing a timely claim. *Cf. SEC v. Tipco, Inc.*, 554 F.2d 710, 711 (5th Cir. 1977) (denying motion to intervene in receivership proceedings to challenge distribution plan where proposed intervenor failed to file objection to distribution plan by court-ordered deadline).    By any measure, Shaw's Motion is untimely.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

## VII. <u>CONCLUSION</u>.

Contrary to Shaw's argument that the Trust's creditors "will be unjustly enriched unless Shaw intervenes," the truth is that the Trust's creditors will pay twice for the same settlement with SAMBA if Shaw can find a way to claim any potential settlement with Saudi Aramco. The creditors have already incurred a $1 million loss for the settlement with SAMBA, and will not recover that payment if SAMBA recovers from Shaw. Furthermore, the Trust funded the efforts to settle with Saudi Aramco. Even more so than SAMBA, Shaw sat back and waited until it appeared those efforts might be successful – knowing that neither SAMBA nor Shaw had the standing to bring any claims against Saudi Aramco. If Shaw can intervene to try laying claim to any settlement, Shaw will further harm the creditors' interests, and its intervention poses the real danger of dashing any hope for the still-fragile settlement. The Trust respectfully requests that this Court affirm the bankruptcy court's order denying Shaw's Motion to intervene.

Dated: March 28, 2008
      Wilmington, Delaware

              THE SWE&C LIQUIDATING TRUST

              By: _____
                  Adam G. Landis (No. 3407)
                  Kerri K. Mumford (No. 4186)
                  LANDIS RATH & COBB LLP
                  919 Market Street, Suite 600
                  Wilmington, DE 19801
                  Tel: (302) 467-4400
                  Fax: (302) 467-4450

                  - and -

                  Lorraine S. McGowen
                  Alyssa Englund
                  ORRICK, HERRINGTON & SUTCLIFFE LLP
                  666 Fifth Avenue
                  New York, NY 10103-0002
                  Tel: (212) 506-5000
                  Fax: (212) 506-5151

- and -

James E. Houpt
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
Sacramento, CA 95814
Tel: (916) 447-9200
Fax: (916) 329-4900

Counsel to the SWE&C Liquidating Trust

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| STONE & WEBSTER, INC., *et al.*,[1] | Case No. 00-2142 (PJW) |
| Debtors. | Jointly Administered |
| THE SHAW GROUP, INC., | |
| Appellant, | |
| - against – | C.A. No.: 07-00616 (SLR) |
| THE SWE&C LIQUIDATING TRUST, | |
| Respondent. | |

## AFFIDAVIT OF SERVICE

STATE OF DELAWARE    )
                     ) SS
NEW CASTLE COUNTY     )

       Joan M. Hofmann, being duly sworn according to law, deposes and says that she is employed by the law firm of Landis Rath & Cobb LLP, attorneys for the SWE&C Liquidating Trust in the above referenced cases, and on the 28th day of March, 2008, she caused a copy of the following:

---

[1] The debtors are the Consolidated SWINC Estate and the Consolidated SWE&C Estate. As more particularly set forth in Article VII(B) of the Third Amended Joint Plan of the Debtors in Possession, the Official Committee of Unsecured Creditors, Federal Insurance Company, Maine Yankee Atomic Power Company, and the Official Committee of Equity Security Holders with Respect to (I) Stone & Webster, Incorporated and Certain of its Subsidiaries and Affiliates and (II) Stone & Webster Engineers and Constructors, Inc. and Certain of Its Subsidiaries ("Third Joint Plan"), certain debtor subsidiaries of Stone & Webster, Incorporated are merged into Stone & Webster, Incorporated, and their estates have been substantively consolidated to become the Consolidated SWINC Estate; and certain debtor subsidiaries of Stone & Webster Engineers and Constructors, Inc. are merged into Stone & Webster Engineers and Constructors, Inc., and their estates have been substantively consolidated to become the Consolidated SWE&C Estate. As of the Effective Date of the Joint Plan, all of the assets of the Consolidated SWE&C Estate were transferred to the SWE&C Liquidating Trust.

**RESPONDING BRIEF OF THE SWE&C LIQUIDATING TRUST TO THE APPEAL OF
THE SHAW GROUP, INC. FROM THE BANKRUPTCY COURT'S
<u>DENIAL OF SHAW'S MOTION TO INTERVENE</u>**

to be served upon the parties identified on the attached list in the manner indicated.

_Joan M. Hofmann_
Joan M. Hofmann

SWORN TO AND SUBSCRIBED before me this 28th day of March, 2008.

_Linda M. Rogers_
Notary Public

LINDA M. ROGERS
NOTARY PUBLIC
STATE OF DELAWARE
My commission expires June 20, 2011

- 2 -

## SERVICE LIST

Stephen E. Jenkins, Esq.
Gregory A. Taylor, Esq.
Catherine A. Strickler, Esq.
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801
(Counsel to the Shaw Group)
***Hand Delivery***

James E. Houpt, Esq.
Orrick, Herrington & Sutcliffe LLP
400 Capitol Mall, Suite 3000
Sacramento, CA 95814
(SWE&C Liquidating Trust)
***First Class Mail***

Cyrus Benson, III, Esq.
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036
(Counsel to Saudi Arabian Oil Company)
***First Class Mail***

Lorraine S. McGowen, Esq.
Alyssa D. Englund, Esq.
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103
(SWE&C Liquidating Trust)
***First Class Mail***

Dennis A. Meloro, Esq.
Greenberg Traurig, LLP
The Nemours Bldg.
1007 N. Orange Street, Suite 1200
Wilmington, DE 19801
(Counsel to Saudi Arabian Oil Company)
***Hand Delivery***