## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| STONE & WEBSTER, INCORPORATED | ) | |
| *et al.*, | ) | Case No. 00-02142 (PJW) |
| | ) | Jointly Administered |
| Debtors. | ) | Adv. Pro. No. 02-3963 (PJW) |
| —————————————————— | ) | |
| | ) | |
| THE SHAW GROUP INC. | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No.  07-00616 (SLR) |
| | ) | |
| SWE&C LIQUIDATING TRUST, | ) | |
| | ) | |
| Appellee. | ) | |
| —————————————————— | ) | |

## REPLY BRIEF OF APPELLANT THE SHAW GROUP INC.

**ASHBY & GEDDES**
Stephen E. Jenkins (I.D. No. 2152)
Gregory A. Taylor (I.D. No. 4008)
Catherine A. Strickler (I.D. No. 4310)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888

*Attorneys for The Shaw Group Inc.*

Dated:  April 11, 2008

## **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................1

PRELIMINARY STATEMENT .........................................................1

ARGUMENT...................................................................................2

I.     Shaw Holds The Necessary Interest And Article III Standing
And Is Therefore Entitled To Intervene In This Proceeding ......................2

     A.     Shaw's Claim against Saudi Aramco and Supporting
Arguments.........................................................................3

          i.     Shaw is subrogated to BS&W's claims against Saudi
Aramco...................................................................3

          ii.     Under the APA, Shaw owns SWEC's subrogation
claim against Saudi Aramco in connection with
the Guaranty & Payment Letter ...........................4

          iii.     Shaw is subrogated to SAMBA's claim against
Saudi Aramco.........................................................5

     B.     Shaw Holds the Necessary Interest and Article III
Standing to Assert a Statutory Right to Intervene ...........6

II.     The Bankruptcy Court Erroneously Subjected Shaw's
Motion To A Higher Standard That What Rule 24 Imposes
By Requiring Shaw To Conclusively Prove Its Claim In
Order To Intervene..................................................................8

III.     Bankruptcy Court's Decision Rests On Its Mischaracterization
Of Shaw's Claim...................................................................10

IV.     Shaw's Claim Undoubtedly Involves Common Questions
Of Law And Fact With The Trust's Claims Against Saudi
Aramco And, Therefore, Shaw Should Be Permitted To
Intervene In This Proceeding .................................................11

V.     The Bankruptcy Court Applied The Wrong Standard To Shaw's
Request For Permissive Intervention .......................................13

## **TABLE OF CONTENTS**

### **(Contd.)**

Page(s)

VI. Neither The Orders Cited By The Trust Nor The November 30, 2004 Settlement Stipulation Preclude Shaw From Asserting Its Claim Against Saudi Aramco ............................................. 13

    A. The Injunction Set Forth in the Sale Order and Confirmation Order are Inapplicable ............................................. 14

    B. The Releases Set Forth in The November 30, 2004 Settlement Stipulation are Inapplicable ........................................ 15

    C. The Trust Should Be Bound By Its Admissions That Shaw Did Not Assume The Liability To SAMBA ....................... 16

VII. Shaw Motion Is Not Untimely And No Significant Prejudice Would Result From Shaw's Intervention .................................. 17

    A. Shaw's Motion to Intervene is Not Untimely ................................. 18

    B. No Significant Prejudice with result to the Trust's Beneficiaries if Shaw is Permitted to Intervene in this Matter .................................................................................... 19

CONCLUSION ................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*American Surety Co. of New York v. Bethlehem Nat'l Bank of Bethlehem,*
    314 U.S. 314 (1941) ................................................................ *passim*

*Automatic Sprinkler Corp. of America v. Fidelity & Deposit Co. of Maryland,*
    22 F.R.D. 248 (M.D. Pa. 1958) ................................................................ 13

*Blachy v. Butcher,*
    221 F.3d 896 (6th Cir. 2000) ................................................................ 7

*First Indem. of America Ins. Co. v. Modular Structures, Inc.,*
    27 F.3d 72 (3d Cir. 1994) ................................................................ 16

*Harris v. Pernsley,*
    820 F.2d 592 (3d Cir. 1987) ................................................................ 9

*Mabey v. Dixie Elec. Mem. Corp.,*
    2007 WL 2253503 (5th Cir. Aug. 7, 2007) ................................................................ 7

*In re Marcus Hook Dev. Park, Inc.,*
    943 F.2d 261 (3d Cir. 1991) ................................................................ 16

*Midway Airlines, Inc. v. Northwest Airlines, Inc.,*
    154 B.R. 248 (N.D. Ill. 1993) ................................................................ 9

*Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.,*
    72 F.3d 361 (3d Cir. 1987) ................................................................ 9, 18

*Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n,*
    342 F.3d 242 (3d Cir. 2003) ................................................................ 7

*Natwest USA Credit Corp. v. Alco Standard Corp.,*
    858 F.Supp 401 (S.D.N.Y. 1994) ................................................................ 4, 6

*Noble v. Yingling,*
    37 B.R. 647 (D. Del. 1984) ................................................................ 18

*Pearlman v. Reliance Ins. Co.,*
    371 U.S. 132 (1962) ................................................................ 7

*Pennamco, Inc. v. Nardo Management Co.,*
    435 A.2d 726 (Del. Super. Ct. 1981) ................................................................ 9

# TABLE OF AUTHORITIES

## (Contd.)

<u>**Cases**</u>                                                                                 **Page(s)**

*Putnam v. Commissioner of Internal Revenue,*
    352 U.S. 82 (1956) ...................................................................................4, 6

*Saudi American Bank v. Saudi Arabian Oil Co. (In re Stone & Webster, Inc.),*
    2007 WL 2460590 (D. Del. Aug. 29, 2007) ............................................3

*Saudi American Bank v. Shaw Group, Inc. (In re Stone & Webster, Inc.),*
    2005 WL 1036556 (D. Del. May 3, 2005) ............................................4, 5

*U.S. v. Alcan Aluminum, Inc.,*
    25 F.3d 1174 (3d Cir. 1994) ...................................................................18


<u>**Rules and Statutes**</u>

Fed. R. Civ. P. 8(d)(2)...................................................................................3

Fed. R. Bankr. P. 7008(d)(2)..........................................................................3

Fed. R. Civ. P. 24..........................................................................................13

## INTRODUCTION

On February 29, 2008, The Shaw Group Inc. ("Shaw")[1] filed its opening brief in support of its appeal from the Bankruptcy Court's denial of Shaw's motion to intervene (D.I. 61) (the "Motion").[2]  On March 28, 2008, the SWE&C Liquidating Trust ("Trust") filed its responding brief.[3]  This is Shaw's reply brief in further support of its appeal.

## PRELIMINARY STATEMENT

In its brief, the Trust accuses Shaw of attempting to "commandeer a settlement between the Trust and Saudi Aramco." (Resp. Brf. at 1).  If, in fact, the Trust has reached a settlement with Saudi Aramco, that is news to Shaw and would be news to the Bankruptcy Court as well. Despite many hopeful hints to the contrary, the Trust still has not settled the case against Saudi Aramco.  Assuming, however, that the Trust's statements are correct and that it has settled the Saudi Aramco case (in which case perhaps it could inform the Bankruptcy Court of that fact), then the Trust's sense of outrage is misplaced.

For the truth is that it is the *Trust* -- through little effort or expense of its own -- that stands to reap a windfall by shedding a nearly $10 million liability to SAMBA, and obtaining all the benefit of the asset that corresponds to that liability (the purported settlement with Saudi Aramco).  As the Trust is aware, in the Asset Purchase Agreement ("APA") entered into by its predecessor, liabilities went with accompanying assets and at least part of this asset was directly linked to the SAMBA liability.  By this Court's summary judgment against Shaw, Shaw now has

---

[1] Any capitalized term not otherwise defined herein shall have the meaning given to such term in the Opening Brief.

[2] "A" followed by a number refers to a specific page of the Appendix, which was filed in connection with the Opening Brief.  "D.I." refers to docket items in this case from the United States Bankruptcy Court for the District of Delaware.  Docket items from other related cases are listed by case number followed by specific docket entry (*e.g.*, Adv. Pro. 01-7766 D.I. 1).

[3] References to the Opening Brief are cited herein as "Op. Brf. at __" and to the Responding Brief as "Resp. Brf. at __".

responsibility for that liability. The Trust *knows* that the parties did not intend Shaw to be responsible for that debt. Yet despite that knowledge, the Trust opposes Shaw's intervention in order to prevent Shaw from recovering its damages from Saudi Aramco, which has *not* opposed Shaw's motion. The Trust's position in this regard is legally in error and its claimed moral outrage exhibits -- to put it as mildly as possible -- an attitude in which the representations of its predecessors in interest are treated as being of no account.

As discussed hereafter, Shaw is equitably subrogated to BS&W's claims against Saudi Aramco. Moreover, under the terms of the APA, Shaw (not the Trust) owns the claim against Saudi Aramco relating to the Guaranty and Payment Letter. Shaw is not "commandeering" the settlement when the Trust is not the proper party (or, at a minimum, not the *only* proper party) to assert the claim in the first instance. Shaw seeks intervention in this proceeding to assert its claim against Saudi Aramco and recover from Saudi Aramco that to which it is entitled -- no more, no less.

## ARGUMENT

### I.    Shaw Holds The Necessary Interest And Article III Standing, And Is Therefore Entitled To Intervene In This Proceeding.

The Trust argues that Shaw lacks the necessary interest and Article III standing to pursue its claim against Saudi Aramco. (Resp. Brf. at 18). The Trust's arguments are curious because the interest asserted, and standing held, by Shaw is nearly identical to that of the Trust.[4] To the extent Shaw's interest or standing suffers any defect, the Trust's interest or standing suffers the

---

[4] *Compare* SWEC's Complaint (A32 (D.I. 1 at 19 ("Should the Court determine that SWEC is liable for the debts of BS&W under Saudi law, then SWEC is entitled to assert the rights of BS&W against SAUDI ARAMCO, including BS&W's right to assert a breach of contract action.") *with* Shaw's proposed Complaint in Intervention (A335 (D.I. 61, Exhibit 1 at 10) (If Shaw "pays SAMBA under the Guaranty for the remaining balance of BS&W's debt under the Ras Tanura Project, Shaw will be the entity with a right to recover proceeds under the In-Kingdom Contract.").

same defect.  Notwithstanding the Trust's self-subversive argument, Shaw (like the Trust) in fact holds the necessary interest and Article III standing to justify its intervention in this proceeding.

### A.     Shaw's Claim against Saudi Aramco and Supporting Arguments.

At bottom, Shaw's claim is against Saudi Aramco for breach of the In-Kingdom Contract.  Despite the Trust's argument that Shaw's claim is dependent upon the validity of SAMBA's claimed assignment of proceeds of the In-Kingdom Contract (a theory this Court has already rejected),[5] Shaw's claim and supporting arguments are not so limited.  Primarily, Shaw's proposed Complaint in Intervention seeks a declaration that Saudi Aramco breached the In-Kingdom Contract and that Shaw is entitled to certain proceeds thereof.[6]  The following arguments support Shaw's claim.[7]

### i.     Shaw is subrogated to BS&W's claims against Saudi Aramco.

Shaw is equitably subrogated to BS&W's claim against Saudi Aramco for breach of the In-Kingdom Contract.[8]  This theory is the same theory upon which the Trust's claims are based

---

[5] *Saudi American Bank v. Saudi Arabian Oil Co. (In re Stone & Webster Inc.)*, Civ. No. 06-0399-SLR, 2007 WL 2460590 (D. Del. Aug. 29, 2007).

[6] To the extent Shaw's proposed Complaint in Intervention (which is just that – a *proposed* Complaint) might be unclear, Shaw will revise it prior to filing (assuming Shaw is permitted to intervene) to make clear that Shaw's "claim" is against Saudi Aramco. The Trust asserts a similar right to further revise its Amended Complaint against Saudi Aramco to address certain deficiencies in the claims plead by the Trust.  (Resp. Brf. at 11) ("As the bankruptcy court itself noted, the same theory would preclude any claim by SWEC or the Trust. However, the Trust already clarified that the Trust is prepared to file an amended complaint asserting claims unquestionably belonging only to SWEC and its successor, the Trust, if settlement efforts are unsuccessful.") The Trust thus is in no position to contend that this is a unilateral right.

[7] Shaw asserts these arguments in the alternative as permitted under applicable law. *See* Fed.R.Civ.P. 8(d)(2); Fed.R.Bankr.P. 7008(d)(2). Therefore, they are to be construed independently of one another.

[8] Subrogation "is the rule ... whereby 'one who has been compelled to pay a debt which ought to have been paid by another is entitled to exercise all remedies which the creditor possessed against that other.'" *American Surety Co. of New York v. Bethlehem Nat'l Bank of Bethlehem*, 314 U.S. 314, 317 (1941). Technically, because SWEC (not BS&W) entered into the Guaranty & Payment Letter, Shaw would become subrogated to SWEC upon satisfaction of the liability owing to SAMBA under the Guaranty & Payment Letter. However, because SWEC was the guarantor of BS&W's line of credit from SAMBA, Shaw will succeed to BS&W's rights and claims against Saudi Aramco under the In-Kingdom Contract upon satisfaction of BS&W's guaranteed debt to SAMBA.

(see Section IV, *infra*),[9] and arise from the possible eventuality that Shaw may be forced to satisfy BS&W's liability to SAMBA.  *See, e.g.*, *American Surety*, 314 U.S. at 317 ("The surety is a special kind of secured creditor.  For its claim against the principal is secured by its right of subrogation to the remedies of the creditor which it has been compelled to pay.") (citations omitted).[10]  If Shaw satisfies BS&W's liability to SAMBA, Shaw will become subrogated to BS&W's breach of contract claim against Saudi Aramco.

> **ii.    Under the APA, Shaw owns SWEC's subrogation claim against Saudi Aramco in connection with the Guaranty & Payment Letter.**

SWEC, as 50% guarantor of BS&W's liability to SAMBA, would become subrogated to BS&W's claim against Saudi Aramco if SWEC satisfies BS&W's liability to SAMBA arising under the Guaranty and Payment Letter.  However, this Court has determined that Shaw assumed the liability owing under the Guaranty and Payment Letter to SAMBA and that SWEC was off the hook.[11]  Accordingly, Shaw also has an ownership right arising under the APA to the claim against Saudi Aramco.

Under the APA, all contracts that were assumed by Shaw fall within the definition of "Assumed Contracts."  (A363).  By this Court's prior decision, the Guaranty and Payment Letter are "Assumed Contracts."  Furthermore, the only liabilities assumed by Shaw under the APA fall

---

[9] Had SWEC satisfied the liability to SAMBA on account of the Guaranty & Payment Letter, SWEC would have been subrogated to BS&W's claims against Saudi Aramco (and Shaw would not be involved in this matter).  But given that Shaw has been charged with that liability, it is unclear to Shaw how the Trust could assert claims originally belonging to BS&W.

[10] *See also Putnam v. Commissioner of Internal Revenue*, 352 U.S. 82, 85 (1956) ("upon the payment by the guarantor of the debt, the debtor's obligation to the creditor becomes an obligation to the guarantor...who steps into the creditor's shoes"); *Natwest USA Credit Corp. v. Alco Standard Corp.*, 858 F. Supp. 401, 414 (S.D.N.Y. 1994) ("Under the doctrine of equitable subrogation, a guarantor has the right to be subrogated to any and all rights that a creditor or subrogor has against a debtor.").

[11] *Saudi American Bank v. Shaw Group, Inc.(In re Stone & Webster, Inc.)*, 2005 WL 1036556 at *7 (D. Del. May 3, 2005) (holding "the Guaranty and Payment Letter are contracts that were assumed by defendant Shaw by operation of the APA and the Sale and Assumption Order." (A487).

within the definition of "Assumed Liabilities." (A363-364, 378).[12] Thus, the liability associated with the Guaranty and Payment Letter, according to this Court's interpretation of the APA, is an "Assumed Liability."

Under the APA, Shaw purchased "any and all claims and causes of action, including privileges related thereto, of any Seller against third parties relating to ... (ii) the Assumed Liabilities or the Assumed Contracts...." (A377).[13] Thus, it follows from the express terms of the APA that all claims and causes of action against third parties related to the Guaranty and Payment Letter formerly held by SWEC are now *owned* by Shaw (unless, of course, the Third Circuit reverses this Court's opinion holding that Shaw assumed the SAMBA loan). Those purchased claims include SWEC's subrogation claim against Saudi Aramco for breach of the In-Kingdom Contract that led to SAMBA's enforcement of the Guaranty and Payment Letter.

### iii.    Shaw is subrogated to SAMBA's claim against Saudi Aramco.

Shaw also holds a subrogation claim against Saudi Aramco by virtue of BS&W's assignment of rights and claims from the In-Kingdom Contract to SAMBA. In the event that Shaw satisfies BS&W's liability owing to SAMBA, Shaw will become subrogated to SAMBA's rights and claims that it received by assignment from BS&W.[14]

These are the primary theories supporting Shaw's claim against Saudi Aramco. Under any one of these theories, any recovery to Shaw will come from Saudi Aramco – *not* the Trust.

---

[12] This Court has previously found: "Section 1.01 and 2.03 and Schedule 2.03 of the APA define the scope of 'Assumed Liabilities' as including 'outstanding bank indebtedness'. The record indicates that Schedule 3.17, listing those contracts which relate to such outstanding bank indebtedness as guaranties, includes at least an indirect reference to the Guaranty and Payment Letter." *Saudi American Bank*, 2005 WL 1036556 at *7.

[13] SWEC is a "Seller" under the APA. (A362, 437 (D.I.61)).

[14] Shaw understands that this Court has already ruled on the validity of SAMBA's claimed assignment from BS&W and that SAMBA has appealed this Court's ruling on that issue to the Third Circuit Court of Appeals. Thus, Shaw will not attempt to reargue that issue here, but reserves all rights with respect thereto.

Thus, the claim Shaw seeks to assert, and for which Shaw seeks to intervene, is a claim against Saudi Aramco – *not* the Trust.[15]

### B.    Shaw Holds the Necessary Interest and Article III Standing to Assert a Statutory Right to Intervene.

The Trust argues that Shaw lacks the necessary interest or Article III standing because Shaw's claim is derived from a facially deficient assignment from SAMBA. (Resp. Brf. at 18). The Trust also argues Shaw lacks privity under the In-Kingdom Contract. (Resp. Brf. at 21).

As discussed above (*see* Section I.A.i., *supra*), Shaw's claim does not solely depend upon the validity of SAMBA's claimed assignment. Shaw also asserts a claim against Saudi Aramco for breach of the In-Kingdom Contract as the subrogor of BS&W,[16] as well as a contractual claim that it now owns SWEC's right to assert a breach of contract claim against Saudi Aramco by virtue of the express terms of the APA. (*See* Section II.A.ii., *supra*). It is correct that Shaw also asserts a claim as subrogor to SAMBA, and that this Court has already ruled on the validity of SAMBA's asserted assignment. That issue is currently on appeal before the Third Circuit and, therefore, Shaw will not attempt to reargue the merits of that issue now except to note that the issue is not final. Regardless of the validity of Shaw's claim based on SAMBA's claimed assignment, however, Shaw asserts additional arguments that are entirely separate from SAMBA's asserted assignment. Thus, this Court's prior ruling regarding the validity of

---

[15] In order to protect any possible recovery, Shaw also has requested injunctive relief, unjust enrichment and indemnification against Saudi Aramco, the Debtors and/or SAMBA. (A326-340). Even if certain ancillary requests for relief set forth in Shaw's proposed Complaint in Intervention are properly characterized as claims against the Trust, Shaw's ultimate "claim" lies solely against Saudi Aramco. That a recovery by Shaw against Saudi Aramco would preclude that Trust recovering on a similar claim does not mean that Shaw is bringing a substitute claim against the Trust.

[16] *See, e.g., American Surety,* 314 U.S. at 317 ("one who has been compelled to pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other") (citations omitted); *Putnam*, 352 U.S. at 85 ("upon the payment by the guarantor of the debt, the debtor's obligation to the creditor becomes an obligation to the guarantor…who steps into the creditor's shoes"); *Natwest USA Credit Corp.*, 858 F. Supp. at 414 ("Under the doctrine of equitable subrogation, a guarantor has the right to be subrogated to any and all rights that a creditor or subrogor has against a debtor.").

SAMBA's claim does not provide a basis to reject Shaw's other arguments supporting its request for intervention.

Shaw accordingly has the requisite "standing" to support its intervention in this proceeding. It is beyond dispute -- and we do not understand the Trust to dispute it -- that a subrogor succeeds to the rights and claims of its subrogee. *See American Surety Co.*, 314 U.S. at 317 ("Succeeding to the creditor's right, the surety also succeeds to the creditor's means of enforcing it."); *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132 (1962) (holding that surety had right to retained funds on account of having honored construction performance bonds).[17] Thus, Shaw, as subrogor of BS&W, enjoys the same standing as that of BS&W.

BS&W would certainly have the requisite standing to sue Saudi Aramco for breach of contract.[18] Standing requires 1) injury-in-fact; 2) a causal connection between the alleged injury and the conduct being challenged; and 3) a likelihood that the injury will be redressed by a favorable decision. *Nat'l R.R. passenger Corp. v. Pa. Pub. Util. Comm'n*, 342 F.3d 242, 254 (3d Cir. 2003). BS&W, as a party to the In-Kingdom Contract, was in privity with Saudi Aramco.[19] The Trust does not dispute -- indeed it correctly alleges -- that Saudi Aramco breached the In-Kingdom Contract by, among other things, failing to pay timely amounts owed to BS&W. (A31-32). It is further undisputed that BS&W defaulted on its $35 million line of credit from SAMBA because of Saudi Aramco's massive breach of the In-Kingdom Contract. (A14-A35). It is very likely that if BS&W (and now Shaw) were to receive a favorable decision on its breach of contract claim against Saudi Aramco, its injury (*i.e.*, the liability owing to SAMBA) would be

---

[17] *See also Mabey v. Dixie Elec. Mem. Corp.*, 2007 WL 2253503 (5th Cir. Aug. 7, 2007) (contract party had standing to enforce contractual subrogation); *Blachy v. Butcher*, 221 F.3d 896, 906-910 (6th Cir. 2000) (title insurer had standing to enforce contractual subrogation claim).

[18] The Trust cannot disagree on this point since its claims are derivative of BS&W. (*See* A31-33).

[19] Because Shaw succeeds to all of BS&W's rights and claims under the In-Kingdom Contract by virtue of subrogation, the Trust's argument that Shaw lacks privity of contract is simply irrelevant.

redressed because, as subrogor of BS&W's guarantor (and hence also its subrogor), Shaw is entitled to recover all amounts expended to satisfy the underlying liability. For these reasons, BS&W would have the requisite Article III standing and Shaw, and subrogor to BS&W, also enjoys the requisite standing to assert its claim against Saudi Aramco.

Additionally, as set forth above (*see* Section II.A.ii., *supra*), the Debtors transferred all "claims and causes of action, including privileges related thereto, of any Seller against third parties" with respect to the Guaranty and Payment Letter. (A377). By virtue of the terms of the APA, Shaw is the true and current owner of this claim. Shaw's claim against Saudi Aramco based upon the Guaranty and Payment Letter is, essentially, the same claim asserted by the Trust in this proceeding. (*See* A31-33). Thus, Shaw's standing is equally as good as the Trust's and both have standing to pursue the claims against Saudi Aramco.

**II.    The Bankruptcy Court Erroneously Subjected Shaw's Motion To A Higher Standard That What Rule 24 Imposes By Requiring Shaw to Conclusively Prove Its Claim In Order To Intervene.**

In its Opening Brief, Shaw argued that the Bankruptcy Court inappropriately required Shaw to meet a higher burden than that which is imposed by Rule 24. (Op. Brf. at 13). Specifically, Shaw argued that the Bankruptcy Court denied the Motion because, in its view, Shaw failed to prove its underlying claim and, therefore, failed to demonstrate a sufficient interest in the Saudi Aramco Proceeding to justify its intervention. (Op. Brf. at 14).

Nowhere in its Responding Brief does the Trust contest Shaw's argument on this point, and therefore Shaw is entitled to the presumption that the Trust does not disagree with the analysis. (*See* Resp. Brf.). Aside from the lack of any opposition by the Trust on this point, a brief examination of applicable controlling law demonstrates that the Bankruptcy Court committed reversible error.

Under Rule 24, a movant must show only that "there is a tangible threat to a *legally cognizable* interest to have the right to intervene." *Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) (emphasis added) (quoting *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987); *see also Midway Airlines, Inc. v. Northwest Airlines, Inc.*, 154 B.R. 248, 252 (N.D. Ill. 1993) (stating a movant is entitled to intervene unless "it appears that the proposed intervenor would not be entitled to relief under any set of facts which *could be proved* from the motion.") (emphasis added).   Furthermore, "[i]n deciding whether to permit intervention, all nonconclusory allegations supporting a motion to intervene are taken as true, absent sham or frivolity." *Pennamco, Inc. v. Nardo Management Co.*, 435 A.2d 726, 728 (Del. Super. Ct. 1981)

Despite the controlling precedent of *Mountain Top Condo. Assoc.*, the Bankruptcy Court required Shaw to prove conclusively its claim to the proceeds of the In-Kingdom Contract in connection with Shaw's motion to intervene.  (*See* A559-61 (D.I. 79 at 22 (Shaw, in relying on SAMBA, "has not *proved* that it has a perfected security interest in the contract proceeds.") *and* 21-22 ("[i]t is Shaw's *obligation to prove* under applicable law that the Assignment of Contract Proceeds and the Specific Payment Instruction Letter created a perfected security interest in the proceeds.") (emphasis added)).  Furthermore, the Bankruptcy Court rejected Shaw's well plead allegations in violation of the applicable presumption of truth.  (*See* A559, A561 (D.I. 79 at 20 ("I doubt that BS&W effected a valid assignment under Saudi banking law....")).  That analysis was in error.

The Bankruptcy Court subjected Shaw's motion to intervene to an inappropriately heightened burden of proof than that imposed by Rule 24.  The Trust fails to contend otherwise. Therefore, the Bankruptcy Court's decision should be reversed.

### III.    Bankruptcy Court's Decision Rests On Its Mischaracterization Of Shaw's Claim.

The Trust attempts to downplay the significance of the Bankruptcy Court's mischaracterization of Shaw's claim by asserting that it is a distinction without a difference. (Resp. Brf. 28). The Trust is in error, though, the distinction is real.[20] Moreover, as illustrated below, the Trust's argument defies logic.

Shaw's right to the proceeds of the In-Kingdom Contract is a claim against Saudi Aramco -- the party that breached the contract. If that were not the case, that is, if a claim for these proceeds is necessarily a claim against the Trust, then the Trust's claim would also necessarily have to be characterized as a claim against . . . *itself.* Of course, the Trust is not suing itself. It seeks the money from Saudi Aramco. So does Shaw. That both parties are seeking the money from the same third party does not mean that one of the claimants will be the payor -- it only means that the Court might need to decide who has first right to the funds (though as a legal matter that cannot really be in dispute).

The Bankruptcy Court seemed to have understood that any recovery by Shaw would come from Saudi Aramco. (A551 (D.I. 79 at 12) ("Shaw seeks intervention in order to obtain from Saudi Aramco that which otherwise would go to the Trust if the Trust is successful in its breach of contract cause of action.") Yet, the Bankruptcy Court erred in mischaracterizing the nature of Shaw's claim as a claim against *the Trust,* and then rested its conclusion upon that erroneous characterization when it denied Shaw's motion to intervene. (A540-573 (D.I. 79)).

---

[20] The Trust attempts to characterize Shaw's claim as being one against the Trust in an effort to shoehorn Shaw's claim against Saudi Aramco into the scope of certain injunctions for the benefit of the Debtors ordered by the Bankruptcy Court and the release set forth in the November 30, 2004 Settlement Agreement. The Trust's argument is not, however, legally or factually supportable.

Thus, the Bankruptcy Court's conclusion is without factual or legal support and, therefore, should be reversed.[21]

### IV.    Shaw's Claim Undoubtedly Involves Common Questions Of Law And Fact With The Trust's Claims Against Saudi Aramco And, Therefore, Shaw Should Be Permitted To Intervene In This Proceeding.

The Trust also argues that "*SAMBA's* claimed 'assignment' does not involve common questions or law or fact with the Trust's claims against Saudi Aramco" and, therefore, Shaw is precluded from permissive intervention. (Resp. Brf. 23-24) (emphasis added). The appropriate question, however, is not whether *SAMBA's* claims involve common questions of law and fact with the claims of the Trust; the proper question is whether *Shaw's* claims involve common questions of law and fact with the claims of the Trust. The answer to that question (the proper question) is "yes."

SWEC's Complaint asserts claims against Saudi Aramco for indemnification, breach of the In-Kingdom Contract, and turnover of estate property. (A15 (D.I. 1 at 2)). Specifically, with respect to its breach of contract claim, SWEC alleges:

> 63.    Saudi ARAMCO failed to perform its obligations under the In-Kingdom Contract in several regards, including but not limited to providing flawed conceptual designs for the Project; failing to provide Deliverables (as defined in the In-Kingdom Contract) on schedule; failing to render decisions on change order requests in a timely fashion; refusing to process or negotiate BS&W's claims in good faith; and failing to consider any scheduling impacts to the Project, despite its frequent and often unnecessary change order requests.

*       *       *

> 65.    Further, Saudi ARAMCO has failed to remit the Withheld Funds due and owing to BS&W pursuant to the In-Kingdom Contract.

> 66.    Saudi ARAMCO's conduct constitutes a breach of the In-Kingdom Contract.

---

[21] The Trust also complains that Shaw did not raise this issue in the Bankruptcy Court. (*Id.*) Shaw could not do so, however, since the error occurred in that Court's opinion, *after* the hearing concluded.

67.    BS&W has suffered damages as a result of Saudi ARAMCO's breach of the In-Kingdom Contract.

68.    *Should the Court determine that SWEC is liable for the debts of BS&W under Saudi law, then SWEC is entitled to assert the rights of BS&W against SAUDI ARAMCO, including BS&W's right to assert a breach of contract action.*

(A31-32) (emphasis added).[22]    Additionally, with respect to its claim for turnover of estate property, SWEC alleges:

70.    The Withheld Funds constitute assets of BS&W.

71.    For the reasons set forth above, *SWEC is entitled to assert the rights of BS&W* should the Court determine that Saudi law disregards BS&W's corporate form as a limited liability company. This includes BS&W's right to the Withheld Funds.

(A32-33) (emphasis added).

From the foregoing, it is clear that SWEC asserts subrogation claims (claims originally belonging to BS&W) against Saudi Aramco resulting from Saudi Aramco's breach of the In-Kingdom Contract. It is equally clear that Shaw's claims against Saudi Aramco, if Shaw is permitted to intervene and assert them, involve the very same facts and law as does SWEC's claims against Saudi Aramco.[23] That is because SWEC's claims against Saudi Aramco and Shaw's claim against Saudi Aramco all arise from Saudi Aramco's breach of the same contract -- the In-Kingdom Contract. For example, in its proposed Complaint in Intervention, Shaw asserts that if it "pays SAMBA under the Guaranty for the remaining balance of BS&W's debt under the Ras Tanura Project, Shaw will be the entity with a right to recover proceeds under the In-Kingdom Contract." (A335). This is the same claim based upon the same subrogation theory

---

[22] The Debtors' Complaint defines "Withheld Funds" as follows: "Notwithstanding, Saudi ARAMCO has failed to remit the funds due and owing to BS&W (the 'Withheld Funds')." The Withheld Funds are the same proceeds of the In-Kingdom Contract that Shaw seeks to recover if permitted to intervene.

[23] Underscoring this point, Shaw's proposed Complaint in Intervention states: "The complete content of Debtors' Complaint (D.I. 1) is incorporated herein by reference."

asserted by SWEC in paragraph 68 of SWEC's Complaint quoted above. Both Shaw and SWEC assert that if they are forced to satisfy a debt owed by BS&W to SAMBA, then they become subrogated to BS&W's breach of contract claim against Saudi Aramco.

Shaw's claim and SWEC's claim against Saudi Aramco thus involve common questions of law and fact. *See Automatic Sprinkler Corp. of America v. Fidelity & Deposit Co. of Maryland*, 22 F.R.D. 248, 250 (M.D. Pa. 1958) (the "most obvious case" for permissive intervention is when the intervenor has a claim against a party similar to or identical with that asserted by another party). This is the ideal situation to allow Shaw to intervene in this proceeding.

## V.    The Bankruptcy Court Applied The Wrong Standard To Shaw's Request For Permissive Intervention.

The Bankruptcy Court inappropriately applied the Rule 24(a)(2) standard to Shaw's request for permissive intervention, which is governed by Rule 24(b). (A551 (D.I. 79 at 12). The Trust does not dispute the merits of Shaw's argument on this point. Rather, the Trust dismisses the Bankruptcy Court's error as "an inconsequential typographical error." (Resp. Brf. 18). It is plain, however, that the Bankruptcy Court's error was neither inconsequential nor typographical; rather, the Bankruptcy Court denied Shaw's motion to intervene, in part, on its application of the wrong standard and failed to address Shaw's request for relief under the appropriate standard. (A540-573 (D.I. 79)). The consequence of the Bankruptcy Court's mistake is obvious. Moreover, the Bankruptcy Court's error constitutes an abuse of discretion.

## VI.    Neither The Orders Cited By The Trust Nor The November 30, 2004 Settlement Stipulation Preclude Shaw From Asserting Its Claim Against Saudi Aramco.

The Trust argues that several orders of the Bankruptcy Court, as well as the November 30, 2004 Settlement Stipulation, preclude Shaw from asserting its claim against Saudi Aramco.

(Resp. Brf. p.13-16). The express language of each of the Orders, and the November 30, 2004

Settlement Stipulation, cited by the Trust compels a contrary conclusion.

### A.    The Injunctions Set Forth in the Sale Order and Confirmation Order are Inapplicable.

The Trust first cites to the following language of the Sale Order approving the APA:

> Except as provided in the Shaw Agreement, this Sale Order, or other order of this Court, after the Closing the Debtors and their estate shall have no further liabilities or obligations with respect to the Assumed Liabilities and *all holders of such claims* are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property or the Assets.

(Resp. Brf. 13) (quoting Sale Order, ¶41) (emphasis added). This Court has found that Shaw is

liable on the Guaranty and Payment Letter, which is therefore an "Assumed Liability" under the

APA. The holder of the claim on account of the Guaranty and Payment Letter is *not* Shaw; the

holder of the claim is the entity to which Shaw has been ordered to pay money -- namely,

SAMBA. Thus, SAMBA (not Shaw) is the party enjoined pursuant to the quoted language of the

Sale Order from asserting a claim against the Debtors on account of the Guaranty and Payment

Letter. The way the Trust would have this Court interpret and apply the foregoing language of

the Sale Order would mean that Shaw is enjoined from asserting the Guaranty and Payment

Letter claim against itself. The Trust asks this Court to accept a strained and illogical reading of

the Bankruptcy Court's Sale Order.

Similarly, the Trust cites certain language of the Bankruptcy Court's Confirmation Order

asserting that Shaw's claim to the proceeds of the In-Kingdom contract have been discharged.

(Resp. Brf. 14). That provision provides that "... all mortgages, deeds of trust, liens, pledges or

other security interests *against property of the Debtors'* estate are fully released and discharged."

(Resp. Brf. 14; Conf. Order ¶12) (emphasis added). The discharge received by the Debtors'

estates extends only so far as the Debtors' property. Shaw does not seek to assert a claim against

property of the Debtors' estates; on the contrary, Shaw seeks to assert a claim against Saudi Aramco. Moreover, because the Trust has not been able to consummate its settlement with Saudi Aramco to date, it is difficult (if not impossible) to see how Shaw's claim against Saudi Aramco seeking money that is in the possession of Saudi Aramco could possibly implicate the *Debtors'* property. Simply stated, it does not.[24]

Even if the portions of the Bankruptcy Court's Orders cited by the Trust arguably could be read to apply to Shaw, the Third Joint Plan and the Confirmation Order expressly preserve all of Shaw's rights under the APA:

> Notwithstanding anything in the Disclosure Statement or this Third Joint Plan to the contrary, all rights, claims and defenses, including but not limited to setoff and recoupment, arising pursuant to or in connection with the Asset Purchase Agreement between the Debtors and Shaw are hereby expressly preserved.

(Conf. Order, p.43) (modifying Article IX.I.2 of the Third Joint Plan). Shaw is free to assert its claim against Saudi Aramco.

### B.    The Releases Set Forth in the November 30, 2004 Settlement Stipulation are Inapplicable.

The Trust's reference to the November 30, 2004 Settlement Stipulation is yet another red-herring. The only beneficiaries of the releases contained in the Settlement Stipulation are Shaw, the SWINC Plan Administrator and the Trust. (*See* Memo. Opinion, August 31, 2007, at 29-30 (D.I. 79) ("The Settlement Stipulation contains a broad release provision that states that Shaw releases the Trust ....")) (A568-569). Saudi Aramco is not a party to the Settlement Stipulation

---

[24] For the same reasons, the Confirmation Order's injunction is not implicated here. That provision enjoins third parties from asserting "a Claim or other debt or liability against or an interest in any of the Debtors". Shaw is not seeking to assert a claim against or an interest in any of the Debtors or the Debtors' property.

and is not a beneficiary of the releases set forth therein.  Thus, the Settlement Stipulation is entirely irrelevant to Shaw's claim against Saudi Aramco.[25]

**C.    The Trust Should Be Bound By Its Admissions That Shaw Did Not Assume The Liability To SAMBA.**

Throughout its Responsive Brief, the Trust, as successor to the SWEC Debtors, claims the benefit of certain provisions of the Bankruptcy Court's Orders and the Third Amended Plan that provide protections or preserve rights and claims of the SWEC Debtors.    Yet, disappointingly, the Trust disclaims the admission by the Debtors' former Chief Restructuring Officer, James P. Carroll, stating:    "At all times during the negotiation, execution, and implementation of the APA, Shaw and the Debtors intended that the Ras Tanura Project and its attendant benefits and burdens would not be transferred to Shaw but would rather remain with the Debtors...."  (D.I. 61 (A466)).   Then, ignoring Mr. Carroll's sworn declaration, the Trust criticizes Shaw for failing to cite any evidence supporting the statement contained in Shaw's Opening Brief that "both Shaw and the Trust understood that Shaw had not assumed liability on account of the SAMBA Claim."  (Resp. Brf. p.26).

Mr. Carroll, however was not just anybody.  He *negotiated* the APA with Shaw and implemented its terms.  He had first-hand knowledge of what occurred and could bind the Debtors.  Even if the Trust was able to sever itself from Mr. Carroll's binding admission, which

---

[25] Even if this Court were to accept that the Settlement Stipulation was implicated here, the Bankruptcy Court inappropriately precluded Shaw from introducing evidence regarding the parties' understandings of its provisions. Before the Bankruptcy Court, Shaw argued that the November 30, 2004 Settlement Stipulation is not clear on its face and, thus, Shaw should be permitted to introduce extrinsic evidence regarding the parties' respective understandings of the provisions of the Settlement Stipulation.  (A522 (D.I. 73)).  The Bankruptcy Court found that Shaw released its claim pursuant to the Settlement Stipulation without first finding that it is clear on its face. *First Indem. of America Ins. Co. v. Modular Structures, Inc.*, 27 F.3d 72 (3d Cir. 1994) (bankruptcy court's failure to consider alternative theory of recovery was reversible error); *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 268 & n.9 (3d Cir. 1991) (failure to make findings is reversible error).  At a minimum, the Bankruptcy Court should have considered and addressed Shaw's argument for the submission of parol evidence.

Shaw submits it cannot, the Trust may not evade the fact that SWEC (as predecessor to the Trust) respectfully admitted its understanding that Shaw did not assume any liability to SAMBA.

For example, the Debtors' Disclosure Statement, on which creditors were entitled to rely in deciding whether to accept the Debtors' Third Amended Joint Plan, stated: "The Debtors do not believe that Shaw assumed any liability to SAMBA with respect to the Ras Tanura Loan, and, thus, the Debtors believe that SAMBA's claims against Shaw are without merit." (*See* Disclosure Statement at 23, Case No. 00-02142 (PJW), D.I. 4422).[26]  SWEC and the Official Committee of Unsecured Creditors, among others, were co-proponents of the Third Amended Plan and related Disclosure Statement.[27]  Shaw should not have to cite any evidence of Shaw's and the Trust's shared belief that Shaw did not assume any liability to SAMBA -- the Trust is already well aware of it.[28]

### VII.  Shaw Motion Is Not Untimely And No Significant Prejudice Would Result From Shaw's Intervention.

Although the Bankruptcy Court did not find that Shaw's motion was untimely, and Shaw did not address timeliness it in its Opening Brief, the Trust devotes a considerable portion of its Responsive Brief trying to convince this Court that Shaw's motion to intervene is untimely. (Resp. Brf. 6, 29-34).[29]  Additionally, the Trust asserts that Shaw's intervention will prejudice the Trust's beneficiaries in this proceeding because the Trust has already spent $1 million to settle its dispute with SAMBA with respect to a separate adversary proceeding.  Although the

---

[26] Contemporaneously with the filing of this Reply Brief, Shaw has filed a motion to supplement the record on appeal to include the Debtors' Disclosure Statement.

[27] The Official Committee of Unsecured Creditors were represented in the Debtors' Chapter 11 Case by the same counsel that now represents the Trust.

[28] In this Court's May 3, 2005 Memorandum Opinion in which the Court held that Shaw assumed the Guaranty and Payment Letter, the Court stated in support of its decision: "Finally, and of great significance, are the representation made to this court by counsel for the debtor ...." (Mem. Op., 16).  Shaw respectfully requests that the Court now give equal weight to the representations of the Debtors set forth in the Disclosure Statement.

[29] The Trust also claims that Shaw's motion was "premature". (Resp. Brf. 11).

Trust does not specify an amount and no such evidence exists in the record, the Trust claims that its beneficiaries have already borne the costs of crafting the settlement with Saudi Aramco.[30]

## A.    Shaw's Motion to Intervene is Not Untimely.

Shaw's Motion is not untimely.  The Third Circuit's discussion of timeliness in *Mountain Top Condo* is instructive in this regard: "The mere passage of time…does not render an application untimely.  While four years had elapsed before the [proposed intervenors] filed their motion to intervene, the critical inquiry is: what proceedings of substance have occurred?" *Mountain Top Condo*, 72 F.3d at 369.  In that case, some written discovery and settlement negotiations had occurred, but no depositions had been taken, nor any dispositive motions filed. *Id.* at 370.  Thus, although four years had passed, the case was still in an early stage of the proceedings and the proposed intervenor was permitted to intervene. *Id.[31]*

The bottom line is that this action has not proceeded beyond the filing of Saudi Aramco's motion to dismiss, which was filed on September 25, 2002.[32]  For approximately 5 and a half years, SWEC (and now the Trust) have promised (time and again) that it has reached a settlement with Saudi Aramco.[33]  However, no settlement has been finalized.  As recently as March 28, 2008, the

---

[30] Modest additional costs that potentially resulted from Shaw's "delay," however, do not constitute prejudice. *See Noble v. Yingling*, 37 B.R. 647, 651 (D. Del. 1984) (modest additional attorneys' fees and costs incurred by one party as a result of delay do not constitute prejudice so severe that another party is prevented from bringing a rightful claim, particularly if the right to bring that claim is conditioned on paying those expenses attributable to delay).

[31] *See also U.S. v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1181 (3d Cir. 1994) ("timeliness is not just a function of counting days; it is determined by the totality of the circumstances.")

[32] Indeed, briefing on Saudi Aramco's motion to dismiss has not been completed. (*See* Docket, Adv.Pro.No. 02-03963-PJW).

[33] Since approximately October 3, 2002, the Debtors (and then the Trust) have represented to the Bankruptcy Court and interested parties that they have reached a settlement with Saudi Aramco. (Discl. St. p.24).  On August 12, 2003, the Debtors stated: "Since [October 3, 2002], the parties' negotiations have not resulted in a final settlement agreement, and there is no assurance that a final settlement agreement will materialize." (*Id.*).  According to a status report filed on April 15, 2005, the Trust and Saudi Aramco tentatively settled the matter, although the parties anticipated needing twelve to twenty-four months to fulfill all terms of the settlement before this proceeding could be dismissed. (D.I. 31).  Two years later, on May 1, 2007, the Trust filed another status report stating that the parties had agreed to the terms of a settlement and needed only to complete documentation of the settlement. (D.I. 60).  The report further stated

Trust stated that is has been "unable to effectuate" the settlement with Saudi Aramco. (Resp. Brf. 14). In short, despite the length of time this case has been pending, no "proceedings of substance" have transpired.

### B.   No Significant Prejudice with Result to the Trust's Beneficiaries if Shaw Permitted to Intervene in this matter.

The Trust complains that its beneficiaries will be prejudiced if Shaw is permitted to intervene because it already has incurred $1 million to settle its dispute with SAMBA in the SAMBA Proceeding. In that proceeding, SAMBA commenced suit to enforce the terms of the Guaranty and Payment Letter, which at the time the suit was filed, both the Debtors and Shaw agreed was a liability owed by the Debtors. (*See* Disclosure Statement at 23, Case No. 00-02142 (PJW), D.I. 4422). Thus, upon consummation of its settlement with SAMBA, the Debtors were able to settle their liability regarding the Guaranty and Payment Letter for $1 million plus a grant to SAMBA of an allowed claim in the amount of $2.5 million, which will be reduced dollar-for-dollar for SAMBA's recovery from Shaw in excess of $3 million. (Resp. Brf. 5).

Shaw has been found liable on account of the Guaranty and Payment Letter and ordered to pay SAMBA the amount of $6,728,594 exclusive of interest, fees and costs. (A509). Because the judgment against Shaw is in excess of $3 million, SAMBA's allowed $2.5 million claim will be wiped out. Thus, in return for a cash payment of $1 million, the Trust has been able to rid itself of a nearly $7 million liability and a $2.5 million claim, and pursue a recovery from Saudi Aramco. At the same time, Shaw has been saddled with that same liability (now, with interest and fees, approximately $10 million) for which it never bargained in the first place, and now

---

that the Trust believed the settlement would be complete and the parties would seek dismissal of this action "within the next few weeks." (*Id.*).

stands to be precluded from any recovery from Saudi Aramco. Ultimately, this turned out to be a pretty good deal for the Trust.

Additionally, the Trust complains that Shaw will reap the benefit of the time and expense incurred by the Trust in crafting the settlement with Saudi Aramco. The Trust does not disclose the amount of fees and expenses incurred and, therefore, Shaw submits that this Court is not in a position to evaluate whether such fees and expenses provide a basis to deny Shaw's request to intervene. Nevertheless, it is quite possible that if the Trust would disclose its fees and expenses incurred in this matter, and Shaw were permitted to intervene, that the parties could arrive at an agreement to share such costs since it is ordinary for attorneys' fees to be paid before a subrogor receives its funds. But until the Trust discloses such amounts, Shaw is not in a position to enter into such an agreement, nor is this Court in a position to deny Shaw's appeal based upon an unsubstantiated claim of prejudice to the Trust's beneficiaries.

## CONCLUSION

For the foregoing reasons, Shaw respectfully requests that the Court enter an order holding that the Bankruptcy Court erred as a matter of law in denying Shaw's Motion to Intervene and finding that Shaw is allowed to intervene and bring its Complaint in Intervention in the Saudi Aramco Proceeding.

ASHBY & GEDDES

Stephen E. Jenkins (I.D. No. 2152)
Gregory A. Taylor (I.D. No. 4008)
Catherine A. Strickler (I.D. No. 4310)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

Dated: April 11, 2008          *Attorneys for The Shaw Group Inc.*
206445