**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| STONE & WEBSTER, INCORPORATED | ) | |
| *et al.*, | ) | Case No. 00-02142 (PJW) |
| | ) | Jointly Administered |
| Debtors. | ) | Adv. Pro. No. 02-3963 (PJW) |
| _____ | ) | |
| | ) | |
| THE SHAW GROUP INC. | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-00616 (SLR) |
| | ) | |
| SWE&C LIQUIDATING TRUST, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

**REPLY OF THE SHAW GROUP INC. IN SUPPORT OF MOTION TO**
**SUPPLEMENT RECORD ON APPEAL**

ASHBY & GEDDES
Stephen E. Jenkins (I.D. No. 2152)
Gregory A. Taylor (I.D. No. 4008)
Catherine A. Strickler (I.D. No. 4310)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

Dated: May 9, 2008          *Attorneys for The Shaw Group Inc.*

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION .................................................................................................... 1

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ........................................................................................................... 2

    I.     This Court may Properly Consider the Disclosure Statement ..................... 2

    II.    The Trust, as Successor in Interest to the Debtors' Claim
           in this Proceeding, is Bound by the Debtors' Statement
           Contained in the Disclosure Statement ....................................................... 4

    III.   Notwithstanding the "Disclaimer" the Disclosure Statement
           is Binding on the Trust............................................................................... 5

CONCLUSION.......................................................................................................... 7

# TABLE OF AUTHORITIES

## Cases                                                                    Page(s)

*In re Arizona Fast Foods, LLC,*
    299 B.R. 589 (Bankr.D.Ariz. 2003) .......................................................................6

*Caribbean S.S. Co., S.A. v. Sonmez Denizcilik Ve Ticaret A.S,*
    598 F.2d 1264 (2d Cir. 1979) ...........................................................................4

*Charter Executive Center Ltd. v. Federal Deposit Ins. Corp. ,*
    34 B.R. 131 (Bankr.M.D. Fla. 1983) ................................................................4

*Denver United States Nat'l Bank v. Asbell Bros. Const.,*
    294 F.2d 289 (10th Cir. 1961) .........................................................................5

*Donaldson v. Bernstein,*
    104 F.3d 547 (3d Cir. 1997).............................................................................6

*Elliott v. Papatones,*
    143 F.3d 623 (1st Cir. 1998)............................................................................3

*Glassman Constr. Co. v. Fidelity and Casualty Co. of New York,*
    356 F.2d 340 (D.C. Cir. 1996) .........................................................................5

*Goldin Assoc., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp,*
    2004 WL 1119652 (S.D.N.Y. May 20, 2004) ........................................................6

*Goodman Bros. Steel Drum Co. v. Liberty Mutual Ins. Co.,*
    247 B.R. 604 (Bankr.E.D.N.Y. 2000)..................................................................6

*Katz v. I. Appel. Corp.,*
    300 B.R. 564 (S.D.N.Y. 2003)..........................................................................6

*Kelley v. South Bay Bank,*
    199 B.R. 698 (9th Cir. BAP 1996)......................................................................6

*Knupfer v. Wolfberg,*
    255 B.R. 879 (9th Cir. BAP 2000) .....................................................................6

*Nantucket Invest. II v. California Federal Bank,*
    61 F.3d 197 (3d Cir. 1995)..............................................................................3

*Nickell v. U.S.,*
    355 F.2d 73 (10th Cir. 1996) ...........................................................................5

# TABLE OF AUTHORITIES

## (Contd.)

**Cases**                                                                                    **Page(s)**

*Saudi American Bank v. Shaw Group, Inc. (In re Stone & Webster, Inc.),*
    2005 WL 1036556 (D. Del. May 3, 2005)..................................................................2

*Wagner v. Central Banking & Security Co.,*
    249 F. 145 (4th Cir. 1918) ...............................................................................4-5

## Rules and Statutes

Fed. R. Evid. 201 ....................................................................................................2-3

## INTRODUCTION

On April 11, 2008, the Shaw Group Inc. ("Shaw") filed its motion ("Motion") to supplement the record on appeal to include a copy of the Debtors' Disclosure Statement (D.I. 4422; Case No. 00-02142 (PJW)) (the "Disclosure Statement"). On April 30, 2008, the SWEC Liquidating Trust (the "Trust") filed its responding brief in opposition to the Motion. This is Shaw's reply in further support of the Motion.

## PRELIMINARY STATEMENT

It is unfortunate that the Trust opposes Shaw's effort to inform this Court fully regarding the merits of the issues on appeal. Through the Motion, Shaw seeks to enlarge the record to include the Disclosure Statement so that the Court has the benefit of the following statement by the Debtors: "The Debtors do not believe that Shaw assumed any liability to SAMBA with respect to the Ras Tanura Loan, and, thus, the Debtors believe that SAMBA's claims against Shaw are without merit." (Disclosure Statement at 23). Shaw submits that this statement is an admission by the Debtors that is binding on the Trust, which is the successor in interest to the Debtors' claims asserted in this matter.

That statement from the Disclosure Statement is necessary to refute the Trust's argument – which the Trust did *not* make in the Bankruptcy Court – that it is not bound by the sworn declaration of the Debtors' Chief Restructuring Officer, Mr. James P. Carroll.[1] Even if the Trust is correct that Mr. Carroll's statement in his declaration is not binding on the Trust (an odd position to take), the Trust cannot evade the Debtors' binding admission in the Disclosure Statement. In an effort to solidify its windfall, the Trust now opposes Shaw's Motion and

---

[1] Mr. Carroll's statement, in part, is as follows: "At all times during the negotiation, execution, and implementation of the APA, Shaw and the Debtors intended that the Ras Tanura Project and its attendant benefits and burdens would not be transferred to Shaw but would rather remain with the Debtors...." (D.I. 61 (A466)).

objects to this Court having the Disclosure Statement available when it considers the merits of Shaw's appeal of the denial of its motion to intervene.

## ARGUMENT

### I.    This Court may Properly Consider the Disclosure Statement.

The Trust argues that Shaw's Motion must be denied because Shaw failed to direct its Motion to the Bankruptcy Court. (Resp. at 3). The Trust further argues that Shaw's omission deprived the Bankruptcy Court of the ability to determine whether the Disclosure Statement would have been relevant to its consideration of Shaw's motion to intervene. (Resp. at 4).

The Trust's argument turns the facts on their head. In the proceedings in the Bankruptcy Court, Shaw cited and relied upon Mr. Carroll's statement in support of its motion to intervene. (*See* [D.I. 61] (A318); [D.I. 73]). The Trust *never* disputed Mr. Carroll's statement and, therefore, Mr. Carroll's statement was never at issue. [D.I. 62]. The Trust's failure to challenge Mr. Carroll's statement below deprived Shaw of the opportunity to raise additional argument and introduce additional evidence in the Bankruptcy Court, such as the Disclosure Statement, in support of the veracity of Mr. Carroll's statement. Because the Trust failed to dispute Mr. Carroll's statement in the Bankruptcy Court, the Trust should not now be permitted to challenge Mr. Carroll's statement.[2]

Even if this Court is willing to consider the Trust's recent disavowal of Mr. Carroll's statement, the Court may properly consider the Disclosure Statement. Rule 201 of the Federal Rules of Evidence provides: "A court *shall* take judicial notice if requested by a party and

---

[2] The Trust also argues that this Court has already found that extrinsic evidence is inadmissible to prove the meaning of the APA. (Resp. at 4) (citing *Saudi American Bank v. Shaw Group, Inc. (In re Stone & Webster, Inc.)*, Civ. No. 04-834-SLR, 2005 WL 1036556 (D. Del. May 3, 2005)). That is incorrect. In that opinion, this Court *expressly* relied on extrinsic evidence when it stated: "Finally, and of great significance, are the representations made to this court by counsel for the debtor...." *Saudi American Bank*, 2005 WL 1036556 at *7. Shaw respectfully requests that the Court now give equal weight to the Debtors' representations contained in the Disclosure Statement.

supplied with the necessary information." Fed.R.Evid. 201 (providing both discretionary and mandatory judicial notice can be taken at any stage of the proceeding) (emphasis supplied).[3] Moreover, the United States Court of Appeals for the Third Circuit has found it appropriate to consider on appeal items not originally designated as part of the record. *Nantucket Invest. II v. California Federal Bank*, 61 F.3d 197, 205 (3d Cir. 1995) ("Federal Rule of Evidence 201 authorizes a court to take judicial notice of an adjudicative fact if that fact is not subject to reasonable dispute. Judicial notice may be taken at any stage of the proceeding, including on appeal, as long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority.") (internal quotes and citations omitted); *see also Elliott v. Papatones*, 143 F.3d 623, 624 (1st Cir. 1998) ("appellate courts may notice another court's record as an adjudicative fact").

In this case, it would be appropriate for this Court to take judicial notice of the Debtors' Disclosure Statement. The Trust cannot reasonably dispute that the Disclosure Statement states: "The Debtors do not believe that Shaw assumed any liability to SAMBA with respect to the Ras Tanura Loan, and, thus, the Debtors believe that SAMBA's claims against Shaw are without merit." (*See* Disclosure Statement at 23). Moreover, if this Court were to take judicial notice, it would not be unfair to the Trust, which only disclaimed Mr. Carroll's statement on this appeal and did so in the face of what was essentially the same statement contained in the Disclosure Statement (of which it has been aware all along). Finally, judicial notice would not undermine the Bankruptcy Court's fact finding authority in this case because it was the Trust – *not* Shaw – that failed to dispute Mr. Carroll's statement in the Bankruptcy Court.

---

[3] Along with its Motion, Shaw filed a copy of the Disclosure Statement containing the statement that is subject to Shaw's request for judicial notice.

3

Shaw respectfully submits that under the Federal Rules of Evidence and applicable Third Circuit law, this Court can and should consider the Disclosure Statement in connection with Shaw's appeal of the Bankruptcy Court's denial of Shaw's motion to intervene.

## II.    The Trust, as Successor in Interest to the Debtors' Claims in this Proceeding, is Bound by the Debtors' Statement Contained in the Disclosure Statement.

The Trust argues that Mr. Carroll's sworn statement and the Debtors' statement contained in the Disclosure Statement are not binding on the Trust. (Resp. at 2). But the Trust does not stop there; the Trust boldly asserts that "no authority exists" supporting Shaw's argument to the contrary. (Resp. at 2). The Trust is wrong on both accounts. As discussed below, the Trust is the assignee of the Debtors' cause of action in this proceeding and, therefore, under widely accepted law the Trust is subject to all legal and equitable defenses enforceable against the Debtors.[4]

It has long been held that the assignee of a claim takes it subject to all available defenses enforceable as against the assignor. *See Charter Executive Center Ltd. v. Federal Deposit Ins. Corp.*, 34 B.R. 131, 134 (Bankr.M.D. Fla. 1983) ("As a general rule, when a party becomes a successor in interest through legal process, that party's interest is subject to whatever defense the obligor has against its predecessor in interest."); *Caribbean S.S. Co., S.A. v. Sonmez Denizcilik Ve Ticaret A.S.*, 598 F.2d 1264 (2d Cir. 1979) ("assignee of a claim takes it with whatever limitations it had in the hands of the assignor"); *Wagner v. Central Banking & Security Co.*, 249

---

[4] On the effective date of the Joint Plan, the Debtors transferred all of the SWE&C Liquidating Trust Assets to the Trust. (Plan at 49). The "Liquidating Trust Assets" includes "Litigation Claims held by SWE&C or the SWE&C Subsidiaries." (Plan at 21). The Joint Plan defines "Litigation Claims" as: "the Claims, rights of action, suits or proceedings, whether in law or equity, whether known or unknown, that a Debtor or its Estate may hold against any Person, or that is deemed property of a Debtor's Estate or a Consolidated Estate under the Third Joint Plan or applicable bankruptcy law, which are retained by the SWINC Plan Administrator, or the SWE&C liquidating Trustee, or the respective Consolidated Estates, as the case may be, pursuant to Article VII.R. of this Third Joint Plan, including, but not limited to, the claims described in Third Joint Plan Exhibit B." (Plan at 11).

F. 145 (4th Cir. 1918) (same); *Glassman Constr. Co. v. Fidelity and Casualty Co. of New York*,

356 F.2d 340 (D.C. Cir. 1966) (same); *Denver United States Nat'l Bank v. Asbell Bros. Const.*,

294 F.2d 289 (10th Cir. 1961) (same); *Nickell v. U.S.*, 355 F.2d 73 (10th Cir. 1966) (same).  Thus,

in this case, all defenses enforceable against the Debtors are likewise now enforceable against

the Trust.  Such defenses include, *inter alia*, judicial estoppel regarding binding admissions by

the Debtors, such as the statement contained in the Disclosure Statement.

  The Trust further argues that judicial estoppel is inapplicable with respect to the Debtors'

statement contained in the Disclosure Statement because the Debtors did not succeed in

persuading the Bankruptcy Court to accept their statement contained in the Disclosure Statement:

"The Debtors do not believe that Shaw assumed any liability to SAMBA with respect to the Ras

Tanura Loan, and, thus, the Debtors believe that SAMBA's claims against Shaw are without

merit."[5]  (Resp. at 5).

  The Debtors filed and served the Disclosure Statement as part of their effort to obtain

Bankruptcy Court approval of the Joint Plan.  Thus, it is beyond reasonable dispute that the

Bankruptcy Court did anything other than accept the Debtors' representations in the Disclosure

Statement when it entered an Order approving the Disclosure Statement and later when it

confirmed the Joint Plan by entry of the Confirmation Order.  [*See* D.I. 4478 and D.I. 4879; Case

No. 00-02142 (PJW)].

### III. Notwithstanding the "Disclaimer" the Disclosure Statement is Binding on the Trust.

  The Trust also argues that the "disclaimer" contained in the Disclosure Statement

precludes its application to the present dispute.  (Resp. at 5).  Apparently, the Trust believes it

---

[5] The Trust does not argue that any other element of judicial estoppel is not satisfied here and, thus, Shaw submits that such remaining elements should be deemed satisfied.

can enforce the "disclaimer" while at the same time disclaiming the Debtors' admission contained therein. The Trust provides no credible explanation for why it should be allowed to rely on one statement in the document, while ignoring another. Aside from the Trust's cherry-picking approach to the Disclosure Statement, the Disclosure Statement is binding upon the Debtors and the Trust.

In *Donaldson v. Bernstein*, the Third Circuit examined the representations made in the disclosure statement and found that the disclosure statement was a binding contract. 104 F.3d 547, 556 (3d Cir. 1997). The Court stated that "[a disclosure statement is] a representation which in appropriate circumstances can serve as the basis for judicial estoppel" and in that case applied judicial estoppel to prevent a party from asserting a position contrary to her prior representation in the disclosure statement. *Id.* Numerous other courts also have found representations contained in disclosure statements to be binding on the parties. *See e.g., Goldin Assoc., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 2004 WL 1119652 (S.D.N.Y. May 20, 2004); *Knupfer v. Wolfberg*, 255 B.R. 879, 883 (9th Cir. BAP 2000) ("Once the plan was confirmed, that plan was binding on them just as it was binding on their creditors, and they could not later attempt to exempt assets represented in the disclosure statement to be non-exempt."); *Goodman Bros. Steel Drum Co. v. Liberty Mutual Ins. Co.*, 247 B.R. 604, 610-11 (Bankr.E.D.N.Y. 2000) (rejecting notion that disclosure statements are without legal effect); *Kelley v. South Bay Bank*, 199 B.R. 698 (9th Cir. BAP 1996) (reservation of claim in either plan or disclosure statement is sufficient to preserve claim post-confirmation); *Katz v. I. Appel Corp.*, 300 B.R. 564 (S.D.N.Y. 2003) (same); *In re Arizona Fast Foods, LLC*, 299 B.R. 589 (Bankr.D.Ariz. 2003) (same).

The Trust's argument, if accepted, would preclude application of the doctrine of judicial estoppel and any proponent of a plan of reorganization would be free to disclaim all prior statements simply by including a boilerplate "disclaimer" in the disclosure statement. The Bankruptcy Code intends no such result, and it is not one that this Court should permit. The disclaimer is ineffective as a matter of law. It should not be enforced and this Court should consider the Disclosure Statement when considering the merits of Shaw's appeal.

## CONCLUSION

For the reasons stated in the Motion and this Reply, Shaw respectfully requests that the Court enter an order granting the Motion, and for such additional relief as the Court deems appropriate.

ASHBY & GEDDES

Stephen E. Jenkins (I.D. No. 2152)
Gregory A. Taylor (I.D. No. 4008)
Catherine A. Strickler (I.D. No. 4310)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

Dated: May 9, 2008                    *Attorneys for The Shaw Group Inc.*

# <u>UNREPORTED CASES</u>

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 1119652 (S.D.N.Y.), 52 Collier Bankr.Cas.2d 178, 43 Bankr.Ct.Dec. 25
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1119652)**

▷
Goldin Associates, L.L.C. v. Donaldson, Lufkin &
Jenrette Securities Corp.
S.D.N.Y.,2004.

United States District Court,S.D. New York.
GOLDIN ASSOCIATES, L.L.C., Liquidating
Trustee of the Worldwide Direct Liquidating Trust,
on behalf of the Smartalk Teleservices, Inc. bank-
ruptcy estate, Plaintiff,
v.
DONALDSON, LUFKIN & JENRETTE SECUR-
ITIES CORPORATION, Donaldson, Lufkin & Jen-
rette, Inc. Global Retail Partners, L.P., DLJ Diver-
sified Partners, L.P., DLJ Diversified Partners-A,
L.P., GRP Partners, L.P., Global Retail Partners
Funding, Inc., DLJ First ESC, L.P., DLJ ESC-II,
L.P., Kenneth A. Vilieu, Linda Fayne Levinson,
Victor Grillo, Jr., Victor Grillo, Sr., Lloyd Lapidus,
Raymond Wysocki, Defendants.
**No. 00 Civ.8688(WHP).**

May 20, 2004.

Hal Neier, Friedman Kaplan Seiler & Adelman
LLP, New York, NY, for Plaintiff.
Arthur H. Aufses III, Kramer Levin Naftalis &
Frankel LLP, New York, NY, for Defendants Vic-
tor Grillo, Jr. Lloyd Lapidus and Raymond Wyso-
cki.
Kenneth A. Sweder, Sweder & Ross, LLP, Boston
MA, for Defendants Victor Grillo, Jr. Lloyd Lap-
idus and Raymond Wysocki.
Neal A. Potischman, Davis Polk & Wardwell, New
York, NY, for Defendants Donaldson, Lufkin &
Jenrette Securities Corporation and Kenneth Viel-
lieu.

*MEMORANDUM AND ORDER*

PAULEY, J.
*1 This action arises out of the Chapter 11 bank-
ruptcy proceedings of SMTK Expedite, Inc.,
formerly known as SmarTalk Teleservices, Inc.

("SmarTalk" or the "Debtor"). Presently before this
Court is defendants' motion for summary judgment
pursuant to Rule 56 of the Federal Rules of Civil
Procedure.[FN1] Defendants contend that the claims
by plaintiff Goldin Associates, L.L.C., Liquidating
Trustee for the Worldwide Direct Liquidating Trust
on behalf of the SmarTalk Bankruptcy Estate, are
barred by the doctrine of *res judicata* since
SmarTalk failed to reserve those claims in its plan
of liquidation. For the following reasons, defend-
ants' motion is denied.

> FN1. Specifically, this motion was brought
> by defendants Donaldson, Lufkin & Jen-
> rette Securities Corporation ("DLJ"), Ken-
> neth A. Viellieu (together, the "DLJ de-
> fendants"), and Victor Grillo, Jr., Lloyd
> Lapidus and Raymond Wysocki
> (collectively, the "WWD defendants").

*BACKGROUND*

The facts relevant to this motion are largely undis-
puted.[FN2] In January 1999, SmarTalk filed a volun-
tary petition for relief under Chapter 11 of the
Bankruptcy Code. (Plaintiff's Memorandum of Law
in Opposition to Defendants' Motion for Summary
Judgment ("Pl.Mem.") at 3.) Thereafter, in April
2000, SmarTalk's Official Committee of Unsecured
Creditors (the "Committee") commenced this ac-
tion against defendants in the United States District
Court        for        the        Central        District        of
California.[FN3] (Defendants' Statement Pursuant to
Local Rule 56.1 ("Def. 56.1 Stmt.") ¶ 5; Plaintiff's
Statement Pursuant to Local Rule 56.1 ("Pl. 56.1
Stmt.") ¶ 5.) In the spring of 2000, SmarTalk and
the Committee filed SmarTalk's Second Amended
Consolidated Liquidating Chapter 11 Plan (the
"Plan") with the Bankruptcy Court. (Def. 56.1
Stmt. ¶ 2; Pl. 56.1 Stmt. ¶ 2.) At the same time,
they also filed a Disclosure Statement concerning
the Plan (the "Disclosure Statement"). (Def. 56.1
Stmt. ¶ 3; Pl. 56.1 Stmt. ¶ 3; Affidavit of Hal Neier,
dated February 20, 2004 ("Neier Aff.") Ex. 1.) The

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                   Page 2
Not Reported in F.Supp.2d, 2004 WL 1119652 (S.D.N.Y.), 52 Collier Bankr.Cas.2d 178, 43 Bankr.Ct.Dec. 25
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1119652)**

Bankruptcy Court confirmed the Plan on June 7, 2001. (Def. 56.1 Stmt. ¶ 4; Pl. 56.1 Stmt. ¶ 4.)

> FN2. The background of this action is discussed at length in *Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenerette Sec. Corp.,* No. 00 Civ. 8688(WHP), 2002 WL 362794 (S.D.N.Y. Mar. 6, 2002), familiarity with which is presumed.

> FN3. The complaint asserted claims for breach of fiduciary duty and fraud against the DLJ defendants and fraud against the WWD defendants arising out of SmarTalk's 1998 acquisition of Worldwide Direct, Inc. (Def. 56.1 Stmt.; Affidavit of Arthur Aufses III, dated February 4, 2004 ("Aufses Aff.") Ex. D.). The case was transferred to this Court in November 2000.

The Plan does not include an express reservation of claims against defendants in this action. Instead, it contains a general reservation clause, which seeks to preserve in pertinent part:

All claims, rights, defenses, offsets, recoupments, causes of action, actions in equity, or otherwise, whether arising under the Bankruptcy Code or federal, state, or common law, which constitute property of the Estates ... (including without limitation the Fletcher Adversary [proceeding] ).

(Aufses Aff. Ex. A: SmarTalk Bankruptcy Plan § 15.2.) Nevertheless, SmarTalk specifically identified its pending claims against defendants in the Disclosure Statement filed with the Plan. (Neier Aff. Ex. 1, at 35-37.) Specifically, under a heading titled "Claims By and Against Donaldson, Lufkin & Jenrette And Related Entities, Including Former Shareholders of WWD," the Disclosure Statement provided, *interalia:*
By authority of the Transfer Order, on April 14, 2000, the Committee filed on behalf of the Estates an Original Complaint (the *"DLJ Complaint"* ) in the United States District Court for the Central District of California against the following entities: DLJSC, DLJ, Global Retail Partners, L.P., DLJ Diversified Partners, L.P., DLJ Diversified Partners-A, L.P., GRP Partners, L.P., Global Retail Partners Funding, Inc., DLJ First ESC, L.P., DLJ ESC-II, L.P., Kenneth A. Vilieu, Linda Fayne Levison (collectively, the *"DLJ Defendants"* ) and Victor Grillo, Jr., Lloyd Lapidus, Raymond Wysocki, and Victor Grillo, Sr. (collectively, the *"WWD Defendants"* ).

**\*2** The DLJ Complaint asserts claims arising out of the relationship between [SmarTalk] and the defendants in connection with the WWD transaction....

The Committee seeks relief on behalf of the Estates against all defendants, jointly and severally, for: actual and consequential damages caused by the defendants' alleged wrongful acts; damages resulting from violations of California Code Section 310, including the return of the value of the shares the defendants received at the time the WWD transaction was consummated; punitive damages for fraud and other wrongful conduct of the defendants; equitable relief in the form of voidable transactions; attorneys' fees as applicable by law; pre- and post-judgment interest on damages; costs of court; and all other relief as just.

(Neier Aff. Ex. 1 at 35-36.)

On May 13, 2000, the Bankruptcy Court concluded that the Disclosure Statement contained "adequate information" within the meaning of Section 1125 of the Bankruptcy Code, 11 U.S.C. § 1125 (2000), and approved dissemination of the Plan and Disclosure Statement to SmarTalk's creditors.[FN4](Neier Aff. Ex. 2 at 2-3: Disclosure Statement Approval Order.) On May 30, 2000, SmarTalk's creditors, including defendants, were served with the Plan and the Disclosure Statement. (Neier Aff. Ex. 3 at 2, Ex. 4 at 6-7, 9.) Defendants filed objections to the Plan in July 2000. (Neier Aff. Exs. 5-6.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2004 WL 1119652 (S.D.N.Y.), 52 Collier Bankr.Cas.2d 178, 43 Bankr.Ct.Dec. 25
(Cite as: Not Reported in F.Supp.2d, 2004 WL 1119652)

FN4." '[A]dequate information' means in-
formation of a kind, and in sufficient detail
... that would enable a hypothetical reason-
able investor typical of holders of claims
or interests in the relevant class to make an
informed judgment about the plan."11
U.S.C. § 1125.

*DISCUSSION*

I. *Summary Judgment Standard*

Courts may grant summary judgment only if "there
is no genuine issue as to any material fact" and "the
moving party is entitled to summary judgment as a
matter of law."Fed.R.Civ.P. 56(c). The movant
bears the burden of establishing that no genuine is-
sues of material fact exist. *Celotex Corp. v. Catrett,*
477 U.S. 317, 322-24 (1986); *accordMcLee v.
Chrysler Corp.,* 109 F.3d 130, 134 (2d Cir.1997).
Once the movant satisfies this requirement, the bur-
den shifts to the nonmoving party "to make a show-
ing sufficient to establish the existence of an ele-
ment essential to that party's case, and on which
that party will bear the burden of proof at trial
."*Celotex,* 477 U.S. at 322. The court is required to
resolve any ambiguities and to make all reasonable
inferences in favor of the nonmoving party.
*Flanigan v. Gen. Elec. Co.,* 242 F.3d 78, 83 (2d
Cir.2001). A genuine issue of material fact exists
when "a reasonable jury could return a verdict for
the nonmoving party."*Anderson v. Liberty Lobby,
Inc.,* 477 U.S. 242, 248 (1986).

II. *Preservation of Claims*

Under Section 1141(a) of the Bankruptcy Code,
"the provisions of a confirmed plan bind the debt-
or" and all other parties to a bankruptcy proceed-
ing. *See*11 U.S.C. § 1141(a) (2000). A confirmed
plan, therefore, constitutes a final judgment on the
merits entitled to preclusive effect under the doc-
trine of *resjudicata.See, e.g.,Sure-Snap Corp. v.
State St. Bank & Trust Co.,* 948 F.2d 869, 872-73
(2d Cir.1991) (order confirming plan of reorganiza-

tion has preclusive effect under *resjudicata* ); *ac-
cordInre Am. Preferred Prescription, Inc.,* 266 B.R.
273, 277 (Bankr.E.D.N.Y.2000); *In re Friedberg,*
No. 94 Civ. 1569(JFK), 1995 WL 733636, at *2
(S.D.N.Y. Dec. 12, 1995). Accordingly, a debtor is
precluded from asserting any claims post-
confirmation that are not preserved in its plan.
*SeeIn re I. Appel Corp.,* No. 03 Civ. 2355(VM),
300 B.R. 564, 566 (S.D.N.Y. Oct. 20, 2003) (citing
*D & K Props. Crystal Lake v. Mut. Life Ins. Co. of
New York,* 112 F.3d 257, 259 (7th Cir.1997)).
However, where the right to pursue litigation is re-
served in a plan, *resjudicata* will not prevent a
debtor from subsequently pursuing those claims.
*SeeIn re Am. Preferred Prescription,* 266 B.R. at 277.

*3 A majority of courts have held that, for this ex-
ception to apply, the reservation must identify with
some specificity what claims it intends to preserve
and against whom those claims are
asserted.[FN5] *SeeBrowning v. Levy,* 283 F.3d 761,
774 (6th Cir.2002) ("[A] general reservation of
rights [in a plan] does not suffice to avoid res ju-
dicata."); *D & K,* 112 F.3d at 261 ("A blanket reser-
vation that seeks to reserve all causes of action re-
serves nothing."); *In re Kelley,* 199 B.R. 698, 704
(9th Cir. BAP1996) ("[E]ven a blanket reservation
by the debtor reserving 'all causes of action which
the debtor may choose to institute' has been held
insufficient to prevent the application of res ju-
dicata to a specific action.") (internal quotations
omitted).

FN5. The degree of specificity required in
a reservation clause in unsettled. *Compare,
e.g.,In re Ampace Corp.,* 279 B.R. 145,
159 (Bankr.D.Del.2002) (holding that it is
"impractical and unnecessary" to require a
plan to list every outstanding claim and
that a general reservation of the right to lit-
igate claims post-confirmation may pre-
serve debtor's claims), *withIn re Am. Pre-
ferred Prescription,* 266 B.R. at 277 ("the
plan must expressly reserve the right to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 4
Not Reported in F.Supp.2d, 2004 WL 1119652 (S.D.N.Y.), 52 Collier Bankr.Cas.2d 178, 43 Bankr.Ct.Dec. 25
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1119652)**

pursue *that particular claim* post-confirmation") (emphasis in original). In this case, the parties do not dispute that the Disclosure Statement identifies SmarTalk's claims with the requisite degree of specificity. Rather, the issue is whether those claims could be preserved in the Disclosure Statement alone.

Although the Bankruptcy Code speaks in terms of reservations in the plan, [FN] a debtor can preserve its right to litigate claims in either the plan or the disclosure statement. *See, e.g., In re Kelley,* 199 B.R. at 704 ("[I]f the debtor fails to mention the cause of action in either his schedules, disclosure statement, or plan, then he will be precluded from asserting it postconfirmation."); *In re I. Appel,* 300 B.R. at 570 ("The combination of the blanket reservation of claims in the Plan and the reference to potential claims against the [defendants] in the Disclosure Statement was sufficient to provide adequate notice to the creditors, the [defendants], the trustee, and the bankruptcy court that the Debtor had potential outstanding claims against the [defendants]."); *In re Arizona Fast Foods LLC,* 299 B.R. 589, 594-95 (Bankr.D.Ariz.2003) ("If a disclosure statement and/or plan of reorganization expressly reserves an action for later adjudication, the doctrine of res judicata does not apply."); *In re Ampace,* 279 B.R. at 161 ("Both the Disclosure Statement and Plan contain a clear statement of the Trust's retention of the right to pursue Avoidance Actions post-confirmation. Therefore, Defendant knew or should have known that the Trustee could have commenced the instant action post-confirmation and as such, Defendant cannot now claim that such action is barred."); *In re County of Orange,* 219 B.R. 543, 564 (Bankr.C.D.Cal.1997) (*res judicata* does not bar defense expressly reserved in disclosure statement).

FN6. *See* 11 U.S.C. § 1123(b)(3) (2000) (reorganization plan "may ... provide for ... the settlement or adjustment of any claim or interest belonging to the debtor or to the

estate"); 11 U.S.C. § 1141(a) ("provisions of a confirmed plan bind the debtor").

The proposition that a debtor can preserve its post-confirmation claims in the plan or disclosure statement is supported by the rule that a confirmed plan includes "all documents which were confirmed together to form the contract." *In re Sugarhouse Realty, Inc.,* 192 B.R. 355, 363 (Bankr.E.D.Pa.1996); *see also This Is Me, Inc. v. Taylor,* 157 F.3d 139, 143 (2d Cir.1998) (citing contract law principle that documents forming part of same transaction are to be read together); *Kroblin Refrigerated Xpress, Inc. v. Pitterich,* 805 F.2d 96, 107 (3d Cir.1986) ("It is a general rule of contract law that where two writings are executed at the same time and are intertwined by the same subject matter, they should be construed together and interpreted as a whole."). For example, in *In re Sugarhouse Realty,* the bankruptcy court determined that the confirmed plan included the plan of reorganization itself, the agreement of sale, as well as the disclosure statement, including its attachments. 192 B.R. at 363. The disclosure statement and the plan should be read conjunctively so that a debtor's general reservation of claims in its plan includes a specific reservation in its disclosure statement. *See This Is Me,* 157 F.3d at 143; *In re Sugarhouse Realty,* 192 B.R. at 363; *see also In re I. Appel,* 300 B.R. at 570 (stating that combination of general reservation clause in the plan and more specific reference to potential claims in disclosure statement provided sufficient notice to creditors and defendants).

**\*4** That a plan and disclosure statement should be read with reference to one another is buttressed by the well-established policy that a debtor must give creditors reasonable notice of the plan's contents. *See In re I. Appel,* 300 B.R. at 570 ("The question is whether the Plan and the Disclosure Statement as written provided adequate notice to enable creditors to make an informed judgment about the Plan."); *see also In re Goodman Bros. Steel Drum Co., Inc.,* 247 B.R. 604, 610 (Bankr.E.D.N.Y.2000) (holding disclosure statement sufficient to give notice as

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 5
Not Reported in F.Supp.2d, 2004 WL 1119652 (S.D.N.Y.), 52 Collier Bankr.Cas.2d 178, 43 Bankr.Ct.Dec. 25
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1119652)**

"the creditors are required to have a copy of the disclosure statement served on them" at the time they receive the plan); Fed. R. Bankr.P. 3017(d) (providing that upon court's approval of disclosure statement, both the plan and disclosure statement must be served on "all creditors and equity security holders").

Here, defendants contend that plaintiff's claims are barred by *resjudicata* because: (1) the Plan contains only a general reservation, which fails to identify any specific parties or causes of action; and (2) the Disclosure Statement is without legal effect. Defendants' arguments are without merit. The Disclosure Statement and the Plan were executed and filed with the Bankruptcy Court at the same time and the Plan was included within the Disclosure Statement. (Def. 56.1 Stmt. ¶ 3; Pl. 56.1 Stmt. ¶ 3; Aufses Aff. ¶ 4 Ex. C; Neier Aff. Ex. 1.) The Memorandum Opinion confirming the Plan also makes explicit reference to the Disclosure Statement. (Aufses Aff. ¶ 4 Ex. C; Neier Aff. Ex. 1.) As noted, the Plan and Disclosure Statement must be viewed together in considering defendants' *resjudicata* claim. *SeeThis Is Me,* 157 F.3d at 143;*Kroblin,* 805 F.2d at 107);*In re Sugarhouse Realty,* 192 B.R. at 363 (all portions of confirmed plan or contract must be construed together).

When read conjunctively with the Disclosure Statement, the Plan clearly expresses SmarTalk's intent to preserve its claims against defendants in this action. Although the reservation clause in the Plan is a blanket one, and thus insufficient alone to preserve the Debtor's claims, *see, e.g.,Browning,* 283 F.3d at 774, the Disclosure Statement details the specific causes of action SmarTalk was pursuing against both the WWD and DLJ defendants at the time of confirmation. (Neier Aff. Ex. 1 at 35-36.) Both the Plan and the Disclosure Statement were served contemporaneously on all creditors including defendants prior to the Bankruptcy Court's confirmation. (Neier Aff. Ex. 3 at 2, Ex. 4 at 6, 7, 9.) Defendants therefore cannot-and do not-argue that these documents did not provide them with suffi-

cient notice to make an informed decision about the Plan. *See, e.g.,In re I Appel,* 300 B.R. at 570 ("The Plan indicated that the Debtor was reserving all causes of action, and the Disclosure Statement indicated that the Debtor was investigating potential claims against [defendants]."); *In re Goodman Bros.,* 247 B.R. at 610 (notice in disclosure statement of actions debtor intends to pursue post-confirmation provides sufficient notice to creditors since disclosure statement must be provided along with plan pursuant to Section 1125(b) of the Bankruptcy Code).

*5 Defendants' reliance on *Browning,* 283 F.3d 761, *D & K,* 112 F.3d 257, and *In re Kelley,* 199 B.R. 698, for the proposition that absent an express reservation in the Plan itself, *resjudicata* bars plaintiff's claims is misplaced. Those cases stand for the unremarkable proposition that a blanket reservation of claims in a reorganization plan alone is insufficient to preserve a debtor's post-petition claims. *Browning,* 283 F.3d at 774 (general reservation does not defeat application of *resjudicata* ); *D & K,* 112 F.3d at 261 (failure to identify specific claim results in preclusion of claims post-confirmation); *In re Kelley,* 199 B.R. at 704 (same). Moreover, those authorities are inapposite to the present case, where the Plan contains only a general reservation but the Disclosure Statement contains a lengthy and detailed summary of the claims the debtor intends to preserve. Accordingly, the *Browning* line of cases does not support defendants' position.

Defendants also contend that under *In re Bridgepoint Nurseries, Inc.,*"a disclosure statement is not a binding contract and has no res judicata or collateral estoppel effect on the court and cannot bind the parties."190 B.R. 215, 222 (D.N.J.1996).*Bridgepoint* is not persuasive. First, that decision is factually distinguishable from the present action. In *Bridgepoint,* a claimant sought to enforce rents allegedly owed by the debtor based on a footnote in the disclosure statement that the claimant intended to pursue an action for use and occupancy. 190

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 6
Not Reported in F.Supp.2d, 2004 WL 1119652 (S.D.N.Y.), 52 Collier Bankr.Cas.2d 178, 43 Bankr.Ct.Dec. 25
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1119652)**

B.R. at 222. Thus. the *Bridgepoint* court was not confronted with a situation in which a debtor was seeking to assert claims based on a general reservation in its plan along with a specific reservation in its disclosure statement. Second, *Bridgepoint's* analysis rests in part on the plain language of Section 1141(a) of the Bankruptcy Code, which states that "the provisions of a confirmed plan bind the debtor" and other parties. 11 U.S.C. § 1141(a): *see also Bridgepoint,* 190 B.R. at 223 ("The complete absence of any reference to the binding nature of a disclosure statement can only be interpreted to mean that Congress intended confirmed reorganization plans, and not disclosure statements to be binding."). However, similar reasoning was rejected in *In re Goodman Brothers,* which noted that the Bankruptcy Code does not support the proposition that a disclosure statement is without legal effect. 247 B.R. at 610-11. To the contrary, the *Goodman Brothers* court noted that the Bankruptcy Code stresses the importance of information in disclosure statements. 247 B.R. at 610-11. This Court agrees with the reasoning in *Goodman Brothers.* Finally, *Bridgepoint* is bereft of case law supporting its conclusion that disclosure statements are without binding effect. It is also contrary to the weight of authority that debtors can preserve post-petition claims in either the plan or the disclosure statement. *See, e.g., In re Kelley,* 199 B.R. at 704; *In re I. Appel,* 300 B.R. at 570; *In re Arizona Fast Foods,* 299 B.R. at 594-95.

*6 Accordingly, this Court holds that plaintiff's claims were adequately preserved and are not barred by the doctrine of *resjudicata.*

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment dismissing the Second Amended Complaint on grounds of *resjudicata* is denied.

S.D.N.Y.,2004.
Goldin Associates, L.L.C. v. Donaldson, Lufkin &

Jenrette Securities Corp.
Not Reported in F.Supp.2d, 2004 WL 1119652 (S.D.N.Y.), 52 Collier Bankr.Cas.2d 178, 43 Bankr.Ct.Dec. 25

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1036556 (D.Del.)
(Cite as: Not Reported in F.Supp.2d, 2005 WL 1036556)

Page 1

**H**
In re Stone & Webster, Inc.
D.Del.,2005.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
In re: STONE & WEBSTER, INC. et al., Debtors.
SAUDI AMERICAN BANK, Plaintiff,
v.
SHAW GROUP, INC., Swinc Acquisition Three,
Inc.. and SWE & C Liquidating Trustee, Defend-
ants
**No. 00-2142 (PJW), ADV. 01-7766(PJW), Civ.
04-834-SLR.**

May 3, 2005.

Francis A. Monaco, and Kevin J. Mangan, of Walsh
Monzack & Monaco, P.A., Wilmington, Delaware,
John C. Hutchins, Daniel E. Rosenfeld, and Amy
Beth Abbott, of Kirkpatrick & Lockhart L.L.P., Bo-
ston, Massachusetts, for Plaintiff, of counsel.
Gregory Alan Taylor, Stephen E. Jenkins, Chris-
topher S. Sontchi, and Liza H. Meltzer, of Ashby &
Geddes, Wilmington, Delaware, for Defendants
Shaw Group, Inc. and Swinc Acquisition Three.
Adam G. Landis, of Landis, Rath & Cobb, L.L.P.,
Wilmington, Delaware, for Defendant SWE & C
Liquidating Trustee.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

**\*1** On June 2, 2000, debtor Stone & Webster, Inc.
("debtor") [FN1] filed a voluntary petition for relief
under chapter 11, title 11 of the United States Code.
On October 18, 2001, plaintiff Saudi American
Bank ("SAMBA") filed an adversary action against
defendants Shaw Group, Inc. ("Shaw"), SWINC
Acquisition Three, Inc. and SWE & C Liquidating
Trustee (collectively "defendants") in the United
States Bankruptcy Court for the District of
Delaware ("the bankruptcy court"). (D.I.1) [FN2]

Plaintiff alleged that, under an Asset Purchase
Agreement ("the APA"), defendants assumed a debt
owed to plaintiff by Stone & Webster Engineering
Corporation ("SWEC"), a subsidiary of debtor. (Id.)
On June 1, 2004, defendants moved to withdraw the
adversary proceeding from the bankruptcy court.
(D.I.75) This court granted the motion on Septem-
ber 13, 2004. (D.I.88) The court has jurisdiction
over actions arising out of chapter 11 of the bank-
ruptcy code pursuant to 28 U.S.C. § 1334(a).
Presently before the court are plaintiff's and defend-
ants' motions for summary judgment. (D.I.29, 47)
FN3 For the reasons set forth below, the court
grants plaintiff's motion for summary judgment
(D.I.47) and denies defendants' motion for sum-
mary judgment (D.I.29).

> FN1. Although there are multiple named
> debtors, for ease of reference this order
> shall refer to a single "debtor."

> FN2. Unless otherwise noted, the docket
> items (i.e., D.I. __) will be from the bank-
> ruptcy court's docket for this case.

> FN3. There are several motions which are
> currently pending before the court. While
> this memorandum opinion will focus on
> plaintiff's and defendants' cross motions
> for summary judgment, it will also resolve
> several other pending motions. Most not-
> ably this order will address: (1) plaintiff's
> motion for leave to file an amended com-
> plaint (D.I.8); (2) plaintiff's motion for
> consolidation or dismissal (D.I.9); (3) de-
> fendants' motion for summary judgment
> (D.I.29); (4) plaintiff's motion for sum-
> mary judgment (D.I.47); and (5) plaintiff's
> motion to strike the declaration of James P.
> Carroll (D.I.48). Because debtor Stone &
> Webster, Inc. has been terminated from the
> present matter, its motion for summary
> judgment (D.I.11) is denied as moot.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1036556 (D.Del.)
(Cite as: Not Reported in F.Supp.2d, 2005 WL 1036556)

Page 2

## II. BACKGROUND

On May 31, 1980, SWEC and Abdullah Said Bug-shan & Bros. ("Bugshan"), a Saudi Arabian business enterprise, formed a joint venture called Bug-shan Stone & Webster ("BSW") under the laws of Saudi Arabia. (D.I. 1 at 5) BSW was owned in equal shares by SWEC and Bugshan. (*Id.*) In the mid 1990s, BSW entered a $130 million contract with Saudi Arabian American Oil Company ("Aramco") to upgrade a large oil refinery at Ras Tanura in Saudi Arabia (the "Ras Tanura Contract"). (D.I. 31 at A-173) In an attempt to induce plaintiff to grant credit to BSW, Bugshan and SWEC each agreed to issue guaranties to plaintiff for 50% of any loans plaintiff made to BSW. (D.I. 1, ex. A: D.I. 49 at A95-A96, A125) On October 11, 1994, SWEC delivered a letter guarantying payment of 50% of all obligations owed to plaintiff by BSW, up to thirty five million dollars (the "Guaranty"). (D.I.1, ex. A) In a letter dated July 10, 1997, plaintiff approved a loan for $35 million "to finance mobilization & working capital requirements of Saudi Aramco Cont[r]act [No.] 65004/00 (IK)."[FN4] (D.I. 31 at A-168) Unfortunately, BSW ran into difficulties on the Ras Tanura project and was unable to repay plaintiff the outstanding amount of the loan when the project was completed. In late 1998, pursuant to their guaranties, SWEC and Bugshan each agreed to repay one-half of the outstanding Ras Tanura Contract loan at a rate of $650,000 per month (the "Payment Letter"). (D.I. 49 at A67, A127)

> FN4. Contract No. 65004/00 (IK) was BSW's name for the contract to upgrade Aramco's Ras Tanura facility. (D.I. 31 at A-131, A-170)

By June 2000, debtor was operating its businesses and managing its properties pursuant to 11 U.S.C. §§ 1107(a) and 1108. At the time of debtor's chapter 11 filing, SWEC allegedly owed plaintiff approximately $6 million. (D.I. 49 at A69) On July 6 and 7, 2000, substantially all of debtor's assets were sold to defendant Shaw through an auction sale (the "Auction Sale"). (D.I. 49 at A131-A291)

*2 On July 7 and 12, 2000, a hearing for approval of the Auction Sale (the "Sale Hearing") was conducted.[FN5](D.I. 50 at A497-A648) At the Sale Hearing, counsel for debtor represented that debtor had

> FN5. At the time of the Sale Hearing, the United States District Court for the District of Delaware was hearing bankruptcy cases pursuant to 28 U.S.C. § 1334(a).

sent out a notice of sale ... that said, essentially, if you don't see your name on this list, or this schedule of contracts, which is the, what I like to call the excluded contracts, then your contract is being assumed.

...

Sometimes, Your Honor, in purchase contracts, schedules are merely informative and not necessarily per se material to the deal. That is not the nature of this agreement. This agreement revolves, in terms of its economics, around three schedules, or let's say two schedules, and whether or not your contract is on one of those two schedules. And those two schedules are the schedule for rejected contracts and the schedule for completed contracts. If they are not on those schedules, in essence, your contract is an assumed contract, and the economic impact to you as a stakeholder is dependent upon whether you are on those two lists....

(D.I. 50 at A518-A529) (emphasis added)

On July 13, 2000, an order (the "Sale and Assumption Order") regarding the Auction Sale was entered. (D.I. 49 at A1-A36) In the Sale and Assumption Order, the court stated:

[A]ll rights and remedies of any non-debtor party or Shaw under any of the Assumed Contracts (the "Rights and Remedies") are fully preserved and shall be enforceable after the Closing against Shaw or the non-debtor party unless such Rights and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Remedies are or were expressly waived in a separate agreement or on the record of the Auction.

(D.I. 49 at A18-A19) The court also stated that [t]he terms and provisions of the [APA] and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the [debtor], [its] estates, and [its] creditors, Shaw, and its respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting Interests in the Assets to be sold to Shaw pursuant to the [APA]. ...

(D.I. 49 at A26) Finally, the court stated that the APA could not be modified without further order unless "such modification, amendment, or supplement does not have a material adverse effect on the [debtor's] estates."(D.I. 49 at A27)

On July 14, 2000, debtor and defendant Shaw entered into the APA whereby Shaw purchased a substantial portion of debtor's assets and assumed many of its liabilities. (D.I. 50 at A861-A969) On the same date, the court entered an order approving the APA.

Section 2.02 of the APA, titled "Excluded Assets," excludes a number of assets from those being acquired by defendant Shaw. (D.I. 31 at A-240) Subsection (b) defines as "Excluded Assets" all "Completed Contracts" of debtor. Section 1.01 of the APA defines "Completed Contracts" as contracts of debtor, "including those specifically set forth on Schedule 2.02(b). under which substantially all of the contractual work effort of [debtor] has been completed, even if such Contracts have continuing warranty obligations, administrative matters or work related to warranty or other claims[.]"(Id. at A-229) Schedule 2.02(b) does not include any reference to the Guaranty, the Payment Letter, or the underlying Ras Tanura Contract. (Id. at A-306)

**\*3** Subsection (e) of Section 2.02 of the APA defines as "Excluded Assets" all the "Special Project Claims".(Id. at A-241) Section 1.01 of the

APA defines "Special Project Claims" as "any and all claims under the project agreements set forth on Schedule 2.02(e) to the extent not reflected on the March 31 Balance Sheet[.]"[FN6](Id. at A-237) Schedule 2.02(e) lists the "Ras Tanura, Saudi Arabia, Refinery Upgrade Project" as one of the "Special Project Claims." (D.I. 50 at A979) Schedule 2.02(e) also specifically identifies a "Contract for Construction dated as of June 28, 1994 by and between Saudi Arabian Oil Company ("Saudi Aramco") and [BSW] (designated by Saudi Aramco as Contract No. 65004/00) [ ]" as a "Special Project Claim".(Id.) Finally, Schedule 2.02(e) identifies "[o]ne or more potential claims for payment under a series of Letters of Credit issued by [plaintiff] and involving materials supplied under a number of purchase orders issued by [BSW] ... for materials incorporated into the [Ras Tanura Refinery Upgrade Project]" as "Special Project Claims".(Id.)

> FN6. Although the APA defines "Special Project Claims" as any and all claims set forth on Schedule 2.02(e), the Execution Copy of the APA did not include a Schedule 2.02(e). Rather, Schedule 2.02(e) was added to the APA by debtor and defendant Shaw subsequent to this court's approval of the Execution Copy of the APA. (D.I. 51 at 42; D .I. 57 at 14 n. 3)

Section 2.03 of the APA states that "[Shaw] shall assume the Assumed Liabilities[ ]" as of the closing date. (Id. at A887) Section 1.01 of the APA defines "Assumed Liabilities" as "all liabilities and obligations of [debtor] set forth on Schedule 2.03 as of the Closing Date...."(Id. at A872) Schedule 2.03 is the "List of Assumed Liabilities".(Id. at A957) Paragraph three of Schedule 2.03 provides that "[l]iabilities under [debtor's] outstanding bank indebtedness, including amounts outstanding and pursuant to existing standby letters of credit[ ]" are "Assumed Liabilities." (Id.) Section 3.17 of the APA states that Schedule 3.17(a)(ix) is "a true, complete and correct list" of "any bond, indenture, note, loan or credit agreement ... or other Contract

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1036556 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1036556)**

Page 4

relating to the borrowing of money or to the direct or indirect guarant[y] or assumption of obligations of any other Person for borrowed money."(*Id.* at A897) Schedule 3.17(a)(ix) lists: (1) a guaranty by BSW to plaintiff (*id.* at A983); (2) a letter of guaranty dated September 1, 1992 from SWEC to plaintiff regarding BSW securing credit facilities (*id.* at A984); and (3) a letter of guaranty dated October 19, 1992 whereby SWEC guaranteed plaintiff the repayment of 40 million Saudi Riyals (*id.*). Defendant Shaw admits that Schedule 3.17(a)(ix) lists a guaranty by SWEC for BSW's borrowing from plaintiff. (D.I. 49 at A91) Defendant Shaw assumes that the guaranty listed on Schedule 3.17(a)(ix) incorporates the Guaranty by which SWEC guaranteed 50% of BSW's obligations to plaintiff up to $35 million.(*Id.* at A91-A92) Defendant Shaw admits that Schedule 3.17(a)(ix) lists contractual liabilities disclosed to defendant Shaw by debtor. (D.I. 49 at A91)

Section 2.04 of the APA, captioned "Excluded Liabilities," states that "[u]nder no circumstances shall [defendant Shaw] assume or be obligated to pay ... any of the Excluded Liabilities, including the following liabilities, which shall be and remain liabilities of [debtor]: ... (c) liabilities or obligations associated with any Excluded Assets; ... (e) liabilities or obligations under the Assumed Contracts that are not Assumed Liabilities and liabilities or obligations arising under the Rejected Contracts or the Completed Contracts[.]" (D.I. 31 at A-241)

*4 On July 18, 2001, the court entered an order establishing a cure claim procedure. (D.I. 49 at A293-A307) The cure claim procedure defined "cure claims" as "any and all liquidated monetary claims [FN7] arising or accruing on or before July 14, 2000 under the Assumed Contracts and actually known by the non-[debtor] party to an Assumed Contract."(*Id.* at A294) The cure claim procedure also required debtor to file a list of all Assumed Contracts and an amended list of all Excluded Contracts. (*Id.* at A305) According to the cure claim procedure, a cure claim had to be filed by August

25, 2000. (*Id.* at A299)

FN7. "Liquidated monetary claims" relate to "money due and owing or allegedly due and owing by the [debtor] under the Assumed Contracts, but does not include any claims by the non-[debtor] party for any defective work (whether latent or otherwise) by the [debtor] or [its] subcontractors or under any warranty provisions of the Assumed Contract."(D.I. 49 at A294-A295)

On July 21, 2000, debtor filed an Assumed Contract List, an Excluded Contract List, and an Amended Excluded Contract List. (D.I. 50 at A649-A660) Neither the Guaranty nor the Payment Letter were included on any of those lists. On August 4, 2000, debtor filed a Second Amended Excluded Contract List, and a Second Amended Assumed Contract List. (D.I. 50 at A661-A668) The Second Amended Assumed Contract List includes a contract with Aramco Services Co. and two contracts with plaintiff. (D.I. 50 at A666, A668)

On August 24, 2000, plaintiff filed a statement of cure claim against SWEC, alleging that SWEC owed outstanding financial obligations to plaintiff. (D.I. 49 at A52-A85) Plaintiff attached the Guaranty and the Payment Letter as exhibits to its cure claim. (*Id.* at A56, A67) Defendant Shaw failed to pay or contest plaintiff's cure claim.

On December 28, 2000, the court entered an order approving a letter agreement, dated December 27, 2000, which confirmed the terms of the APA. (D.I. 50 at A857-A860) Pursuant to this letter agreement and order, certain additional projects were to be treated as Completed Contracts under the APA and Schedule 2.02(b). (D.I. 50 at A670) Neither the Guaranty nor the Payment Letter were added to the list of Completed Contracts. (*Id.*) Debtor also stated that the additional completed contracts "constitute the only completed contracts or substantially completed contracts of which [debtor has] actual knowledge as not being listed on Schedule 2.02(b) to the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1036556 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1036556)**

Page 5

Disclosure Schedules (collectively with Schedule 2.02(b), the 'Completed Contracts List')."(*Id.*)Neither the letter agreement nor the order sought to amend the Schedule of Rejected Contracts.

On August 1, 2001, debtor commenced a preference action against plaintiff to avoid and recover certain preferential transfers, to disallow plaintiff's claims, to estimate plaintiff's claims at $0, and to reduce plaintiff's claims to an amount reflected on the debtor's books and records (the "Preference Action"). Plaintiff filed its answer and affirmative defenses on October 18, 2001.

On August 1, 2002, plaintiff commenced the instant adversary proceeding. (D.I.1) Plaintiff's complaint alleged that, under the APA, defendant Shaw assumed the $6,728,529 debt owed to plaintiff by SWEC. In the alternative, plaintiff claimed that "[u]nless [defendant] Shaw assume[d] its obligation to pay [plaintiff] ... SWEC is obligated to pay [plaintiff]...." (D.I. 1 at 12)

*5 On January 2, 2002, defendants filed an answer to plaintiff's adversary proceeding complaint. (D.I.5) Plaintiff filed a motion for leave to file an amended complaint on January 7, 2002.[FN8](D.I.8) That same day, plaintiff filed a motion seeking to consolidate the Preference Action and the instant litigation.[FN9](D.I.9) On August 13, 2002, defendant Shaw filed a motion for summary judgment.FN10(D.I.29) On October 18, 2002, plaintiff filed its motion for summary judgment. (D.I.47)

> FN8. The court denies plaintiff's motion for leave to file an amended complaint (D.I.8), as amending the complaint will further delay this case, which lingered in the bankruptcy court for several years before it was withdrawn to this court.

> FN9. The court denies plaintiff's motion to consolidate. (D.I.9) Federal Rule of Civil Procedure 42(a) provides this court with

authority to consolidate "actions involving a common question of law or fact ... pending before the court."Decisions to consolidate cases are at the discretion of the district court, but often courts balance considerations of efficiency, expense and fairness. *SeeUnited States v. Dentsply Int'l, Inc.,* 190 F.R .D. 140, 142-43 (D.Del.1999). Because the Preference Action and this litigation stem from different factual circumstances, consolidation is not appropriate.

> The court also denies plaintiff's motion to dismiss the preference action (D.I.9), as the preference action is not pending in this court.

> FN10. The court grants plaintiff's motion to strike the declaration of James P. Carroll submitted in support of defendants' motion for summary judgment. (D.I.48)

III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *SeeMatsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10 (1986)."Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."*Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial." ' *Matsushita,* 475 U.S. at 587 (quoting Fed.R.Civ.P.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1036556 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1036556)**

56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *SeeAnderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *SeeCelotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## IV. DISCUSSION [FN11]

> FN11. In the case at bar, plaintiff asserts that defendant Shaw assumed a debt owed to plaintiff by SWEC through operation of the Guaranty and Payment Letter. Because there is no dispute that plaintiff has standing to enforce these contracts if they were assumed by defendant Shaw pursuant to the Sale and Assumption Order and Sections 2.03 and 3.17 of the APA, there can be no dispute that plaintiff has standing to bring the issue for resolution before this court.

Construction of contract language is a question of law. *SeeRhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.,* 616 A.2d 1192, 1195 (Del.1992). The primary consideration in interpreting a contract is to "attempt to fulfill, to the extent possible, the reasonable shared expectations of the parties at the time they contracted."*SeeComrie v. Enterasys Networks, Inc.,* 837 A.2d 1, 13 (Del. Ch.2003). In ascertaining intent, Delaware courts adhere to the "objective" theory of contracts. *SeeHaft v. Haft,* 671 A.2d 413, 417 (Del. Ch.1995). Under this approach, a contract's "construction should be that which would be understood by an

objective reasonable third party."*R.E. Haight & Assocs. v. W.B. Venables & Sons, Inc.,* C.A. No. 94C-11-023, 1996 WL 658969, at *3 (Del.Super.Oct. 30, 1996) (quoting *Demetree v. Commonwealth Trust Co.,* No. 14354, 1996 WL 494910, at *4 (Del. Ch. Aug. 27, 1996)). Thus,

*6 [w]here parties have entered into an unambiguous integrated written contract, the contract's construction should be that which would be understood by an objective reasonable third party. An inquiry into the subjective unexpressed intent or understanding of the individual parties [to the contract] is neither necessary nor appropriate where the words of the contract are sufficiently clear to prevent reasonable persons from disagreeing as to their meaning.

*Demetree,* 1996 WL 494910, at *4 (citations omitted); *accordEagle Indus., Inc. v. DeVilbiss Health Care, Inc.,* 702 A.2d 1228, 1232 (Del.1997) ( "Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language."). The court, therefore, must determine whether the contractual language in dispute, when read in the context of the entire contract, is ambiguous.

Ambiguity exists only when a contractual provision is "reasonably or fairly susceptible of different interpretations or may have two or more different meanings."*Rhone-Poulenc,* 616 A.2d at 1196;*accordSI Mgmt. L.P. v. Wininger,* 707 A.2d 37, 42 (Del.1998). Contractual language "is not rendered ambiguous simply because the parties do not agree upon its proper construction ."*Id.;see alsoCity Investing Co. Liquidating Trust v. Cont'l Cas. Co.,* 624 A.2d 1191, 1198 (Del.1993) (finding contract language is not ambiguous "simply because the parties in litigation differ concerning its meaning.") However, inconsistent contractual provisions may create ambiguity in a contract. *Fraternal Order of Police v. City of Fairmont,* 468 S.E.2d 712, 717 (W.Va.1996) ("Contract language usually is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1036556 (D.Del.)
(Cite as: Not Reported in F.Supp.2d, 2005 WL 1036556)

considered ambiguous where an agreement's terms are inconsistent on their face...."); *Weber v. Tillman,* 913 P.2d 84, 96 (Kan.1996) ("To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language."); *Franklin v. White Egret Condo., Inc.,* 358 So.2d 1084 (Fla.Dist.Ct.App.1977), *aff'd,* 379 So.2d 346 (Fla.1979) (finding "two sections [of a disputed contract] are inconsistent, and inherently ambiguous."). When a contract is ambiguous, it raises "factual issues requiring consideration of extrinsic evidence to determine the intended meaning of the provision in light of the expectations of the contracting parties."*Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.,* 702 A.2d 1228, 1230 (Del.1997). If "the court finds that a contract is ambiguous and that extrinsic evidence is undisputed, then the interpretation of the contract remains a question of law for the court to decide."*In re Columbia Gas Sys.,* 50 F.3d 233 (3d Cir.1995).

The question of whether defendant Shaw assumed the Guaranty and Payment Letter must be considered in light of the fundamental premise that a guaranty "is a separate contract involving duties and responsibilities which are different from the basic contract to which it is collateral."[FN12]*Financeamerica Private Brands, Inc. v. Harvey E. Hall, Inc.,* 380 A.2d 1377, 1379 (Del.Super.1977); *see also Jones Motor Co. v. Teledyne, Inc.,* 690 F.Supp. 310, 313 (D.Del.1988). Therefore, the issue presented by the parties is whether the Guaranty and Payment Letter were unambiguously assumed or rejected under the APA.

> FN12. Given the very clear case law establishing that a guaranty and the underlying contract are separate contracts, the court rejects defendant Shaw's argument that the contract at issue is the Ras Tanura Con- tract.

*7 The court concludes that the Guaranty and Payment Letter were assumed under the APA. First, neither the Guaranty nor the Payment Letter fall within the definition of an "Excluded Asset" either as a "Completed Contract" or as a "Special Project Claim", as defined in Section 2.02 of the APA and the schedules related thereto. Second, Section 1.01 of the APA defines an "Assumed Contract" as any contract that is not specifically identified as a "Rejected Contract" or a "Completed Contract". Sections 1.01 and 2.03 and Schedule 2.03 of the APA define the scope of "Assumed Liabilities" as including "outstanding bank indebtedness". The record indicates that Schedule 3.17, listing those contracts which relate to such outstanding bank indebtedness as guaranties, includes at least an indirect reference to the Guaranty and Payment Letter. Defendant failed to pay or contest plaintiff's cure claim. Finally, and of great significance, are the representations made to this court by counsel for the debtor, that if contracts were not identified on the schedules listing rejected and completed contracts, then the contract would be deemed an assumed contract.

## V. CONCLUSION

For all of these reasons, the court concludes that the Guaranty and Payment Letter are contracts that were assumed by defendant Shaw by operation of the APA and the Sale and Assumption Order. Therefore, plaintiff's motion for summary judgment shall be granted. An appropriate order shall issue.

## ORDER

At Wilmington this 3rd day of May, 2005, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that:

1. Defendants' motion for summary judgment (D.I.29) is denied.

2. Plaintiff's motion for summary judgment (D.I.47) is granted.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1036556 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1036556)**

Page 8

3. The Clerk of Court is directed to enter judgment
in favor of plaintiff and against defendants.

D.Del.,2005.
In re Stone & Webster, Inc.
Not Reported in F.Supp.2d, 2005 WL 1036556
(D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.